**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| NATHANAEL BROWN, | § | |
| for himself and all others | § | |
| similarly situated, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| MID-AMERICA APARTMENTS, LP, as | § | |
| successor in merger to POST APARTMENT | § | |
| HOMES, LP d/b/a POST SOUTH LAMAR, | § | CASE NO. ___1:17-cv-00307___ |
| POST EASTSIDE, POST PARK MESA, | § | |
| POST GALLERY, POST WEST AUSTIN, | § | |
| POST SIERRA AT FRISCO BRIDGES, | § | |
| POST KATY TRAIL, POST ABBEY, | § | |
| POST ADDISON CIRCLE, POST COLE'S | § | |
| CORNER, POST BARTON CREEK, POST | § | |
| HEIGHTS, POST LEGACY, POST | § | |
| MERIDIAN, POST MIDTOWN SQUARE, | § | |
| POST SQUARE, POST UPTOWN VILLAGE, | § | |
| POST VINEYARD, POST VINTAGE, and | § | |
| POST WORTHINGTON, and MID-AMERICA | § | |
| APARTMENT COMMUNITIES, INC., as | § | |
| general partner of MID-AMERICA | § | |
| APARTMENTS, LP, | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT WITH JURY DEMAND

Nathanael Brown ("Plaintiff"), for himself and all others similarly situated, files this Original Class Action Complaint with Jury Demand complaining of Mid-America Apartments, LP, as successor in merger to Post Apartment Homes, LP d/b/a Post South Lamar, Post Eastside, Post Park Mesa, Post Gallery Creek, Post West Austin, Post Sierra at Frisco Bridges, Post Katy Trail, Post Abbey, Post Addison Circle, Post Cole's Corner, Post Barton Creek, Post Heights, Post Legacy, Post Meridian, Post Midtown Square, Post Square, Post Uptown Village, Post

Vineyard, Post Vintage and Post Worthington ("Post-branded apartment properties in Texas"),
and Mid-America Apartment Communities, Inc., as general partner of Mid-America Apartments,
LP, (collectively "Defendants") as follows:

## I.  PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is, and was during all times relevant to this case, an individual residing in Travis
County, Texas, and for diversity purposes, he is a citizen of Texas.

2.      Defendant Mid-America Apartments, L.P. ("MAA LP"), as successor in merger to Post
Apartment Homes LP and doing business under various assumed names for the Post-branded
apartment properties in Texas (listed in the style of this case) is and was during all times relevant
to this case a Tennessee limited partnership with its principal place of business in Memphis,
Tennessee.  MAA LP can be served with process by serving its registered agent for service in
Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3.      Mid-America Apartment Communities, Inc. ("MAA Inc.") is and was during all times
relevant to this case a Tennessee corporation with its principal place of business in Memphis,
Tennessee, and for diversity purposes, is a citizen of Tennessee.  MAA Inc. can be served with
process by serving its registered agent for service in Texas, CT Corporation System, 1999 Bryan
Street, Suite 900, Dallas, Texas 75201-3136.

4.      MAA LP is the successor in merger to Post Apartment Homes, LP ("Post"). The merger
was finalized on or about December 1, 2016. Pursuant to the articles of merger, Post was merged
into and became MAA LP on the effective date of merger. **Ex. 1**. Prior to the merger, Post-
owned and operated numerous apartment properties in the State of Texas as evidenced by
assumed names filed with the Texas Secretary of State, as listed in the style of this case. **Ex. 2**

(**A-S**). As the surviving entity in the MAA/Post merger, MAA LP is the responsible party for the claims at issue in this case.

