IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATHANAEL BROWN, *for himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> MID-AMERICA APARTMENTS, LP, *as successor in merger to* POST APARTMENT HOMES, LP *d/b/a* POST SOUTH LAMAR, POST EASTSIDE, POST PARK MESA, POST GALLERY, POST WEST AUSTIN, POST SIERRA AT FRISCO BRIDGES, POST KATY TRAIL, POST ABBEY, POST ADDISON CIRCLE, POST COLE'S CORNER, POST BARTON CREEK, POST HEIGHTS, POST LEGACY, POST MERIDIAN, POST MIDTOWN SQUARE, POST SQUARE, POST UPTOWN VILLAGE, POST VINEYARD, POST VINTAGE; and MID-AMERICA APARTMENT COMMUNITIES, INC., *as general partner of* MID-AMERICA APARTMENTS, LP; <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § | 1:17-CV-307-RP |

## **ORDER**

Before the Court is the report and recommendation of United States Magistrate Judge Mark Lane, (Dkt. 57), concerning Plaintiff Nathanael Brown's ("Brown") Motion for Class Certification, (Dkt. 26). Also before the Court are the timely objections filed by Defendants Mid-America Apartments, LP and Mid-America Apartment Communities, Inc. (collectively, "Defendants"). (Dkt. 60).

This case was referred to Magistrate Judge Lane for a report and recommendation on the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d)

1

of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

In his report and recommendation, Magistrate Judge Lane recommends that the Court grant Brown's motion and certify the proposed class. (R. & R., Dkt. 57, at 21). Having considered the parties' submissions, the record, and the applicable law, the Court will adopt the report and recommendation.

## I. BACKGROUND

This case concerns apartment late fees. Brown is a former tenant in of the Defendants' apartment properties in Austin, Texas. (*Id.* at 2). Defendants (and their predecessors-in-interest, Post Properties, Inc. and Post Apartment Homes, L.P.) have used a uniform, fixed late-fee policy under which tenants are charged a late fee equal to 10 percent of their rent. (*Id.*). Brown was assessed a 10 percent late fee in December 2015. (*Id.* at 3). He alleges that the late fee was charged in violation of Texas Property Code § 92.019 ("Section 92.019"), which requires that a late fee be "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent." TEX. PROP. CODE § 92.019(a)(2).

Brown filed his Motion for Class Certification on February 9, 2018. (Dkt. 26). In his motion, Brown asks the Court to certify the following class:

> All persons during the class period who (i) were residential lease tenants of Post-branded apartment properties in the State of Texas under written leases (such properties being formerly owned by Post Apartment Homes LP and affiliates and now owned by MAA LP through merger), and (ii) were charged (and which Defendants' records show as paid) at least one fixed rent late fee equal to 10% of their monthly rent.

(Mot. Class Cert., Dkt. 26, at 12). The proposed Class Period is defined as April 10, 2013, through

September 30, 2017. (*Id.* n.7). The proposed class excludes certain individuals.[1]

Magistrate Judge Lane found sufficient grounds to certify Brown's proposed class and recommended that the Court grant Brown's motion. (R. & R., Dkt. 57, at 21). Defendants then timely filed objections to parts of the report and recommendation. (Objs., Dkt. 60).

## II. LEGAL STANDARDS

*A. Federal Magistrates Act*

Under federal statute and the Federal Rules of Civil Procedure, magistrate judges may make findings and recommendations on dispositive motions. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). Motions for class certification are dispositive motions under the Federal Magistrates Act. *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 763 (5th Cir. 2016) (citing 28 U.S.C. § 636(b)(1)(A)). For dispositive motions, parties are entitled to *de novo* review of any part of the magistrate judge's report and recommendation that has been properly objected to. Fed. R. Civ. P. 72(b)(3). A district court can review those portions of the report and recommendation to which no timely objections have been filed for clear error. *See* Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the [district] court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

*B. Class Certification*

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23(a) imposes four prerequisites on plaintiff-putative class members seeking certification of a class: (1) numerosity, i.e., a class so large that joinder of all members is impracticable; (2) commonality, i.e., that there are

---

[1] The proposed class excludes the following persons: (i) the judge(s) assigned to this case and his or her staff; (ii) governmental entities; (iii) Defendants and their affiliates; (iv) persons adjudged to be bankrupt during the class period; (v) persons who previously released Defendants (and Post) of the claims raised by this case; and (vi) persons who abandoned their apartment units without paying rent or who were evicted by Defendants (or Post) for nonpayment of rent. (Mot. Class Cert., Dkt. 26, at 12 n.7).