5.      Prior to the MAA/Post merger, the post-branded apartment property in Austin, Texas where Plaintiff resided as a tenant, operated under the assumed name Post South Lamar. **Ex. 2-T**). The original owner, Austin, SL, LP, a Georgia limited partnership, was merged into Austin SL, LLC, a Georgia limited liability company, effective November 22, 2016. **Ex. 3**. Simultaneously, Austin SL, LLC, a Georgia limited liability company, was merged into Austin SL Acquisition GP, LLC, a Georgia limited liability company, effective November 22, 2016. **Ex. 4**. Simultaneously, Austin SL Acquisition GP, LLC, a limited liability company, was merged into Post Apartment Homes, LP, a Georgia limited partnership, effective November 22, 2016. **Ex. 5**. As stated in paragraph 4, Post Apartment Homes, LP, a Georgia limited partnership, was merged into and became MAA LP, effective December 1, 2016 as reflected in the certificate of merger recorded with the Georgia Secretary of State. **Ex. 1**. As a result, MAA LP is the responsible party for the claims at issue in this case.

6.      Before the MAA/Post merger was completed on or about December 1, 2016, Post represented to the public that it was the owner of the Post-branded apartment properties in Texas. **Ex. 2 A-T**. The various assumed names under which Post owned these properties inured to MAA LP under the merger. This is confirmed by Defendants' website, which now lists these apartment properties in Texas as "MAA properties." **Ex. 6**.

7.      MAA Inc. is and was during all times relevant to this case the general partner of MAA LP. *See* **Ex. 9**, Application for Registration of a Foreign Limited Partnership filed with the Texas Secretary of State; **Ex. 10**, Periodic Report filed by MAA LP with the Texas Secretary of State

listing MAA Inc. as its general partner. Because MAA LP is a limited partnership, MAA Inc. is the operating entity that runs the limited partnership.

8.     The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(d) (the Class Action Fairness Act or "CAFA") because at least one Defendant is a citizen of a state different from Plaintiff, the amount in controversy exceeds $5 million exclusive of interest and costs, and there are more than 100 members of the class.  The Court also has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(2) because Plaintiff and Defendants are citizens of different U.S. states, resulting in complete diversity of citizenship, and the amount in controversy exceeds $75,000.00, excluding only interest and costs.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b).  Plaintiff's claim arose in the Western District of Texas, Austin Division.

10.     Plaintiff and the putative class members (the "Class" as defined below) have standing to bring the claims in this complaint under TEX. PROP. CODE § 92.019 because they are, and were during the Class Period, residential tenants in Texas under written form leases with Defendants.

## II.  INTRODUCTION AND BACKGROUND

11.     This case seeks to certify a class of current and former residential tenants at Post-branded apartment communities in Texas where Defendants (Memphis, Tennessee based business entities) are owners and landlords.   Plaintiff seeks to recover statutory remedies for himself and the Class for unreasonable and excessive rent late fees assessed during the Class Period under TEX. PROP. CODE § 92.019, which was enacted by the Legislature for the stated purpose of protecting residential tenants like those in the Class from "excessive fees and unwarranted penalties."[1]

---

[1] The legislative history of H.B. 3101 says: "Hardworking Texans deserve affordable housing without landlords ... charging excessive fees, or imposing unwarranted penalties that could take money needed for food, education,

A.    <u>Section 92.019 imposes limits on landlord rent late fees.</u>

12.    The Texas Property Code places limits on late fees a landlord can assess tenants.  Under TEX. PROP. CODE § 92.019 ("Section 92.019") a landlord may not charge a tenant a late fee for failing to pay rent unless:

(a)  notice of the fee is included in a written lease;

(b)  **the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent**; and

(c)  the rent has remained unpaid one full day after the date the rent was originally due.[2]

13.    A late fee under this section may include an initial fee and a daily fee for each day the rent continues to remain unpaid.[3] **"A landlord who violates this section is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees."[4]**

14.    "A provision of a lease that purports to waive a right or exempt a party from a liability or duty under this section is void."[5] The statute is specifically intended to cover routine situations, as here, where a tenant pays her rent but does so a few days late and the landlord assesses and collects an excessive late rent as a result. It "does not affect the landlord's right to terminate the lease or take other action permitted by the lease or other law, and payment of the fee, charge, or other sum of money by a tenant does not waive the right or remedies provided by the property code."[6]

---

healthcare, and retirement..."  http://www.lrl.state.tx.us/scanned/hroBillAnalyses/80-0/HB3101.PDF
[2] Section 92.019(a)(1)-(3) (emphasis added).
[3] *Id.* at (b).
[4] *Id.* at (c) (emphasis added).
[5] *Id.* at (d).
[6] *Id.* at (e).