3

questions of law or fact common to the class; (3) typicality, i.e., that the named plaintiffs' claims or defenses are typical of those of the class; and (4) adequacy of representation, i.e., that the representatives will fairly and adequately protect the interests of the class. *Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 216 (5th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).

Additionally, if a plaintiff seeks class certification under Rule 23(b)(3), he must also demonstrate (1) predominance, i.e., "that questions common to the class members predominate over questions affecting only individual members"; and (2) superiority, i.e., "that class resolution is superior to available methods for fairly and efficiently adjudicating the controversy." *Ackal*, 700 F.3d at 216 (quoting *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005)).

Finally, the Fifth Circuit has interpreted Rule 23 to contain an implied prerequisite of ascertainability. "Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'" *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.3 (5th Cir. 2007); *see also DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).

To determine whether class certification is appropriate, courts "must conduct intense factual investigation," *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012) (quoting *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420 (5th Cir. 2004)), and the "unique facts of each case will generally be the determining factor governing certification." *Robinson*, 387 F.3d. at 421. The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 have been met. *Funeral Consumers All., Inc.*, 695 F.3d at 345 (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737-38 (5th Cir. 2003)).

4

## III. DISCUSSION

Defendants objected to portions of the magistrate judge's report and recommendation, and they are entitled to *de novo* review of those parts of the report and recommendation. Having conducted a *de novo* review of the record and applicable law where appropriate,[2] the Court agrees with the magistrate judge's factual findings and legal conclusions and adopts the report and recommendation in its entirety.

In adopting the magistrate judge's report and recommendation in full, the Court has considered and overruled each of Defendants' objections. The Court will discuss several of Defendants' objections to the magistrate judge's findings and conclusions pertaining to predominance, superiority, and commonality below.

*A. Predominance*

Defendants object to the magistrate judge's recommendation concerning predominance. (Objs., Dkt. 60, at 6–10). Defendants argue that the report and recommendation ignored a number of issues that will require individualized assessment and that *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir. 2003), is controlling precedent for the conclusion that individualized issues will predominate over common issues in this case. (*Id.* at 7–8).

Brown's position is that Defendants' late-fee policy is not a reasonable estimate of uncertain damages because it is not an estimate at all. (Mot. Class Cert., Dkt. 26, at 6–7, 24). Defendants admit that they charge a 10 percent late fee as a standard policy. (Answer, Dkt. 8, ¶ 30; Resp. Mot. Class Cert., Dkt. 29, at 3). The 10 percent late fee is a standard policy, (Mot. Class Cert. Ex. 16, Dkt. 27-9, at 4), and every tenant in a Post-owned property signed a lease with that late fee provision. (Sear

---

[2] No party objected to the magistrate judge's findings and recommendations concerning the proposed class's numerosity, typicality, or adequacy. There being no objections to these portions of the magistrate judge's report and recommendation, the Court reviews them for clear error and finds none.

5

Decl., Dkt. 30-2, ¶ 9). Defendants admit that they have used leases containing the 10 percent late fee provision for over a decade, well before the beginning of the proposed class period. (Resp. Pl.'s Interrog. 3, Mot. Class Cert. Ex. 29, at 5; Sear Dep., Dkt. 26-25, at 39–40). Defendants' designated corporate representative does not know who decided to adopt the late fee policy or why that unknown person chose to set the fee at 10 percent of a tenant's rent. (Sear Dep., Dkt. 26-25, at 43–47). Nor is there any document to support the decision to set the late fee at 10 percent. (*Id.* at 76). Defendants do not argue anywhere that they set late fees on an individualized basis. In light of these facts, the magistrate judge found that Defendants' liability under Section 92.019 can be determined on a classwide basis and that the common issues predominated over the individual. (R. & R., Dkt. 57, at 8, 11–14).