**B.    Texas landlords have increased rent late fees to record levels.**

15.    Over the last five years, as the economy in Texas has boomed, particularly in the Greater Austin area, landlords have increased their late fees to unprecedented levels as they try to wring every dime of revenue from tenants. First-day-late fees have increased from $50.00 to $75.00 and now some landlords assess a whopping $100.00 or more for the first day rent is late (usually the third or fourth day of the month).  In addition to the first-day-late charge, additional late fees typically are added at the rate of $10.00 - $15.00 per day until paid, usually with a cap per month in the $215.00 - $310.00 range. Defendants and their predecessors in merger, however, have taken this overreach to a new level at Post-branded apartment properties in Texas, assessing tenants a rent penalty equal to 10% of their rental rates the first day rent is paid late.

16.    If a tenant pays rent a few days late, the only likely harm to the landlord is the loss of the use of such money for a few days, *i.e.*, "time" or interest.[7]  On information and belief, the late fees assessed by Defendants and their predecessors have come to represent their largest source of ancillary (non-rent) income. Texas law prohibits landlords from charging rent late fees to increase their revenue. Instead, late fees must only compensate landlords for their estimated damages when tenants pay their rent but do so a few days late, a situation where little if any harm occurs. Defendants' and their predecessors' aggressive revenue-driven rent late fee scheme cannot be defended on any rational basis as a reasonable estimate of any alleged harm suffered.[8]

---

[7] Defendants use automated computer systems to track tenants who pay rent late. Little or no labor is involved in the process.
[8] TEX. PROP. CODE Section 92.019(a).  Defendants and their predecessors in merger and other large apartment landlords have continued to push the limits on rent late fees despite a stern warning by the Texas Apartment Association ("TAA") in its legal handbook (a/k/a "Redbook"), written by experienced lawyers and provided to members cautions landlords that rent late fees can be struck down by a court for being unconscionable and constituting a penalty and "there is a fine line between unlawful penalties and liquidated damages." *See* **Ex. 11**. Despite the warning, landlords in Texas have gotten more and more aggressive with their rent late fee schemes.

17.     Plaintiff brings this action for themselves and all others similarly situated to recover relief specified under the property code.

### III.  FACTUAL ALLEGATIONS

**A.     Post-branded Apartment Properties in Texas owned by Defendants pursuant to Merger.**

18.     During the relevant time, Defendants, through their predecessors in merger, are believed to be, or have been, owners or purported landlords of approximately 6,367 dwelling units in approximately 20 apartment communities in Texas.

19.     In Austin, Defendants are believed to be owners and landlords of approximately 996 residential dwelling units in the following 4 Post-branded apartment properties and possibly others:

- Post South Lamar
- Post at Barton Creek
- Post Park Mesa
- Post West Austin

20.     In the Dallas/Fort Worth Metroplex, Defendants are believed to be owners and landlords of approximately 4,736 dwelling units in the following 15 Post-branded apartment properties and possibly others:

- Post Abbey
- Post Addison Circle
- Post Cole's Corner
- Post Eastside
- Post Gallery
- Post Heights
- Post Katy Trail
- Post Legacy
- Post Meridian
- Post Sierra at Frisco Bridges
- Post Square

- Post Uptown Village
- Post Vineyard
- Post Vintage
- Post Worthington

21.    In the Greater Houston area, Defendants are believed to be owners and landlords of approximately 656 dwelling units in the following Post-branded apartment property and possibly others:

- Post Midtown Square

22.    Defendants and their predecessors in merger have been and continue to be owners and landlords of each of its apartment houses in Texas during all or at least part of the Class Period. Defendants' predecessors in merger senior and executive management are directly involved in adopting and implementing the rent late fee scheme at Post-branded apartment properties in Texas, supporting and reviewing property management policies and practices such that Defendants maintains complete control over the landlord function of its Texas apartment communities and directs the conduct of its onsite employees.  Defendants and their predecessors in merger used their computerized property management system to charge and collect from Plaintiff and other class members excessive and impermissible rent late fees in violation of Section 92.019.  Thus, Defendants' and their predecessors' in merger uniform conduct at issue in this case affects both Plaintiff and the putative class.