Defendants' objections fail to explain why individual issues will be predominant in this litigation. Defendants argue that Brown's proposed class definition predicates class membership "on fees that were paid, not just 'charged,'" which will require individualized inquiry. (Objs., Dkt. 60, at 7). It is true that under the proposed class definition, a factfinder will need to determine if an individual paid a late fee in order to determine whether that individual is a class member. But the relevance of this fact issue is limited to determining class membership. The amount paid or the fact of payment is irrelevant to the central issue of Defendants' liability, because the amount paid is irrelevant to liability under Section 92.019, which prohibits a landlord from charging (rather than receiving payment of) an illegal late fee and sets damages according to the fee charged (rather than the amount paid). TEX. PROP. CODE § 92.019(a)(2), (c). Moreover, determining potential class members' payment does not appear to be so complex a task that it will predominate over the common issues concerning liability. Defendants have records of which tenants paid late fees. (*See, e.g.*, Mot. Class Cert., Dkt. 26, at 8–9; R. & R., Dkt 60, at 20). Determining whether a tenant paid a

late fee can be ascertained by querying data from Defendants' databases; identifying those tenants will not significantly complicate the task of ascertaining class membership. (*See* R. & R., Dkt. 60, at 20; Vachani Decl., Dkt. 27-11; Jewell Decl., Dkt. 27-12).[3] The predominance inquiry asks whether common issues are "more prevalent or important" than the non-common individual issues. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Identifying class members according to payment is not a more prevalent or important issue than the common issues that will determine Defendants' liability—namely, whether Defendants conducted an estimate before setting the late fee that appears in each proposed class member's lease, and if so, whether that estimate is reasonable. (*See* R. & R., Dkt. 57, at 7–8).

Defendants' reliance on *O'Sullivan* is similarly unpersuasive.[4] The class members in *O'Sullivan* alleged that a legal service provider's reimbursement payments to a mortgage company were kickbacks under federal law rather than permissible payments for goods or service services provided. *O'Sullivan*, 319 F.3d at 736–39. The difference between a kickback and a permissible payment turned on whether the payment bore a reasonable relationship to the market value of the goods or services provided in exchange. *Id.* at 739. However, the mortgage company's goods and services differed by transaction. *Id.* at 741. To determine liability, then, a court would have had to look transaction-by-

---

[3] Defendants object that the magistrate did not acknowledge obstacles to ascertainability and ignored "undisputed testimony" from experts regarding ascertainability. (Objs., Dkt. 60, at 2, 15 n.8). On the contrary, the magistrate considered "extensive testimony" regarding the capabilities of Defendants' property management databases, including expert testimony from both parties. (R. & R., Dkt. 57, at 19–20). Having considered those obstacles, the magistrate found that the proposed class was ascertainable. (*Id.* at 20). The Court agrees that there is sufficient evidence—including evidence from Defendants' own employees—from which to conclude that Brown's proposed class is ascertainable. (*See* Mot. Class Cert. Exs. 7–8, 11-14, 21–22, and 24–26).

[4] Among Defendants' reasons for relying on *O'Sullivan*, their principal argument appears to be that Brown's theory of liability under Section 92.019 requires a prospective estimate of damages for each tenant. (Resp. Mot. Class Cert., Dkt. 29, at 18 ("Plaintiff asserts that the 'reasonable estimate' of damages must occur 'prospectively' for each tenant.")). That does not accurately reflect Brown's position. While Brown argues that Section 92.019 requires a prospective estimate of damages, (*see* Mot. Class Cert., Dkt. 26, at 5), he does not argue that the estimation need be individualized, and in fact takes the position that Defendants can prove their compliance with Section 92.019 by way of common evidence, (*see id.* at 18–19).

7

transaction at whether each reimbursement payment bore a reasonable relationship to the goods and services for which it was made. *Id.* at 742. Because liability turned on the analysis of individual transactions, class certification was improper. *Id.*

Unlike *O'Sullivan*, the facts in this case can establish Defendants' liability without requiring a transaction-by-transaction analysis. Brown argues that Defendants' late-fee policy is not a reasonable estimate of uncertain damages because it is not an estimate at all. (Mot. Class Cert., Dkt. 26, at 6–7, 24). There is no evidence that Defendants conducted a separate estimate to determine the late fee provision in each proposed class member's lease; the late fee was set according to a standard policy. If Defendants conducted an estimate, they did so once, when they considered and instituted that policy. Whether Defendants set their standard late fee according to an estimate will be true for every proposed class member or for none of them.