**B.    <u>Plaintiff Nathanael Brown.</u>**

23.    Plaintiff is a former residential tenant at the Post South Lamar under a Post form lease.

24.    On or about March 3, 2015, Plaintiff signed a twelve (12) month lease with Post South Lamar for an apartment unit for a term from March 3, 2015 through March 2, 2016 ("Plaintiff's Lease").  **Ex. 7**. Plaintiff signed a subsequent lease covering a different unit at Post South Lamar

Apartments. The second lease contains the same language regarding rent late fees as the earlier

lease, but no claim is asserted under that lease. As a result of the MAA/Post merger closed on or

about December 1, 2016, Plaintiff's Lease was transferred to and became one of Defendants'

leases, as did all other tenant leases in effect at Post-branded apartment properties in Texas at

that time. Similarly, all claims of Class members became the legal responsibility of Defendants

once the merger was finalized and closed.

25.     In Plaintiff's Lease, Defendant included the following form language regarding payment

of rent, believed to be in the other class members' form leases as well:

> You agree to pay Post the Monthly Base Rent set forth above, which is payable
> each month in advance on the first day of each month, during the initial or
> extended term of this Lease at the office of Post at the Property or such other
> place as Post may designate. Rent paid after the first day of the month is late. If
> the Lease Start Date is not the first day of the month, then Your Monthly Base
> Rent for that month will be prorated and will be payable in advance on the Lease
> Start Date.
>
> ……..
>
> Time is of the essence of this Lease. **If Your rent is not paid on or before the
> third day of the month, a late fee or charge in the amount of 10% of the full
> monthly rent shall be due as additional rent. Such "full monthly rent" shall
> include all additional monthly rent due.**[9]

26.     Through an oversight, Plaintiff paid his rent for the month of December 2015 on the 4th

day of the month – one day late. Rent was due on December 1, 2015 but by law Plaintiff had

until December 3, 2015 to make payment without incurring a late fee.[10] In response to the

payment made one day late, Defendant immediately assessed Plaintiff a late fee on rent of

$159.50, representing 10% of his entire monthly rent.  Plaintiff promptly paid his rent and the

$159.50 late fee on December 4, 2015. His electronic tenant ledger created and maintained by

---

[9] **Ex. 7, ¶ 2, at 2** (emphasis added).
[10] TEX. PROP. CODE § 92.019(a)(3).

Defendant confirms the $159.50 rent late fee was assessed, and that Plaintiff paid it on December 4, 2015. **Ex. 8**. The late fee was not credited or refunded.

**C.**    **Defendants violated Section 92.019 and all rent late fees charged were unlawful.**

27.    As previously stated, Texas landlords are prohibited from charging their tenants any late fees on rent unless those fees are "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent."[11] That means a landlord is prohibited from instituting a late fee scheme until or unless it first makes an estimate of its damages when tenants pay their rent but do so a few days late.  And then, the rent late fee policy adopted must be reasonably tied to that estimate of damages.  Otherwise, rent late fees are prohibited. A landlord may not use late fees as a profit-center or as a penalty to encourage tenants to pay their rent on time.  Here, Defendants did not meet the condition required by the statute and therefore, had no right to lawfully assess Plaintiff or the putative class any late fees at all.  The rent late fee clause in the form lease used by Defendants in the leases with Plaintiff and the putative class are void and unenforceable.

28.    Defendants are not permitted to seek alleged breach of contract damages against Plaintiffs or the class for late payment of rent either because Section 92.019 is the only permissible mechanism under Texas law to collect alleged damages resulting from late payment of rent.  As Defendants violated that law, they do not get a second bite at the apple.