Brown also takes the position that even if Defendants' standard late fee is the product of an estimate, that estimate was not a reasonable one. (*Id.* at 24). Brown argues that the reasonability of Defendants' estimate is a common issue because "Defendants made no effort to distinguish the late fees on the basis of any tenant's particular situation" because "the late fee policy is fixed." (*Id.* at 25). Brown argues that reasonability under Section 92.019 should be determined only by reference to facts available to the landlord before setting the late fee. (Reply, Dkt. 34, at 16 ("[R]etrospective, after-the-fact analysis of reasonableness is not allowed by Section 92.019.")). If Brown is correct about how to construe Section 92.019, any evidence of reasonableness would be common to each proposed class member because each proposed class member's policy was set according to the same *ex ante* considerations at the time Defendants considered and instituted the uniform policy.[5]

---

[5] Even Defendants' evidence that they conducted a reasonable estimate of their damages before setting their late fee policy is common to the entire class. (*See* Defs.' Mot. Summ. J., Dkt. 86, at 7 (citing the declaration from a former Post

8

Defendants' reliance on *O'Sullivan* suggests that they believe that reasonableness under Section 92.019 should be determined not by looking at what a landlord did before setting the late fee, but by comparing each individual late fee and the ultimate costs resulting from that particular late payment.[6] Depending on the facts of a particular case, such an interpretation could require transaction-by-transaction analysis to determine liability. But here, there is no evidence that Defendants' late-payment costs are variable according to the tenant or that Defendants can or do calculate their late-payment damages on an individual level. On the contrary, the evidence suggests that Defendants do not calculate individual-level late-payment costs. (Sear Dep., Dkt. 30-1, at 78–80; Sear Dep., Dkt. 26-25, at 81–84). In fact, Defendants' evidence is aggregated and common to the entire class: to prove that their late-payment damages reasonably approximate their late fee revenues, Defendants ask the Court to consider compare their total collection costs with their total late fee revenues. (Defs.' Mot. Summ. J., Dkt. 86, at 18). Central to the court's holding in *O'Sullivan* was the fact that while payments were fixed, the comparative values—the market value of the goods and services provided—were variable and transaction-specific. *O'Sullivan*, 319 F.3d at 741–42. In this case, there is no evidence of transaction-level variable costs that would enable the Court to compare a particular tenant's late fees with the costs associated with that tenant's late payment. Regardless of whether the Court adopts Brown's approach to analyzing reasonableness under Section 92.019 or Defendants', *O'Sullivan* is inapt.

Next, Defendants object that class litigation would strip them of the ability to assert defenses and counterclaims. They argue that "nothing in § 92.019 acts to strip landlords of their right to

---

executive, in which he states that "Post considered the processes it utilized to collect delinquent rents from tenants" before determining that a ten percent late fee was reasonable) (quoting Wilkes Decl., Dkt. 87-9, ¶ 6)).

[6] Defendants' arguments on the merits confirm that they advocate a construction of Section 92.019 under which a late fee's reasonableness is determined not by the quality of a landlord's *ex ante* estimation of its future damages but instead by the degree to which the late fee ultimately approximates the landlord's damages. (*See* Defs.' Mot. Summ. J., Dkt. 86, at 14–17).

maintain an action against their tenants for breach of lease." (Objs., Dkt. 60, at 13). Nor would certifying Brown's proposed class—Defendants would remain free to being separate actions against class members. Defendants suggest that they should be able to present the defense that class members should have mitigated their damages by not paying their rent late in the first place. (Resp. Mot. Class Cert., Dkt. 29, at 19–20). Defendants suggest that they can assert an estoppel defense against Brown because he "renewed his lease multiple times even after paying late-rent fees." (Objs., Dkt. 60, at 9 n.2). Defendants also make conclusory reference to other defenses, such as unclean hands and consent. (Resp. Mot. Class Cert., Dkt. 29, at 19).