29.    And even if Defendants somehow could seek contract damages from Plaintiffs and the class for paying their rent paid a few days late, the only measure of damages available to them under Texas law would be interest.  Defendants' lease form for Post-branded properties in Texas does not contain a provision for recovery of specified interest on past due sums in situations applicable to this case. That means the only interest Defendants possibly could recover is the

---

[11] TEX. PROP. CODE § 92.019(a)(2).

prejudgment interest rate allowed under the Texas Finance Code (6% simple interest).[12]    But interest under the statute does not commence until 30-days after the sum owed is due.    That means Defendants may not recover interest from Plaintiffs or members of the putative class because each of them paid their rent only 1-10 days late.    By accepting rent late from Plaintiffs and the class, Defendants have no other remedies.

30.    Defendants' standardized late fee formula on past due rent results in tenants being assessed a penalty equal to 10% of their monthly rent obligation on the first day their rent is late. Such an amount is inherently unreasonable, unconscionable, and not tied to any rational measurement or estimation of Defendant's actual damages.[13]    On information and belief, Defendants made no attempt to estimate their damages from later-payers of rent when they implemented their punitive rent late fee scheme. Since Defendants did not meet this condition under Section 92.019, they were not permitted to charge Plaintiff or the putative class any rent late fees whatsoever.

31.    Texas apartment landlords are prohibited from charging their tenants late fees on rent unless those fees are tied to "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent" made before the rent late fee policy is adopted[14]    In other words, a landlord is prohibited from instituting a punitive late fee schedule that serves as a penalty or revenue-generating scheme.

---

[12] TEX. FIN. CODE §302.002

[13] The fact that most, if not all, large management companies now impose hefty late fees on rent is no defense. It may very well be, and likely is the case, that all or most Texas landlords currently violate Section 92.019 by implementing aggressive late fee schemes like the one Defendant is using.  Even the Texas Apartment Association acknowledges the peril associated with these types of over-the-top late fee schemes by including cautionary language in its lease form handbook for landlord members (known as the "Redbook") warning them that excessive late fees expose landlords to liability under Section 92.019 (among other potential claims that include usury, DTPA, and contractual unconscionability).

[14] TEX. PROP. CODE § 92.019(a)(2).  In a previous case asserting class claims like the Class claims in this case, Judge Robert L. Pitman issued the attached order[14] denying Defendants' Rule 12(b)(6) motion to dismiss claims under Section 92.019 made by another member of this putative class.  *See* **Ex. 12,** Order by Judge Robert L. Pitman in a recent related case involving rent late fee claims under Section 92.019 identical to the Class claims in this case.

32.    Defendants' standard late fee formula on past due rent results in tenants at Post-branded apartment properties being assessed a penalty of 10% of a month's rent the first day rent is late Such an amount is inherently unreasonable, unconscionable, and not tied to any rational measurement or estimation of Defendants' actual damages caused by a tenant paying rent a few days late.

33.    On information and belief, Defendants carefully track rent late fee income at each of their properties, likely making budget projections of how much of this revenue it expects its property management teams to collect monthly and annually (and possibly rewarding those employees for meeting or exceeding projections); yet, they made no effort to use their vast collection of data to determine their estimated damages when tenants pay their rent a few days late before they decided to adopt the rent late fee policy at issue in this case. This reaffirms that Defendants, including Post, view rent late fees as nothing more than extra revenue (believed to total millions of dollars every year, just in Texas) and as a penalty to deter tenants from paying their rent late.

34.    Post did not use Texas Apartment Association ("TAA") form leases (as most Texas landlords use).  Instead, Post used its own proprietary form lease for Plaintiff and putative class members at Post-branded apartment properties in Texas. See, e.g., **Ex. 7**.

35.    Under Texas and Georgia law, a general partner of a limited partnership has all the rights, duties, obligations and liabilities of a partner in a general partnership, including the right to sue and be sued in its own name for acts and omissions of the limited partnership.[15] Likewise, the general partner of a limited partnership is jointly and severally liable for all acts and omissions of

---

[15]*See* TEX. BUS. ORG. CODE ANN.. § 153.152(b) (West 2016)("Except as provided by this chapter or the other limited partnership provisions, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to a person other than the partnership and the other partners."); Tennessee Code Annotated § 61–1–306(a) ("All partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law.")

the limited partnership. Plaintiff therefore has the right to sue and has properly sued the general partner of MAA LP (MAA Inc.) for the statutory violations asserted in this case.