These defenses make little sense in the context of Section 92.019. Section 92.019 predicates liability on a late fee being charged pursuant to a written lease. TEX. PROP. CODE § 92.019(a)(1). The statute therefore only applies when a tenant has breached his or her lease and when the tenant consented to the late fee provision by agreeing to the lease. If breach of lease, mitigation, or estoppel were applicable defenses, they would apply in every instance that a landlord would be liable under Section 92.019 and the statute would be meaningless. Although Defendants do not describe their consent defense, a consent defense based on payment is barred by the explicit text of the statute. TEX. PROP. CODE § 92.019(e) ("Payment of the fee, charge, or other sum of money by a tenant does not waive the right or remedies provided by this section."). The Court does not agree that these defenses will apply to Section 92.019, much less predominate in this case.[7]

Finally, Defendants argue that the magistrate judge's predominance analysis ignored the relevance of courtesy waivers. (Objs., Dkt. 60, at 9–10; *see also* Resp. Mot. Class Cert., Dkt. 29, at 22–23). Defendants argue that differences in how their employees were permitted to waive late fees before and after their acquisition of the Post properties demonstrate that individual issues

---

[7] Notably, in their response to Brown's partial motion for summary judgment, (Dkt. 44), Defendants fail to assert an estoppel defense—or any other individual defense—against Brown.

10

predominate over common questions. (*Id.* at 10). Those differences are irrelevant. Section 92.019 imposes liability when a late fee is charged; the proposed class only includes tenants who were charged a late fee and paid it. If Defendants waived a tenant's fee before it was charged, that tenant is not part of the proposed class. If Defendants charged a tenant a late fee but waived it before the tenant paid the fee, that tenant is not part of the proposed class. Any differences among employees' waiver practices therefore only distinguish tenants who are not included in the proposed class. Those differences have no effect on the analysis of the proposed class members' claims.

Two questions will drive the outcome of this litigation: did Defendants estimate their damages before contracting with the proposed class members, and if so, was that estimate a reasonable one under Section 92.019? (*See* Mot. Class Cert., Dkt. 26, at 18). Those are common questions to the proposed class because their answers will resolve issues central to each proposed class member's claim in "one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). And those common questions are more important than the individual fact questions surrounding class membership and mechanical damages calculations. The Court agrees with the magistrate that the common issues are predominant. (*See* R. & R., Dkt. 57, at 14).

*B. Superiority*

Defendants also object to the magistrate judge's analysis of the superiority requirement. (Objs., Dkt. 60, at 10–14). First, Defendants argue that the magistrate rejected the holding of *Ticknor v. Rouse's Enters, L.L.C.*, 592 F. App'x 276 (5th Cir. 2014). (*Id.* at 11). On the contrary, the magistrate properly considered *Ticknor*, which acknowledged that "the availability of attorney's fees and punitive damages is a common basis for finding non-superiority," *id.* at 279, but did not hold that the availability of attorney's fees compels a finding of non-superiority. (R. & R., Dkt. 57, at 16). In fact, the *Ticknor* court emphasized "the broad discretion enjoyed by district courts regarding

11

certification," which "may lead to disparate results" regarding class certification even in similar cases. *Ticknor*, 592 F. App'x at 279; *see also Sistrunk v. TitleMax, Inc.*, No. SA14CA628RPHJB, 2016 WL 9450445, at *9 (W.D. Tex. Aug. 26, 2016), *report and recommendation approved*, No. 5:14-CV-628-RP, 2016 WL 9450689 (W.D. Tex. Nov. 16, 2016) (certifying a class post-*Ticknor* despite the availability of attorney's fees when other factors counseled in favor of finding superiority).

Next, Defendants argue that the magistrate provided "no analysis as to how [the] case would be tried." (Objs., Dkt. 60, at 11). Again, this objection ignores the text of the report and recommendation, which acknowledged the "trial plan and other evidence before the court" suggesting that uniform evidence will be needed to establish liability across the class. (R. & R., Dkt. 57, at 17). Having considered Brown's proposed trial plan, (Mot. Class Cert. Ex. 19, Dkt. 26-19), the magistrate was persuaded that a single proceeding would be "the simplest and most manageable way to address the issues in this case." (R. & R., Dkt. 57, at 17). So, too, is this Court. As discussed elsewhere in this order and in the report and recommendation, Defendants' liability can be determined according to conduct that is common to each proposed class member. (*See id.* at 6–8; *supra* at 8, 11). If liability is established, damages under Section 92.019 are assessed according to mechanical arithmetic. TEX. PROP. CODE § 92.019(c). The Court agrees with the magistrate's finding that Brown's proposed trial plan is persuasive evidence that class proceedings would be simpler and more efficient than a series of individual trials.