36.      The Texas Property Code governs landlord-tenant relationships. Section 92.001(2) of the Texas Property Code defines the term "landlord" as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease." TEX. PROP. CODE § 92.001(2).  Another section of the Texas Property Code that applies to landlords and tenants defines "landlord" to include both a "managing company" and a "managing agent."  See TEX. PROP. CODE § 92.151(7) ("'Landlord' means a ... management company, or managing agent, including an on-site manager").[16] Still another section of the property code defines the term landlord to include the property manager. See TEX. PROP. CODE. § 94.001 ("landlord" means "the owner or manager of a manufactured home community and includes an employee or agent of the landlord") (emphasis added). This shows the Legislature did not take a narrow or restrictive view of the term. Regardless of how the term "landlord" is defined or construed, here it does not matter because Defendants are jointly and severally liable to Plaintiff and the Class as landlords and owners for the reasons explained in paragraph 37 - 39 above.

**D.**      **The Class and the Class Period.**

37.      The remaining members of the Class besides Plaintiff, as defined below, are current or former residential tenants of Post-branded apartment properties in Texas during the Class Period. These properties, now owned by Defendants under the MAA/Post merger are in the Austin, Dallas/Fort Worth, and Houston metropolitan areas.  Because Defendants (as did Post) uses a centralized system and policies to bill and collect rent late fees from its residential tenants in

---

[16] This subsection of the Property Code expressly applies to apartments.  TEX. PROP. CODE § 92.152(b)(4) ("a dwelling to which this subchapter applies includes: ... (4) a living unit in an apartment ...").

Texas, it is likely that class members have suffered the same or similar harm as Plaintiff in the form of unreasonable and excessive rent late fees.

## IV.  CLASS ACTION ALLEGATIONS

38.    As set forth below, the proposed Class satisfies the requirements for a class action.

39.    Plaintiff brings the claims for relief alleged in this complaint pursuant to FED. R. CIV. P. 23 on behalf of himself and a class defined as follows (the "Class"):

a.    The Class consists of (i) all persons who, under written Post leases, are or were residential tenants of Post-branded apartment properties in Texas (such properties being formerly owned by Post Apartment Homes LP and now owned by MAA LP through merger), and (ii) who were assessed late fees on past due rent paid at least one day late and not more than ten days late during the Class Period.

b.    The "Class Period" means the period commencing four years prior to the date this case was filed and continuing to the date of judgment or as otherwise defined by the Court.

c.    The Class excludes the following persons:

(i)     the judge(s) assigned to this case and his or her staff;
(ii)    governmental entities;
(iii)   Defendants and its affiliates;
(iv)    persons adjudged to be bankrupt;
(v)     persons who have previously released Defendants (and Post) of the claims raised by this case; and
(vi)    persons who abandoned their apartment units without paying rent or who were evicted by Defendants (or Post) for nonpayment of rent.

40.    Plaintiff is a member of the Class he seeks to represent, as detailed in the factual background and the claims for relief section of this complaint.  The averments of fact and questions of law are common to the Class.

41.    The Class is believed to include thousands of members.  The Class is so numerous and spread out across the State of Texas that joinder of all members is impracticable.

42.     This action is governed by Section 92.019. The leases in question are common, standardized, and consistent among the Class. The only variances (if any) being minor and irrelevant.

43.     The averments of fact and questions of law common to the members of the Class predominate over any question affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  A class action is the superior way of resolving the claims raised in this case because:

     a.     The questions of law and fact are so uniform across the Class there is no reason why individual Class members would want to control the prosecution of their own actions at their own expense;

     b.     The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

     c.     The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each Class member and not just those who can afford to bring their own actions; and

     d.     Defendants and their predecessors had actual knowledge of applicable Texas law yet acted deliberately and intentionally in charging its tenants prohibited fees and surcharges to likely add millions of dollars to its bottom line on the backs of its tenants.  Many, if not all, of the Class members may never discover Defendants' wrongful actions.  Thus, in the absence of a class action, Defendants likely will be unjustly enriched by millions of dollars to the detriment of unknowing Class members.