Third, Defendants object that *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 738 (5th Cir. 1996), bears on the superiority analysis in this case. (Objs., Dkt. 60, at 12–14). Defendants point to the following language from *Castano*:

> The plaintiffs' claims are based on a new theory of liability and the existence of new evidence. Until plaintiffs decide to file individual claims, a court cannot, from the existence of injury, presume that all or even any plaintiffs will pursue legal remedies. Nor can a court make a superiority determination based on such speculation.

(*Id.* at 12 (citing *Castano*, 84 F.3d at 747–48)). They ask the Court to take from that language the global proposition that a lack of prior individual-claim litigation weighs against finding superiority. (Objs., Dkt. 60, at 12). They object that the magistrate's contextual reading of that language incorrectly limits its precedential weight. (*Id.* at 14).

The Court agrees with Defendants that "[i]n considering the superiority requirement, a district court must possess 'an understanding of the relevant claims, defenses, facts, and substantive law presented in the case.'" (Resp. Mot. Class Cert., Dkt. 29, at 16 (quoting *Robinson*, 387 F.3d at 425)). Otherwise, the court could not properly "consider how a trial on the alleged causes of action would be tried." *Robinson*, 387 F.3d at 425 (citing *Castano*, 84 F.3d at 741) (quotation marks omitted). In certain novel cases, it might be particularly difficult to understand the causes of action or predict the management of a trial in the absence of a track record of similar litigation. As the magistrate recognized, *Castano* was complex and novel tort litigation. (R. & R., Dkt. 57, at 18). It proceeded on a "wholly untested theory" of liability for nicotine addiction involving a nationwide class and a four-phase trial plan. *Castano*, 84 F.3d at 737–38. The plaintiffs asserted "eight theories of liability from every state," and the district court had to determine whether variations in state law defeated predominance. *Id.* at 750.

These facts drove the *Castano* court's concerns about the lack of prior litigation, which were specific to the nature of that case. The court observed that "certification of mass tort litigation classes has been disfavored" because of the pressure that class certification places on defendants to settle. *Id.* at 746. That concern was "magnified" in *Castano* because "a mass tort cannot be properly certified without a prior track record of trials" from which to inform the superiority analysis. *Id.* at 747; *see also id.* ("[C]ertification of an immature tort results in a higher than normal risk that the class action may not be superior to individual adjudication"). The court therefore discounted the district

(*Id.* at 12 (citing *Castano*, 84 F.3d at 747–48)). They ask the Court to take from that language the global proposition that a lack of prior individual-claim litigation weighs against finding superiority. (Objs., Dkt. 60, at 12). They object that the magistrate's contextual reading of that language incorrectly limits its precedential weight. (*Id.* at 14).

The Court agrees with Defendants that "[i]n considering the superiority requirement, a district court must possess 'an understanding of the relevant claims, defenses, facts, and substantive law presented in the case.'" (Resp. Mot. Class Cert., Dkt. 29, at 16 (quoting *Robinson*, 387 F.3d at 425)). Otherwise, the court could not properly "consider how a trial on the alleged causes of action would be tried." *Robinson*, 387 F.3d at 425 (citing *Castano*, 84 F.3d at 741) (quotation marks omitted). In certain novel cases, it might be particularly difficult to understand the causes of action or predict the management of a trial in the absence of a track record of similar litigation. As the magistrate recognized, *Castano* was complex and novel tort litigation. (R. & R., Dkt. 57, at 18). It proceeded on a "wholly untested theory" of liability for nicotine addiction involving a nationwide class and a four-phase trial plan. *Castano*, 84 F.3d at 737–38. The plaintiffs asserted "eight theories of liability from every state," and the district court had to determine whether variations in state law defeated predominance. *Id.* at 750.

These facts drove the *Castano* court's concerns about the lack of prior litigation, which were specific to the nature of that case. The court observed that "certification of mass tort litigation classes has been disfavored" because of the pressure that class certification places on defendants to settle. *Id.* at 746. That concern was "magnified" in *Castano* because "a mass tort cannot be properly certified without a prior track record of trials" from which to inform the superiority analysis. *Id.* at 747; *see also id.* ("[C]ertification of an immature tort results in a higher than normal risk that the class action may not be superior to individual adjudication"). The court therefore discounted the district

(*Id.* at 12 (citing *Castano*, 84 F.3d at 747–48)). They ask the Court to take from that language the global proposition that a lack of prior individual-claim litigation weighs against finding superiority. (Objs., Dkt. 60, at 12). They object that the magistrate's contextual reading of that language incorrectly limits its precedential weight. (*Id.* at 14).