44.     Defendants and their predecessors engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class members.  The same statutory violations and breach of contract claims are involved.  Individual questions, if any, pale by comparison to the numerous common questions that predominate.

45.     The injuries sustained by Class members flow, in each instance, from a common nucleus of operative facts.  In each case, Defendants charged Class members excessive and prohibited

late fees for rent in violation of Texas law.

46.     Class members have been damaged by Defendants' misconduct.  Class members have been charged and have paid excessive amounts to Defendants, allowing Defendants to impermissibly profit by adding excessive and impermissible late fees for rent.

47.     Plaintiff's claims are typical of the claims of the other Class members.  Plaintiff was charged an excessive and impermissible late fee by Defendants for rent paid a day late.

48.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is familiar with the basic facts underlying the Class members' claims.

49.     Plaintiff's interests do not conflict with the interests of the other Class members they seek to represent.  Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously.

50.     Plaintiff's counsel has successfully prosecuted complex class actions, including several similar tenant class action cases involving Texas statutes.  Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

51.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members.  The relief sought per individual Class member is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Defendants; and their predecessors' conduct.  Furthermore, it would be virtually impossible for Class members to seek redress on an individual basis.  Even if Class members themselves could afford such individual litigation, the court system could not.

52.     Individual litigation of the legal and factual issues raised by Defendants' and their predecessors' conduct would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a

single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.  Defendants are required by law to maintain the records needed to identify the members of the Class, and on information and belief, this information is stored in Defendants' or their predecessors' electronic property management databases, making the information relatively easy to retrieve.

53.    Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class.

54.    For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**V.    CLAIM FOR RELIEF**

**A.    Violation of Section 92.019 of the Texas Property Code.**

55.    As set forth above, Defendants charged Plaintiff and the Class impermissible late fees in violation of Section 92.019.  Defendants' late fee scheme for past due rent at Post-branded apartment properties in Texas (a) was not predicated on estimated damages resulting from late payment of rent, and (b) cannot as a result bear any reasonable relationship to any damage it might have incurred.  Because Defendants failed to satisfy the condition precedent under the statute to estimate their damages, they were not permitted to charge tenants any rent late fees. Thus, the Court may determine as a matter of law that all rent late fees assessed and collected by Defendants from Plaintiff and the putative class were unlawful overcharges.

56.    Plaintiff seeks to recover three times the amount of all rent late fees paid by Plaintiff and the putative class during the class period, along with a $100 penalty for each such violation per class member, attorney fees, interest, and costs of court.

## VI.    JURY DEMAND

57.    Plaintiff demands a trial by jury and has tendered the appropriate fee.

### PRAYER

58.    Plaintiff seeks an order of this Court certifying this case as a class action for the benefit of the Class with adequate notice to same, and, upon final hearing, seek a judgment against Defendants for: (a) statutory damages under Section 92.019 of the Texas Property Code equal to three times the amount of all illegal rent late fees charged to the Class; (b) a statutory penalty equal to $100.00 for each class member for each statutory violation of the property code; (c) prejudgment and post judgment interest at the highest rate allowed by law; (d) reasonable attorney fees; (e) court costs; and (f) such other relief, at law or in equity, as the Court may deem just and proper, including but not limited to injunctive relief and unjust enrichment relief.

Respectfully submitted,

By: */s/ Britton D. Monts*
BRITTON D. MONTS
State Bar No. 14303900
THE MONTS FIRM
401 Congress Ave., Suite 1540
Austin, Texas 78701-3851
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Facsimile


R. MARTIN WEBER, JR.
State Bar No. 00791895
RICHARD E. NORMAN
State Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
(713) 651-1771 – Telephone
(713) 651-1775 – Facsimile

JASON W. SNELL
Bar No. 24013540
THE SNELL LAW FIRM, PLLC
Chase Tower
221 W. 6th Street, Suite 900
Austin, Texas 78701
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Facsimile

ATTORNEYS FOR PLAINTIFF AND THE CLASS