The Court agrees with Defendants that "[i]n considering the superiority requirement, a district court must possess 'an understanding of the relevant claims, defenses, facts, and substantive law presented in the case.'" (Resp. Mot. Class Cert., Dkt. 29, at 16 (quoting *Robinson*, 387 F.3d at 425)). Otherwise, the court could not properly "consider how a trial on the alleged causes of action would be tried." *Robinson*, 387 F.3d at 425 (citing *Castano*, 84 F.3d at 741) (quotation marks omitted). In certain novel cases, it might be particularly difficult to understand the causes of action or predict the management of a trial in the absence of a track record of similar litigation. As the magistrate recognized, *Castano* was complex and novel tort litigation. (R. & R., Dkt. 57, at 18). It proceeded on a "wholly untested theory" of liability for nicotine addiction involving a nationwide class and a four-phase trial plan. *Castano*, 84 F.3d at 737–38. The plaintiffs asserted "eight theories of liability from every state," and the district court had to determine whether variations in state law defeated predominance. *Id.* at 750.

These facts drove the *Castano* court's concerns about the lack of prior litigation, which were specific to the nature of that case. The court observed that "certification of mass tort litigation classes has been disfavored" because of the pressure that class certification places on defendants to settle. *Id.* at 746. That concern was "magnified" in *Castano* because "a mass tort cannot be properly certified without a prior track record of trials" from which to inform the superiority analysis. *Id.* at 747; *see also id.* ("[C]ertification of an immature tort results in a higher than normal risk that the class action may not be superior to individual adjudication"). The court therefore discounted the district

court's conclusion that "a class trial would preserve judicial resources in the millions of individual trials" because "not every mass tort will result in [a] judicial crisis" and the district court had not properly considered that a "judicial crisis may fail to materialize." *Id.* The lack of a track record was so important in *Castano* because the district court had based certification in a mass tort case, in part, on an expectation of a flood of litigation that was uncertain given the untested theory of liability. The same concern may not be present in other, less factually complex cases. Indeed, the case Defendants cite to demonstrate the weight of *Castano*'s precedential value is another mass tort case proceeding on an untested theory of liability, itself citing *Castano* for a mass-tort-specific premise. *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 605 (W.D. Tex. 2006) (citing *Castano*, 84 F.3d at 738, 747 ("[A] mass tort cannot be properly certified without a prior track record of trials from which the district court can draw the information necessary to make the predominance and superiority analysis required by rule 23.")); *see also In re Norplant Contraceptive Prod. Liab. Litig.*, 168 F.R.D. 577, 578–79 (E.D. Tex. 1996) (describing the case as "mass tort litigation" and citing *Castano* for its statement that "while the tort is immature, the class complaint must be dismissed.")).

The Court agrees with the magistrate judge that the *Castano* court's prior-litigation concerns have at most a limited application to this case. As the magistrate points out, there are few of the legal or factual complexity concerns here that were present in *Castano*. (*See* R. & R., Dkt. 18–19). The question is not simply "whether novel questions exist," (Objs., Dkt. 60, at 13 n.6); the question is whether the novel questions are sufficiently complex that a district court would be unable to understand the defenses or claims or predict how a trial might be managed. *See Robinson*, 387 F.3d at 425. The novel issues suggested by Defendants, (Objs., Dkt. 60, at 18; Resp. Mot. Class Cert., Dkt. 29, at 15), do not persuade the Court that individual litigation is superior or deprive the Court of the ability to predict how a trial might proceed.

14

As for the Defendants' final objection on superiority, the Court agrees with the substance of Defendants' objection but does not find that it warrants a finding of non-superiority. Defendants argue that the lack of evidence of other litigation by the proposed class members disfavors a finding of superiority. (Objs., Dkt. 60, at 11-12). The Court agrees with Brown that an absence of other litigation favors a finding of superiority, because the presence of other litigation would favor a contrary finding. (*See* Reply, Dkt. 34, at 12 (citing Fed. R. Civ. P. 23 advisory committee's note ("[T]he court should inform itself of any litigation actually pending by or against the individuals. The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action."))). However, Brown has the burden to present evidence of a lack of related similar litigation by the proposed class members and has failed to carry that burden. Accordingly, the Court cannot make such a finding. *See Sistrunk*, 2016 WL 9450445, at *9.

Nonetheless, the Court agrees with the magistrate that class proceedings would be superior to a series of individual lawsuits. The superiority analysis is "a comparative process" in which the Court must assess "the relative advantages of alternative procedures for handling the total controversy." *In re TWL Corp.*, 712 F.3d 886, 896 (5th Cir. 2013) (citations and quotation marks omitted). The Court considers the Rule 23(b)(3) factors, but acknowledges that "no single element is determinative." 7AA Charles Alan Wright et al., Fed. Prac. & Proc. § 1780 (3d ed. 2005). Not only that, but the Rule 23(b)(3) factors are not exhaustive and the court can consider "whatever other factors it deems relevant to the determination." *TWL Corp.*, 712 F.3d at 895.

The Court finds that class litigation would be superior to a series of individual lawsuits based on the desirability of concentrating the litigation of claims in a particular forum and the difficulties likely to be encountered in the management of a class action. Based on the evidence before the Court at this stage, it appears that Defendants' liability will turn on questions of statutory

15

interpretation and resolutions of fact disputes that are common to each proposed class member. Through the parties' considerable litigation of this case, the Court is familiar with the facts of Defendants' conduct that will be relevant to every proposed class member's claim. Through this litigation and other recent late-fee cases, this Court is familiar with the legal arguments relevant to Section 92.019. *See* Complaint, *Cleven v. Mid-American Apartment Cmtys., Inc.*, 1:16-CV-820-RP (W.D. Tex. Aug. 23, 2017); Complaint, *Dominguez v. Mid-American Apartment Cmtys., Inc.*, 1:15-CV-239-RP (W.D. Tex. Apr. 17, 2015). Brown has proposed a litigation plan that the Court finds to be reasonable, manageable, and superior to multiple individual actions. Multiple proceedings in different forums would not only be inefficient but would create the risk of inconsistent verdicts. The Court finds that a single proceeding is the simplest, most efficient, and most manageable way to address the issues in this case.

### *C. Commonality*

Finally, Defendants object to the magistrate's recommendations regarding commonality. (Objs., Dkt. 60, at 14–15). Defendants argue that the legality of their late-fee policy cannot be a common question because Section 92.019 applies only to late fees and not to uniformly applied policies. (*Id.* at 15). The formalism of that position in unpersuasive given the facts of this case. Defendants chose to set their late fees according to a standard policy. Any individual late fee charged to a proposed class member will therefore be reasonable estimates of uncertain damages only if the policy was a reasonable estimate of uncertain damages. That determination will be true or untrue for each class member in one stroke.

### IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Magistrate Judge Lane's report and recommendation, (Dkt. 57), is **ADOPTED**. Brown's Motion for Class Certification, (Dkt. 26), is

16

**GRANTED**. Defendants' objections, (Dkt. 60), are **OVERRULED**. The Court certifies the following class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(c)(1)(B):

> All persons during the class period who (i) were residential lease tenants of Post-branded apartment properties in the State of Texas under written leases (such properties being formerly owned by Post Apartment Homes LP and affiliates and now owned by MAA LP through merger), and (ii) were charged (and which Defendants' records show as paid) at least one fixed rent late fee equal to 10% of their monthly rent.

The class period is defined as April 10, 2013, through September 30, 2017. The class excludes: (1) the judge(s) assigned to this case and his or her staff; (2) governmental entities; (3) Defendants and their affiliates; (4) persons adjudged to be bankrupt during the class period; (5) persons who previously released Defendants (and Post) of the claims raised by this case; and (6) persons who abandoned their apartment units without paying rent or who were evicted by Defendants (or Post) for nonpayment of rent.

The Court appoints Plaintiff Nathanael Brown as Class Representative. The Court appoints the Monts Firm, the Snell Law Firm, PLLC, and R. Martin Weber, Jr. and Richard E. Norman of Crowley Norman LLP as class counsel (collectively, "Class Counsel"), finding that they are adequate after considering the factors provided in Rule 23(g). The Court finds that the Class Representative and Class Counsel will fairly and adequately represent the interests of the class.

**SIGNED** on September 5, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE