**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| NATHANAEL BROWN, | § | |
| for himself and all others | § | |
| similarly situated, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| MID-AMERICA APARTMENTS, LP, as | § | |
| successor in merger to POST APARTMENT | § | |
| HOMES, LP d/b/a POST SOUTH LAMAR, | § | CASE NO. 1:17-CV-00307-RP |
| POST EASTSIDE, POST PARK MESA, | § | |
| POST GALLERY, POST WEST AUSTIN, | § | |
| POST SIERRA AT FRISCO BRIDGES, | § | |
| POST KATY TRAIL, POST ABBEY, | § | |
| POST ADDISON CIRCLE, POST COLE'S | § | |
| CORNER, POST BARTON CREEK, POST | § | |
| HEIGHTS, POST LEGACY, POST | § | |
| MERIDIAN, POST MIDTOWN SQUARE, | § | |
| POST SQUARE, POST UPTOWN VILLAGE, | § | |
| POST VINEYARD, POST VINTAGE, and | § | |
| POST WORTHINGTON, and MID-AMERICA | § | |
| APARTMENT COMMUNITIES, INC., as | § | |
| general partner of MID-AMERICA | § | |
| APARTMENTS, LP, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**
**WITH JURY DEMAND**

In accordance with the Court's Modified Scheduling Order (Dkt. 25 at 2), Nathanael

Brown ("Plaintiff"), for himself and all others similarly situated, timely files his First Amended

Class Action Complaint with Jury Demand complaining of Mid-America Apartments, LP, as

successor in merger to Post Apartment Homes, LP d/b/a Post South Lamar, Post Eastside, Post

Park Mesa, Post Gallery Creek, Post West Austin, Post Sierra at Frisco Bridges, Post Katy Trail,

Post Abbey, Post Addison Circle, Post Cole's Corner, Post Barton Creek, Post Heights, Post

Legacy, Post Meridian, Post Midtown Square, Post Square, Post Uptown Village, Post Vineyard, Post Vintage and Post Worthington ("Post-branded apartment properties in Texas"), and Mid-America Apartment Communities, Inc., as general partner of Mid-America Apartments, LP, (collectively "Defendants") as follows:

## I.  PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is, and was during all times relevant to this case, an individual residing in Travis County, Texas, and for diversity purposes, he is a citizen of Texas.

2.      Defendant Mid-America Apartments, L.P. ("MAA LP"), as successor in merger to Post Apartment Homes LP and doing business under various assumed names for the Post-branded apartment properties in Texas (listed in the style of this case) is and was during all times relevant to this case a Tennessee limited partnership with its principal place of business in Memphis, Tennessee.  MAA LP can be served with process by serving its registered agent for service in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3.      Mid-America Apartment Communities, Inc. ("MAA Inc.") is and was during all times relevant to this case a Tennessee corporation with its principal place of business in Memphis, Tennessee, and for diversity purposes, is a citizen of Tennessee.  MAA Inc. can be served with process by serving its registered agent for service in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

4.      MAA LP is the successor in merger to Post Apartment Homes, LP ("Post"). The merger was finalized on or about December 1, 2016. Pursuant to the articles of merger, Post was merged into and became MAA LP on the effective date of merger. **Ex. 1**. Prior to the merger, Post-owned and operated numerous apartment properties in the State of Texas as evidenced by assumed names filed with the Texas Secretary of State, as listed in the style of this case. **Ex. 2**

(**A-S**). As the surviving entity in the MAA/Post merger, MAA LP is the responsible party for the claims at issue in this case.

5.      Prior to the MAA/Post merger, the post-branded apartment property in Austin, Texas where Plaintiff resided as a tenant, operated under the assumed name Post South Lamar. **Ex. 2-T**). The original owner, Austin, SL, LP, a Georgia limited partnership, was merged into Austin SL, LLC, a Georgia limited liability company, effective November 22, 2016. **Ex. 3**. Simultaneously, Austin SL, LLC, a Georgia limited liability company, was merged into Austin SL Acquisition GP, LLC, a Georgia limited liability company, effective November 22, 2016. **Ex. 4**. Simultaneously, Austin SL Acquisition GP, LLC, a limited liability company, was merged into Post Apartment Homes, LP, a Georgia limited partnership, effective November 22, 2016. **Ex. 5**. As stated in paragraph 4, Post Apartment Homes, LP, a Georgia limited partnership, was merged into and became MAA LP, effective December 1, 2016 as reflected in the certificate of merger recorded with the Georgia Secretary of State. **Ex. 1**. As a result, MAA LP is the responsible party for the claims at issue in this case.

6.      Before the MAA/Post merger was completed on or about December 1, 2016, Post represented to the public that it was the owner of the Post-branded apartment properties in Texas. **Ex. 2 A-T**. The various assumed names under which Post owned these properties inured to MAA LP under the merger. This is confirmed by Defendants' website, which now lists these apartment properties in Texas as "MAA properties." **Ex. 6**.

7.      MAA Inc. is and was during all times relevant to this case the general partner of MAA LP. *See* **Ex. 9**, Application for Registration of a Foreign Limited Partnership filed with the Texas Secretary of State; **Ex. 10**, Periodic Report filed by MAA LP with the Texas Secretary of State

listing MAA Inc. as its general partner. Because MAA LP is a limited partnership, MAA Inc. is the operating entity that runs the limited partnership.

8.      The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(d) (the Class Action Fairness Act or "CAFA") because at least one Defendant is a citizen of a state different from Plaintiff, the amount in controversy exceeds $5 million exclusive of interest and costs, and there are more than 100 members of the class.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b).  Plaintiff's claim arose in the Western District of Texas, Austin Division.

10.     Plaintiff and the putative class members (the "Class" as defined below) have standing to bring the claims in this complaint under TEX. PROP. CODE § 92.019 because they are, and were during the Class Period, residential tenants in Texas under written form leases with Defendants.

## II.  INTRODUCTION AND BACKGROUND

11.     This case seeks to certify a class of current and former residential tenants at Post-branded apartment communities in Texas where Defendants (Memphis, Tennessee based business entities) are owners and landlords.   Plaintiff seeks to recover statutory remedies for himself and the Class for unreasonable and excessive rent late fees assessed during the Class Period under TEX. PROP. CODE § 92.019, which was enacted by the Legislature for the stated purpose of protecting residential tenants like those in the Class from "excessive fees and unwarranted penalties."[1]

**A.      Section 92.019 imposes limits on landlord rent late fees.**

12.     The Texas Property Code places limits on late fees a landlord can assess tenants.  Under TEX. PROP. CODE § 92.019 ("Section 92.019") a landlord may not charge a tenant a late fee for

---

[1] The legislative history of H.B. 3101 says: "Hardworking Texans deserve affordable housing without landlords ... charging excessive fees, or imposing unwarranted penalties that could take money needed for food, education, healthcare, and retirement..."  http://www.lrl.state.tx.us/scanned/hroBillAnalyses/80-0/HB3101.PDF

failing to pay rent unless:

(a)  notice of the fee is included in a written lease;

(b)  **the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent**; and

(c)  the rent has remained unpaid one full day after the date the rent was originally due.[2]

13.  A late fee under this section may include an initial fee and a daily fee for each day the rent continues to remain unpaid.[3] "**A landlord who violates this section is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees.**"[4]

14.  "A provision of a lease that purports to waive a right or exempt a party from a liability or duty under this section is void."[5] The statute is specifically intended to cover routine situations, as here, where a tenant pays her rent but does so a few days late and the landlord assesses and collects an excessive late rent as a result. It "does not affect the landlord's right to terminate the lease or take other action permitted by the lease or other law, and payment of the fee, charge, or other sum of money by a tenant does not waive the right or remedies provided by the property code."[6]

---

[2] Section 92.019(a)(1)-(3) (emphasis added).
[3] *Id.* at (b).
[4] *Id.* at (c) (emphasis added).
[5] *Id.* at (d).
[6] *Id.* at (e).

**B.**   **Texas landlords have increased rent late fees to record levels.**

15.   Over the last five years, as the economy in Texas has boomed, particularly in the Greater Austin area, landlords have increased their late fees to unprecedented levels as they try to wring every dime of revenue from tenants. First-day-late fees have increased from $50.00 to $75.00 and now some landlords assess a whopping $100.00 or more for the first day rent is late (usually the third or fourth day of the month).  In addition to the first-day-late charge, additional late fees typically are added at the rate of $10.00 - $15.00 per day until paid, usually with a cap per month in the $215.00 - $310.00 range. Defendants and their predecessors in merger, however, have taken this overreach to a new level at Post-branded apartment properties in Texas, assessing tenants a rent penalty equal to 10% of their rental rates the first day rent is paid late.

16.   If a tenant pays rent a few days late, the only likely harm to the landlord is the loss of the use of such money for a few days, *i.e.*, "time" or interest.[7]  On information and belief, the late fees assessed by Defendants and their predecessors have come to represent their largest source of ancillary (non-rent) income. Texas law prohibits landlords from charging rent late fees to increase their revenue. Instead, late fees must only compensate landlords for their estimated damages when tenants pay their rent but do so a few days late, a situation where little if any harm occurs. Defendants' and their predecessors' aggressive revenue-driven rent late fee scheme cannot be defended on any rational basis as a reasonable estimate of any alleged harm suffered.[8]

---

[7] Defendants use automated computer systems to track tenants who pay rent late. Little or no labor is involved in the process.

[8] TEX. PROP. CODE Section 92.019(a).  Defendants and their predecessors in merger and other large apartment landlords have continued to push the limits on rent late fees despite a stern warning by the Texas Apartment Association ("TAA") in its legal handbook (a/k/a "Redbook"), written by experienced lawyers and provided to members cautions landlords that rent late fees can be struck down by a court for being unconscionable and constituting a penalty and "there is a fine line between unlawful penalties and liquidated damages." *See* **Ex. 11**. Despite the warning, landlords in Texas have gotten more and more aggressive with their rent late fee schemes.

17.    Plaintiff brings this action for themselves and all others similarly situated to recover relief specified under the property code.

### III.  FACTUAL ALLEGATIONS

**A.    Post-branded Apartment Properties in Texas owned by Defendants pursuant to Merger.**

18.    During the relevant time, Defendants, through their predecessors in merger, are believed to be, or have been, owners or purported landlords of approximately 6,367 dwelling units in approximately 20 apartment communities in Texas.

19.    In Austin, Defendants are believed to be owners and landlords of approximately 996 residential dwelling units in the following 4 Post-branded apartment properties and possibly others:

- Post South Lamar
- Post at Barton Creek
- Post Park Mesa
- Post West Austin

20.    In the Dallas/Fort Worth Metroplex, Defendants are believed to be owners and landlords of approximately 4,736 dwelling units in the following 15 Post-branded apartment properties and possibly others:

- Post Abbey
- Post Addison Circle
- Post Cole's Corner
- Post Eastside
- Post Gallery
- Post Heights
- Post Katy Trail
- Post Legacy
- Post Meridian
- Post Sierra at Frisco Bridges
- Post Square

- Post Uptown Village
- Post Vineyard
- Post Vintage
- Post Worthington

21.     In the Greater Houston area, Defendants are believed to be owners and landlords of approximately 656 dwelling units in the following Post-branded apartment property and possibly others:

- Post Midtown Square

22.     Defendants and their predecessors in merger have been and continue to be owners and landlords of each of its apartment houses in Texas during all or at least part of the Class Period. Defendants' predecessors in merger senior and executive management are directly involved in adopting and implementing the rent late fee scheme at Post-branded apartment properties in Texas, supporting and reviewing property management policies and practices such that Defendants maintains complete control over the landlord function of its Texas apartment communities and directs the conduct of its onsite employees.  Defendants and their predecessors in merger used their computerized property management system to charge and collect from Plaintiff and other class members excessive and impermissible rent late fees in violation of Section 92.019.  Thus, Defendants' and their predecessors' in merger uniform conduct at issue in this case affects both Plaintiff and the putative class.

**B.**     **Plaintiff Nathanael Brown.**

23.     Plaintiff is a former residential tenant at the Post South Lamar under a Post form lease.

24.     On or about March 3, 2015, Plaintiff signed a twelve (12) month lease with Post South Lamar for an apartment unit for a term from March 3, 2015 through March 2, 2016 ("Plaintiff's Lease").  **Ex. 7**. Plaintiff signed a subsequent lease covering a different unit at Post South Lamar

Apartments. The second lease contains the same language regarding rent late fees as the earlier lease, but no claim is asserted under that lease. As a result of the MAA/Post merger closed on or about December 1, 2016, Plaintiff's Lease was transferred to and became one of Defendants' leases, as did all other tenant leases in effect at Post-branded apartment properties in Texas at that time. Similarly, all claims of Class members became the legal responsibility of Defendants once the merger was finalized and closed.

25.     In Plaintiff's Lease, Defendant included the following form language regarding payment of rent, believed to be in the other class members' form leases as well:

> You agree to pay Post the Monthly Base Rent set forth above, which is payable each month in advance on the first day of each month, during the initial or extended term of this Lease at the office of Post at the Property or such other place as Post may designate. Rent paid after the first day of the month is late. If the Lease Start Date is not the first day of the month, then Your Monthly Base Rent for that month will be prorated and will be payable in advance on the Lease Start Date.
>
> ……..
>
> Time is of the essence of this Lease. **If Your rent is not paid on or before the third day of the month, a late fee or charge in the amount of 10% of the full monthly rent shall be due as additional rent. Such "full monthly rent" shall include all additional monthly rent due.**[9]

26.     Through an oversight, Plaintiff paid his rent for the month of December 2015 on the 4th day of the month – one day late. Rent was due on December 1, 2015 but by law Plaintiff had until December 3, 2015 to make payment without incurring a late fee.[10] In response to the payment made one day late, Defendant immediately assessed Plaintiff a late fee on rent of $159.50, representing 10% of his entire monthly rent.  Plaintiff promptly paid his rent and the $159.50 late fee on December 4, 2015. His electronic tenant ledger created and maintained by

---

[9] **Ex. 7, ¶ 2, at 2** (emphasis added).
[10] TEX. PROP. CODE § 92.019(a)(3).

Defendant confirms the $159.50 rent late fee was assessed, and that Plaintiff paid it on December 4, 2015. **Ex. 8**. The late fee was not credited or refunded.

**C.**      **Defendants violated Section 92.019 and all rent late fees charged were unlawful.**

27.      As previously stated, Texas landlords are prohibited from charging their tenants any late fees on rent unless those fees are "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent."[11] That means a landlord is prohibited from instituting a late fee scheme until or unless it first makes an estimate of its damages when tenants pay their rent but do so a few days late.  And then, the rent late fee policy adopted must be reasonably tied to that estimate of damages.  Otherwise, rent late fees are prohibited. A landlord may not use late fees as a profit-center or as a penalty to encourage tenants to pay their rent on time.  Here, Defendants did not meet the condition required by the statute and therefore, had no right to lawfully assess Plaintiff or the putative class any late fees at all.  The rent late fee clause in the form lease used by Defendants in the leases with Plaintiff and the putative class are void and unenforceable.

28.      Defendants are not permitted to seek alleged breach of contract damages against Plaintiff or the class for late payment of rent either because Section 92.019 is the only permissible mechanism under Texas law to collect alleged damages resulting from late payment of rent.  As Defendants violated that law, they do not get a second bite at the apple.

29.      And even if Defendants somehow could seek contract damages from Plaintiff and the class for paying their rent paid a few days late, the only measure of damages available to them under Texas law would be interest.  Defendants' lease form for Post-branded properties in Texas does not contain a provision for recovery of specified interest on past due sums in situations applicable to this case. That means the only interest Defendants possibly could recover is the

---

[11] TEX. PROP. CODE § 92.019(a)(2).

prejudgment interest rate allowed under the Texas Finance Code (6% simple interest).[12]   But interest under the statute does not commence until 30-days after the sum owed is due.   That means Defendants may not recover interest from Plaintiff or members of the putative class because each of them paid their rent a few days late.   By accepting rent late from Plaintiff and the class, Defendants have no other remedies.

30.    Defendants' standardized late fee formula on past due rent results in tenants being assessed a penalty equal to 10% of their monthly rent obligation on the first day their rent is late. Such an amount is inherently unreasonable, unconscionable, and not tied to any rational measurement or estimation of Defendant's actual damages.[13]   On information and belief, Defendants made no attempt to estimate their damages from later-payers of rent when they implemented their punitive rent late fee scheme. Since Defendants did not meet this condition under Section 92.019, they were not permitted to charge Plaintiff or the putative class any rent late fees whatsoever.

31.    Texas apartment landlords are prohibited from charging their tenants late fees on rent unless those fees are tied to "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent" made before the rent late fee policy is adopted[14]   In other words, a landlord is prohibited from instituting a punitive late fee schedule that serves as a penalty or revenue-generating scheme.

---

[12] TEX. FIN. CODE §302.002

[13] The fact that most, if not all, large management companies now impose hefty late fees on rent is no defense. It may very well be, and likely is the case, that all or most Texas landlords currently violate Section 92.019 by implementing aggressive late fee schemes like the one Defendant is using.  Even the Texas Apartment Association acknowledges the peril associated with these types of over-the-top late fee schemes by including cautionary language in its lease form handbook for landlord members (known as the "Redbook") warning them that excessive late fees expose landlords to liability under Section 92.019 (among other potential claims that include usury, DTPA, and contractual unconscionability).

[14] TEX. PROP. CODE § 92.019(a)(2).  In a previous case asserting class claims like the Class claims in this case, Judge Robert L. Pitman issued the attached order[14] denying Defendants' Rule 12(b)(6) motion to dismiss claims under Section 92.019 made by another member of this putative class.  *See* **Ex. 12,** Order by Judge Robert L. Pitman in a recent related case involving rent late fee claims under Section 92.019 identical to the Class claims in this case.

32.     Defendants' standard late fee formula on past due rent results in tenants at Post-branded apartment properties being assessed a penalty of 10% of a month's rent the first day rent is late Such an amount is inherently unreasonable, unconscionable, and not tied to any rational measurement or estimation of Defendants' actual damages caused by a tenant paying rent a few days late.

33.     On information and belief, Defendants carefully track rent late fee income at each of their properties, likely making budget projections of how much of this revenue it expects its property management teams to collect monthly and annually (and possibly rewarding those employees for meeting or exceeding projections); yet, they made no effort to use their vast collection of data to determine their estimated damages when tenants pay their rent a few days late before they decided to adopt the rent late fee policy at issue in this case. This reaffirms that Defendants, including Post, view rent late fees as nothing more than extra revenue (believed to total millions of dollars every year, just in Texas) and as a penalty to deter tenants from paying their rent late.

34.     Post did not use Texas Apartment Association ("TAA") form leases (as most Texas landlords use).  Instead, Post used its own proprietary form lease for Plaintiff and putative class members at Post-branded apartment properties in Texas. See, e.g., **Ex. 7**.

35.     Under Texas and Georgia law, a general partner of a limited partnership has all the rights, duties, obligations and liabilities of a partner in a general partnership, including the right to sue and be sued in its own name for acts and omissions of the limited partnership.[15] Likewise, the general partner of a limited partnership is jointly and severally liable for all acts and omissions of

---

[15]*See* TEX. BUS. ORG. CODE ANN.. § 153.152(b) (West 2016)("Except as provided by this chapter or the other limited partnership provisions, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to a person other than the partnership and the other partners."); Tennessee Code Annotated § 61–1–306(a) ("All partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law.")

the limited partnership. Plaintiff therefore has the right to sue and has properly sued the general partner of MAA LP (MAA Inc.) for the statutory violations asserted in this case.

36.     The Texas Property Code governs landlord-tenant relationships. Section 92.001(2) of the Texas Property Code defines the term "landlord" as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease." TEX. PROP. CODE § 92.001(2).  Another section of the Texas Property Code that applies to landlords and tenants defines "landlord" to include both a "managing company" and a "managing agent."  *See* TEX. PROP. CODE § 92.151(7) ("'Landlord' means a ... management company, or managing agent, including an on-site manager").[16] Still another section of the property code defines the term landlord to include the property manager. *See* TEX. PROP. CODE. § 94.001 ("landlord" means "the owner or manager of a manufactured home community and includes an employee or agent of the landlord") (emphasis added). This shows the Legislature did not take a narrow or restrictive view of the term. Regardless of how the term "landlord" is defined or construed, here it does not matter because Defendants are jointly and severally liable to Plaintiff and the Class as landlords and owners for the reasons explained in paragraph 37 - 39 above.

## D.     The Class and the Class Period.

37.     The remaining members of the Class besides Plaintiff, as defined below, are current or former residential tenants of Post-branded apartment properties in Texas during the Class Period. These properties, now owned by Defendants under the MAA/Post merger are in the Austin, Dallas/Fort Worth, and Houston metropolitan areas.  Because Defendants (as did Post) uses a centralized system and policies to bill and collect rent late fees from its residential tenants in

---

[16] This subsection of the Property Code expressly applies to apartments.  TEX. PROP. CODE § 92.152(b)(4) ("a dwelling to which this subchapter applies includes: ... (4) a living unit in an apartment ...").

Texas, it is likely that class members have suffered the same or similar harm as Plaintiff in the form of unreasonable and excessive rent late fees.

## IV.  CLASS ACTION ALLEGATIONS

38.    As set forth below, the proposed Class satisfies the requirements for a class action.

39.    Plaintiff brings the claims for relief alleged in this complaint pursuant to FED. R. CIV. P. 23 on behalf of himself and a class defined as follows (the "Class"):

    a.    All persons during the class period who (i) were residential lease tenants of Post-branded apartment properties in the State of Texas under written leases (such properties being formerly owned by Post Apartment Homes LP and affiliates and now owned by MAA LP through merger), and (ii) were charged (and which Defendants' records show as paid) at least one fixed rent late fee equal to 10% of their monthly rent. .

    b.    The "Class Period" means the period commencing April 10, 2013 and continuing through and including September 30, 2017.

    c.    The Class excludes the following persons:

        (i)      the judge(s) assigned to this case and his or her staff;
        (ii)     governmental entities;
        (iii)    Defendants and their affiliates;
        (iv)    persons adjudged to be bankrupt during the class period;
        (v)     persons who have previously released Defendants (and Post) of the claims raised by this case; and
        (vi)    persons who abandoned their apartment units without paying rent or who were evicted by Defendants (or Post) for nonpayment of rent.

40.    Plaintiff is a member of the Class he seeks to represent, as detailed in the factual background and the claims for relief section of this complaint.  The averments of fact and questions of law are common to the Class.

41.    The Class is believed to include thousands of members.  The Class is so numerous and spread out across the State of Texas that joinder of all members is impracticable.

42.    This action is governed by Section 92.019.  The leases in question are common,

standardized, and consistent among the Class. The only variances (if any) being minor and irrelevant.

43.     The averments of fact and questions of law common to the members of the Class predominate over any question affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  A class action is the superior way of resolving the claims raised in this case because:

      a.      The questions of law and fact are so uniform across the Class there is no reason why individual Class members would want to control the prosecution of their own actions at their own expense;

      b.      The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

      c.      The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each Class member and not just those who can afford to bring their own actions; and

      d.      Defendants and their predecessors had actual knowledge of applicable Texas law yet acted deliberately and intentionally in charging its tenants prohibited fees and surcharges to likely add millions of dollars to its bottom line on the backs of its tenants.  Many, if not all, of the Class members may never discover Defendants' wrongful actions.  Thus, in the absence of a class action, Defendants likely will be unjustly enriched by millions of dollars to the detriment of unknowing Class members.

44.     Defendants and their predecessors engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class members.  The same statutory violations and breach of contract claims are involved.  Individual questions, if any, pale by comparison to the numerous common questions that predominate.

45.     The injuries sustained by Class members flow, in each instance, from a common nucleus of operative facts.  In each case, Defendants charged Class members excessive and prohibited late fees for rent in violation of Texas law.

46.    Class members have been damaged by Defendants' misconduct.  Class members have been charged and have paid excessive amounts to Defendants, allowing Defendants to impermissibly profit by adding excessive and impermissible late fees for rent.

47.    Plaintiff's claims are typical of the claims of the other Class members.  Plaintiff was charged an excessive and impermissible late fee by Defendants for rent paid a day late.

48.    Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is familiar with the basic facts underlying the Class members' claims.

49.    Plaintiff's interests do not conflict with the interests of the other Class members they seek to represent.  Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously.

50.    Plaintiff's counsel has successfully prosecuted complex class actions, including several similar tenant class action cases involving Texas statutes.  Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

51.    The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members.  The relief sought per individual Class member is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Defendants; and their predecessors' conduct.  Furthermore, it would be virtually impossible for Class members to seek redress on an individual basis.  Even if Class members themselves could afford such individual litigation, the court system could not.

52.    Individual litigation of the legal and factual issues raised by Defendants' and their predecessors' conduct would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single

court.  Defendants are required by law to maintain the records needed to identify the members of the Class, and on information and belief, this information is stored in Defendants' or their predecessors' electronic property management databases, making the information relatively easy to retrieve.

53.     Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class.

54.     For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## V.     CLAIM FOR RELIEF

**A.     <u>Violation of Section 92.019 of the Texas Property Code.</u>**

55.     As set forth above, Defendants charged Plaintiff and the Class impermissible late fees in violation of Section 92.019.  Defendants' late fee scheme for past due rent at Post-branded apartment properties in Texas (a) was not predicated on estimated damages resulting from late payment of rent, and (b) cannot as a result bear any reasonable relationship to any damage it might have incurred.  Further, as Defendants failed to satisfy the condition precedent under the statute to estimate their damages, they were not permitted to charge tenants any rent late fees. Thus, the Court may determine as a matter of law that all rent late fees assessed and collected by Defendants from Plaintiff and the putative class were unlawful overcharges.  Alternatively, the Court and jury can determine the question of reasonableness.

56.     Plaintiff seeks to recover three times the amount of all rent late fees paid by Plaintiff and the putative class during the class period, along with a $100 penalty for each such violation per class member, attorney fees, interest, and costs of court.

## VI.    JURY DEMAND

57.    Plaintiff demands a trial by jury and has tendered the appropriate fee.

## PRAYER

58.    Plaintiff seeks an order of this Court certifying this case as a class action for the benefit of the Class with adequate notice to same, and, upon final hearing, seek a judgment against Defendants for: (a) statutory damages under Section 92.019 of the Texas Property Code equal to three times the amount of all illegal rent late fees charged to the Class; (b) a statutory penalty equal to $100.00 for each class member for each statutory violation of the property code; (c) prejudgment and post judgment interest at the highest rate allowed by law; (d) reasonable attorney fees; (e) court costs; and (f) such other relief, at law or in equity, as the Court may deem just and proper, including but not limited to injunctive relief and unjust enrichment relief.

Respectfully submitted,

By: */s/ Britton D. Monts*
BRITTON D. MONTS
State Bar No. 14303900
THE MONTS FIRM
401 Congress Ave., Suite 1540
Austin, Texas 78701-3851
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Facsimile

R. MARTIN WEBER, JR.
State Bar No. 00791895
RICHARD E. NORMAN
State Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
(713) 651-1771 – Telephone
(713) 651-1775 – Facsimile

JASON W. SNELL
Bar No. 24013540
THE SNELL LAW FIRM, PLLC
1615 W. 6th St.
Austin, Texas 78703
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Facsimile

ATTORNEYS FOR PLAINTIFF AND THE CLASS

## CERTIFICATE OF SERVICE

I certify that on July 6, 2018 I served the foregoing document on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Britton D. Monts*
Britton D. Monts

# Exhibit 1

Control Number : K419456

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

## CERTIFICATE OF MERGER

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, do hereby issue this certificate pursuant to Title 14 of the Official Code of Georgia Annotated certifying that articles or a certificate of merger and fees have been filed regarding the merger of the below entities, effective as of **12/01/2016**. Attached is a true and correct copy of the said filing.

**Surviving Entity:**
MID-AMERICA APARTMENTS, L.P. , a Foreign Limited Partnership

**Nonsurviving Entity/Entities:**
POST APARTMENT HOMES, L.P. Georgia, a Domestic Limited Partnership

WITNESS my hand and official seal in the City of

Atlanta and the State of Georgia on 11/30/2016



Brian P. Kemp
Secretary of State

**CERTIFICATE OF MERGER**
**merging**
**POST APARTMENT HOMES, L.P.**
**(a Georgia limited partnership)**
**with and into**
**MID-AMERICA APARTMENTS, L.P.**
**(a Tennessee limited partnership)**

Pursuant to Section 14-9-206.1 of the Official Code of Georgia Annotated (the "Code"), the undersigned hereby certifies as follows:

1. The name and state of organization or domicile of each of the constituent entities are:

| Name | State of Organization or Domicile |
|------|-----------------------------------|
| Post Apartment Homes, L.P. | Georgia |
| Mid-America Apartments, L.P. | Tennessee |

2. Under an Agreement and Plan of Merger, dated as of August 15, 2016 (the "Merger Agreement"), Post Apartment Homes, L.P., a Georgia limited partnership (the "Merged Partnership") is merging with and into Mid-America Apartments, L.P., a Tennessee limited partnership (the "Merger"). Mid-America Apartments, L.P. will be the surviving limited partnership (the "Surviving Partnership") following the Merger.

3. An executed Merger Agreement is on file at the principal place of business of the Surviving Partnership. The address of the principal place of business of the Surviving Partnership is 6584 Poplar Avenue, Memphis, Tennessee 38138.

4. A copy of the Merger Agreement will be furnished by the Surviving Partnership, on request and without cost, to any interest holder of the Merged Partnership or any interest holder of the Surviving Partnership.

5. The Merger Agreement was duly authorized and approved by the Merged Partnership in accordance with Section 14-9-206.1 and 14-9-206.1(b)(2) of the Code and of the Surviving Partnership in accordance with all applicable law.

6. The Merger shall become effective as of 12:01 a.m. Central Time on December 1, 2016.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned limited partnership has executed and delivered this Certificate of Merger as of November 30, 2016.

**MID-AMERICA APARTMENTS, L.P.,**
**a Tennessee limited partnership**

By: Mid-America Apartment Communities, Inc., a
Tennessee corporation

Its: General partner

By: _____

Name: H. Eric Bolton, Jr.
Title: Chairman of the Board and
Chief Executive Officer

# Exhibit 2-A

| **Form 503**<br>**(Revised 01/06)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | <br>**Assumed Name Certificate** | This space reserved for office use.<br><br>**FILED**<br>**In the Office of the**<br>**Secretary of State of Texas**<br><br>JUN 0 9 2008<br><br>**Corporations Section** |

## Assumed Name

The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post Eastside

## Entity Information

The name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

State the name of the entity as currently shown in the records of the secretary of state or on its certificate of formation, if not filed with the secretary of state.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                     ☐ Professional Corporation

☐ Nonprofit Corporation                      ☐ Professional Limited Liability Company

☐ Cooperative Association                     ☐ Professional Association

☐ Limited Liability Company                   ☒ Limited Partnership

☐ Other _____
          Specify type of entity if there is no check box applicable.

The file number, if any, issued to the filing entity by the secretary of state is:   _____

The state, country, or other jurisdiction of formation is:   Georgia

The registered or similar office of the entity in the jurisdiction of formation is:

4401 Northside Parkway, Suite 800, Atlanta, Georgia 30327

☒ The entity is required to maintain a registered office and agent in Texas.  The address of its registered office in Texas and the name of the registered agent at such address is:
National Registered Agents, Inc., 16055 Space Center Blvd., Ste. 235, Houston, TX 77062

The address of the principal office of the entity (if not the same as the registered office) is:
4401 Northside Parkway, Suite 800, Atlanta, GA 30327

☐ The entity is not required to maintain a registered office and agent in Texas.  Its office address in

in Texas is: _____

☐ The entity is not incorporated, organized or associated under the laws of Texas.  The address of the principal place of business in this state is: _____

The office address of the entity is: _____

## Period of Duration

☒ The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

**OR**

☐ The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

**OR**

☐ The assumed name will be used until _____ (not to exceed 10 years).
   _mm/dd/yyyy_

## County or Counties in which Assumed Name Used

The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☒ Only the following counties:   Dallas _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.  If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date: _____

_[signature]_

GLEN P. SMITH
VICE PRESIDENT
_____

Signature and title of authorized person(s) (see instructions)

# Exhibit 2-B

**Form 503**
**(Revised 01/06)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**



**Assumed Name Certificate**

This space reserved for office use.

**FILED**
**In the Office of the**
**Secretary of State of Texas**

**AUG 25 2008**

**Corporations Section**

The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post Park Mesa

The name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

State the name of the entity as currently shown in the records of the secretary of state or on its certificate of formation, if not filed with the secretary of state.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                     ☐ Professional Corporation

☐ Nonprofit Corporation                      ☐ Professional Limited Liability Company

☐ Cooperative Association                    ☐ Professional Association

☐ Limited Liability Company                  ☒ Limited Partnership

☐ Other _____
        Specify type of entity if there is no check box applicable.

The file number, if any, issued to the filing entity by the secretary of state is: _____

The state, country, or other jurisdiction of formation is:   Georgia

The registered or similar office of the entity in the jurisdiction of formation is:

4401 Northside Parkway, Suite 800, Atlanta, GA 30327

☒ The entity is required to maintain a registered office and agent in Texas. The address of its registered office in Texas and the name of the registered agent at such address is:
National Registered Agents, Inc., 16055 Space Center Blvd., Ste. 235, Houston, TX 77062

The address of the principal office of the entity (if not the same as the registered office) is:

4401 Northside Parkway, Suite 800, Atlanta, GA 30327

☐ The entity is not required to maintain a registered office and agent in Texas. Its office address in

Form 503                                    4

in Texas is: _____

☐ The entity is not incorporated, organized or associated under the laws of Texas. The address of the principal place of business in this state is: _____

The office address of the entity is: _____

_____

☒ The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.
**OR**
☐ The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).
**OR**
☐ The assumed name will be used until _____ (not to exceed 10 years).
                                                    *mm/dd/yyyy*

The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

_____

☒ Only the following counties:   Travis _____

_____

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date: _8/18/08_

_____
_____
Signature and title of authorized person(s) (see instructions)

Form 503                                    5

# Exhibit 2-C

| | | |
|---|---|---|
| **Form 503**<br>**(Revised 09/13)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | (State of Texas seal)<br><br>**Assumed Name Certificate** | This space reserved for office use.<br><br>F I L E D<br>In the Office of the<br>Secretary of State of Texas<br><br>SEP 0 2 2015<br><br>Corporations Section |

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:  Post Gallery

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

- [ ] For-profit Corporation
- [ ] Nonprofit Corporation
- [ ] Professional Corporation
- [ ] Professional Association
- [ ] Other

- [ ] Limited Liability Company
- [x] Limited Partnership
- [ ] Limited Liability Partnership
- [ ] Cooperative Association

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:  10222411

5. The state, country, or other jurisdiction of formation of the entity is:  Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800

*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
|---|---|---|---|
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

- [x] 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

**OR**

- [ ] 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

**OR**

- [ ] 7c. The assumed name will be used until _____ (not to exceed 10 years).

  *mm/dd/yyyy*

Form 503                                                       4

## County or Counties in which Assumed Name Used

8.  The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:   Dallas _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity.  If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:   9/1/15 _____

_____

Glen P. Smith, Senior Vice President
_____
Signature of a person authorized by law to sign on behalf of the
identified entity (see instructions)

# Exhibit 2-D

<table>
<tr><td>

**Form 503**
**(Revised 4/09)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**

</td><td>



**Assumed Name Certificate**

</td><td>

This space reserved for office use.
In the Office of the
Secretary of State of Texas

APR 1 7 2009

**Corporations Section**

</td></tr>
</table>

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post West Austin

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation

☐ Nonprofit Corporation

☐ Cooperative Association

☐ Limited Liability Company

☐ Other

☐ Professional Corporation

☐ Professional Association

☐ Limited Partnership

☑ Limited Liability Partnership

*Specify type of entity if there is no check box applicable For example, bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is: _____

5. The state, country, or other jurisdiction of formation of the entity is:   Georgia

6. The office address of the entity in its jurisdiction of formation is:
4401 Northside Parkway, Suite 800, Atlanta, GA  30327

(Complete item 7 *only* when the entity is required by law to maintain a registered agent/registered office in Texas. An entity required to complete item 7, does not complete item 8.  See instructions.)

7a.  The address of its registered office in Texas is:
16055 Space Center Blvd., Ste. 235, Houston, TX  77062

7b. The name of the registered agent at such address is:

National Registered Agents, Inc.

7c.  The address of the principal office of the entity (if not the same as 7a) is:

4401 Northside Parkway, Suite 800, Atlanta, GA  30327

(Complete item 8 *only* if the entity is not required by law to maintain a registered agent/registered office in Texas. Complete item 8c, only if the entity is not organized under the laws of Texas. See instructions.)

8a.  The entity is not required by law to maintain a registered agent/registered office in Texas. Its principal office address in Texas is:

8b.  The address of the entity's principal place of business in Texas (if not the same as 8a) is:

8c.  The entity is not organized under the laws of Texas. Its office address outside the state is:

## Period of Duration

☑  9a.  The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.
**OR**
☐  9b.  The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).
**OR**
☐  9c.  The assumed name will be used until _____ (not to exceed 10 years).
                                                *mm/dd/yyyy*

## County or Counties in which Assumed Name Used

10. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐  All counties

☐  All counties with the exception of the following counties: _____

☑  Only the following counties:  Travis _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity.  If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date: _4- 14-09_

GLEN P. SMITH
VICE PRESIDENT
Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

Form 503                                        5

# Exhibit 2-E

**Form 503**
**(Revised 4/09)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**



**Assumed Name Certificate**

This space reserved for office use.

**FILED**
In the Office of the
Secretary of State of Texas

**APR 1 7 2009**

**Corporations Section**

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post Sierra at Frisco Bridges

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation

☐ Nonprofit Corporation

☐ Cooperative Association

☐ Limited Liability Company

☐ Other

☐ Professional Corporation

☐ Professional Association

☐ Limited Partnership

☑ Limited Liability Partnership

*Specify type of entity if there is no check box applicable For example, bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:

5. The state, country, or other jurisdiction of formation of the entity is:   Georgia

6. The office address of the entity in its jurisdiction of formation is:
4401 Northside Parkway, Suite 800, Atlanta, GA  30327

(Complete item 7 *only* when the entity is required by law to maintain a registered agent/registered office in Texas. An entity required to complete item 7, does not complete item 8. See instructions.)

7a. The address of its registered office in Texas is:
16055 Space Center Blvd., Ste. 235, Houston, TX  77062

7b. The name of the registered agent at such address is:
National Registered Agents, Inc.

7c. The address of the principal office of the entity (if not the same as 7a) is:
4401 Northside Parkway, Suite 800, Atlanta, GA  30327

Form 503                                                    4

(Complete item 8 *only* if the entity is not required by law to maintain a registered agent/registered office in Texas. Complete item 8c, only if the entity is not organized under the laws of Texas. See instructions.)

8a.  The entity is not required by law to maintain a registered agent/registered office in Texas. Its principal office address in Texas is:

8b.  The address of the entity's principal place of business in Texas (if not the same as 8a) is:

8c.  The entity is not organized under the laws of Texas. Its office address outside the state is:

## Period of Duration

☑  9a.  The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.
**OR**

☐  9b.  The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).
**OR**

☐  9c.  The assumed name will be used until _____ (not to exceed 10 years).
                                                      *mm/dd/yyyy*

## County or Counties in which Assumed Name Used

10.  The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐  All counties

☐  All counties with the exception of the following counties: _____

☑  Only the following counties:  Collin _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:  *4-14-09*

GLEN P. SMITH
VICE PRESIDENT
Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

Form 503                                                    5

# Exhibit 2-F

| | | |
|---|---|---|
| **Form 503**<br>**(Revised 09/09)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | **Assumed Name Certificate** | This space reserved for office use.<br><br>**FILED**<br>**In the Office of the**<br>**Secretary of State of Texas**<br>**DEC 27 2011**<br>**Corporations Section** |

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post Katy Trail

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation       ☐ Limited Liability Company
☐ Nonprofit Corporation        ☑ Limited Partnership
☐ Professional Corporation     ☐ Limited Liability Partnership
☐ Professional Association     ☐ Cooperative Association
☐ Other _____

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is: _____

5. The state, country, or other jurisdiction of formation of the entity is:   Georgia

6. The registered office or similar office address of the entity in its jurisdiction of formation is:

4401 Northside Parkway, Suite 800
*Street Address*

| Atlanta | GA | US | 30327 |
|---|---|---|---|
| *City* | *State* | *Country* | *Zip or Postal Code* |

7. The entity's principal office address in Texas is: (See instructions.)

| 5040 Addison Circle, Suite 200 | Addison | TX | 75001 |
|---|---|---|---|
| *Street Address* | *City* | | *Zip or Postal Code* |

8. The entity is not organized under the laws of Texas and is not required by law to maintain a registered agent and registered office in Texas. Its office address outside the state is:

_____
*Street Address*                    *City*              *State*    *Zip or Postal Code*

Form 503                                      4

## Period of Duration

[✓] 9a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

**OR**

[ ] 9b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

**OR**

[ ] 9c. The assumed name will be used until _____ (not to exceed 10 years).

*mm/dd/yyyy*

## County or Counties in which Assumed Name Used

10. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

[ ] All counties

[ ] All counties with the exception of the following counties: _____

[✓] Only the following counties:  Dallas

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:  12/21/2011

**GLEN P. SMITH**
**SENIOR VICE PRESIDENT**
Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

Form 503                                    5

# Exhibit 2-G



**Office of the Secretary of State**
**Corporations Section**
**P.O. Box 13697**
**Austin, Texas 78711-3697**

**FILED**
In the Office of the
Secretary of State of Texas

OCT 2 7 2005

**Corporations Section**

# ASSUMED NAME CERTIFICATE
# FOR FILING WITH THE SECRETARY OF STATE

1.   **The name of the corporation, limited liability company, limited partnership, or registered limited liability partnership as stated in its articles of incorporation, articles of organization, certificate of limited partnership, application for certificate of authority or comparable document is**

POST APARTMENT HOMES, L.P.

2.   **The assumed name under which the business or professional service is or is to be conducted or rendered is**

POST ABBEY

3.   **The state, country, or other jurisdiction under the laws of which it was incorporated, organized or associated is**   GEORGIA   **and the address of its registered or similar office in that jurisdiction is**

4401 NORTHSIDE PARKWAY, SUITE 800, ATLANTA, GEORGIA 30327

4.   **The period, not to exceed 10 years, during which the assumed name will be used is**

10 YEARS

5.   **The entity is a (check one):**
   **A.**

   ☐ Business Corporation                ☐ Non-Profit Corporation
   ☐ Professional Corporation            ☐ Professional Association
   ☐ Limited Liability Company           ☑ Limited Partnership
   ☐ Registered Limited Liability Partnership

   **B. If the entity is some other type business, professional or other association that is incorporated, please specify below (e.g., bank, savings and loan association, etc.)**

6.   **If the entity is required to maintain a registered office in Texas, the address of the registered office is**   1021 MAIN STREET, SUITE 1150, HOUSTON, TEXAS 77002   **and the name of its registered agent at such address is**   CT CORPORATION SYSTEMS

**The address of the principal office (if not the same as the registered office) is**

4401 NORTHSIDE PARKWAY, SUITE 800, ATLANTA, GEORGIA 30327

7.    If the entity is not required to or does not maintain a registered office in Texas, the office address in Texas is_____

_____

and if the entity is not incorporated, organized or associated under the laws of Texas, the address of its place of business in Texas is_____

_____

and the office address elsewhere is _____

8.    The county or counties where business or professional services are being or are to be conducted or rendered under such assumed name are (if applicable, use the designation "ALL" or "ALL EXCEPT")
          DALLAS
_____

9.    The undersigned, if acting in the capacity of an attorney-in-fact of the entity, certifies that the entity has duly authorized the attorney-in-fact in writing to execute this document.      POST APARTMENT HOMES, L.P., a GA lmtd partnership
                      By: POST GP HOLDINGS, INC., a GA corporation
                          its sole general partner

          By _____
               **Signature of officer, general partner, manager,**
               **representative or attorney-in-fact of the entity**
               Sherry W. Cohen,
               Executive Vice President & Corporate Secretary

## NOTE

This form is designed to meet statutory requirements for filing with the secretary of state and is not designed to meet filing requirements on the county level. Filing requirements for assumed name documents to be filed with the county clerk differ. Assumed name documents filed with the county clerk are to be executed and acknowledged by the filing party, which requires that the document be notarized.

Form No. 503
Revised 09/05

# Exhibit 2-H

| **Form 503**<br>**(Revised 09/13)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | <br>**Assumed Name Certificate** | This space reserved for office use.<br><br>F I L E D<br>In the Office of the<br>Secretary of State of Texas<br><br>SEP 02 2015<br><br>Corporations Section |
| --- | --- | --- |

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:  Post Addison Circle

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

- ☐ For-profit Corporation
- ☐ Nonprofit Corporation
- ☐ Professional Corporation
- ☐ Professional Association
- ☐ Other

- ☐ Limited Liability Company
- ☑ Limited Partnership
- ☐ Limited Liability Partnership
- ☐ Cooperative Association

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:  10222411

5. The state, country, or other jurisdiction of formation of the entity is:  Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800

*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
| --- | --- | --- | --- |
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

**OR**

☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

**OR**

☐ 7c. The assumed name will be used until _____ (not to exceed 10 years).

                                         *mm/dd/yyyy*

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties: Dallas _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date: _____9/1/15_____

_signature_

Glen P. Smith, Senior Vice President

Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

# Exhibit 2-I

| **Form 503**<br>**(Revised 09/13)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | **Assumed Name Certificate** | This space reserved for office use.<br><br>F I L E D<br>In the Office of the<br>Secretary of State of Texas<br>SEP 0 2 2015<br>Corporations Section |

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post Cole's Corner

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation          ☐ Limited Liability Company
☐ Nonprofit Corporation          ☑ Limited Partnership
☐ Professional Corporation       ☐ Limited Liability Partnership
☐ Professional Association       ☐ Cooperative Association
☐ Other _____

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:   10222411

5. The state, country, or other jurisdiction of formation of the entity is:   Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800
*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
|---------|-----|---------|------------------|
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.
**OR**

☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).
**OR**

☐ 7c. The assumed name will be used until _____ (not to exceed 10 years).
                                          *mm/dd/yyyy*

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:    Dallas _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:    _9 / 1 / 15_

Glen P. Smith, Senior Vice President
_____
Signature of a person authorized by law to sign on behalf of the
identified entity (see instructions)

# Exhibit 2-J

**Form 503**
**(Revised 01/06)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**



**Assumed Name Certificate**

This space reserved for office use.

**FILED**
**In the Office of the**
**Secretary of State of Texas**

**AUG 25 2008**

**Corporations Section**

The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post Barton Creek

The name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

State the name of the entity as currently shown in the records of the secretary of state or on its certificate of formation, if not filed with the secretary of state.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                          ☐ Professional Corporation

☐ Nonprofit Corporation                          ☐ Professional Limited Liability Company

☐ Cooperative Association                        ☐ Professional Association

☐ Limited Liability Company                      ☒ Limited Partnership

☐ Other _____
            Specify type of entity if there is no check box applicable.

The file number, if any, issued to the filing entity by the secretary of state is: _____

The state, country, or other jurisdiction of formation is:   Georgia

The registered or similar office of the entity in the jurisdiction of formation is:

4401 Northside Parkway, Suite 800, Atlanta, GA 30327

☒ The entity is required to maintain a registered office and agent in Texas.  The address of its registered office in Texas and the name of the registered agent at such address is:
National Registered Agents, Inc., 16055 Space Center Blvd., Ste. 235, Houston, TX 77062

The address of the principal office of the entity (if not the same as the registered office) is:

4401 Northside Parkway, Suite 800, Atlanta, GA 30327

☐  The entity is not required to maintain a registered office and agent in Texas.  Its office address in

Form 503                                                    4

in Texas is: _____

☐ The entity is not incorporated, organized or associated under the laws of Texas. The address of
the principal place of business in this state is: _____

The office address of the entity is: _____

☒ The period during which the assumed name will be used is 10 years from the date of filing with
the secretary of state.

**OR**

☐ The period during which the assumed name will be used is _____ years from the date of filing
with the secretary of state (not to exceed 10 years).

**OR**

☐ The assumed name will be used until _____ (not to exceed 10 years).
*mm/dd/yyyy*

The county or counties where business or professional services are being or are to be conducted or
rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☒ Only the following counties:   Travis

The undersigned signs this document subject to the penalties imposed by law for the submission of a
materially false or fraudulent instrument. If the undersigned is acting in the capacity of an attorney in
fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in
writing to execute this document.

Date:  8/18/08

*Vice President*

**Signature and title of authorized person(s) (see instructions)**

Form 503                                5

# Exhibit 2-K

**Form 503**
**(Revised 09/13)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**

**Assumed Name Certificate**

This space reserved for office use.

FILED
In the Office of the
Secretary of State of Texas

SEP 02 2015

Corporations Section

## Assumed Name

1.  The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post Heights

## Entity Information

2.  The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3.  The entity filing the assumed name is a: (Select the appropriate entity type below.)

- [ ] For-profit Corporation
- [ ] Nonprofit Corporation
- [ ] Professional Corporation
- [ ] Professional Association
- [ ] Other

- [ ] Limited Liability Company
- [x] Limited Partnership
- [ ] Limited Liability Partnership
- [ ] Cooperative Association

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4.  The file number, if any, issued to the entity by the secretary of state is:  10222411

5.  The state, country, or other jurisdiction of formation of the entity is:  Georgia

6.  The entity's principal office address is:

4401 Northside Parkway, Suite 800

*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
|---------|-----|---------|---------------------|
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

- [x] 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

**OR**

- [ ] 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

**OR**

- [ ] 7c. The assumed name will be used until _____ (not to exceed 10 years).
    *mm/dd/yyyy*

Form 503                                    4

## County or Counties in which Assumed Name Used

8.  The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:   Dallas _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity.  If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:   9/1/15 _____

_____
Glen P. Smith, Senior Vice President
_____
Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

Form 503                                           5

# Exhibit 2-L

**Form 503**
**(Revised 09/13)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**

**Assumed Name Certificate**

This space reserved for office use.

**FILED**
**In the Office of the**
**Secretary of State of Texas**

**SEP 0 2 2015**

**Corporations Section**

## Assumed Name

1.  The assumed name under which the business or professional service is, or is to be, conducted or rendered is:  Post Legacy

## Entity Information

2.  The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3.  The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                    ☐ Limited Liability Company
☐ Nonprofit Corporation                     ☑ Limited Partnership
☐ Professional Corporation                  ☐ Limited Liability Partnership
☐ Professional Association                  ☐ Cooperative Association
☐ Other
        *Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4.  The file number, if any, issued to the entity by the secretary of state is:  10222411

5.  The state, country, or other jurisdiction of formation of the entity is:  Georgia

6.  The entity's principal office address is:

4401 Northside Parkway, Suite 800

*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
|---------|----|----|-------|
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.
**OR**

☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).
**OR**

☐ 7c.  The assumed name will be used until _____ (not to exceed 10 years).
                                        *mm/dd/yyyy*

Form 503                                        4

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:   Collin _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:   9/1/15 _____

_____

Glen P. Smith, Senior Vice President

Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

Form 503                                               5

# Exhibit 2-M

| | | |
|---|---|---|
| **Form 503**<br>**(Revised 09/13)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | <br><br>**Assumed Name Certificate** | This space reserved for office use.<br><br>**FILED**<br>**In the Office of the**<br>**Secretary of State of Texas**<br>**SEP 0 2 2015**<br>**Corporations Section** |

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:  Post Meridian

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation          ☐ Limited Liability Company

☐ Nonprofit Corporation          ☑ Limited Partnership

☐ Professional Corporation       ☐ Limited Liability Partnership

☐ Professional Association        ☐ Cooperative Association

☐ Other

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:  10222411

5. The state, country, or other jurisdiction of formation of the entity is:  Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800

*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
|---|---|---|---|
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

**OR**

☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

**OR**

☐ 7c. The assumed name will be used until _____ (not to exceed 10 years).

*mm/dd/yyyy*

Form 503                                              4

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:   Dallas _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity.  If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:   9/1/15 _____

_____

Glen P. Smith, Senior Vice President
_____
Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

Form 503                                              5

# Exhibit 2-N

**Form 503**
**(Revised 09/13)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**



**Assumed Name Certificate**

This space reserved for office use.

FILED
In the Office of the
Secretary of State of Texas
SEP 0 2 2015
Corporations Section

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:  Post Midtown Square

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation          ☐ Limited Liability Company
☐ Nonprofit Corporation          ☑ Limited Partnership
☐ Professional Corporation       ☐ Limited Liability Partnership
☐ Professional Association       ☐ Cooperative Association
☐ Other

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:  10222411

5. The state, country, or other jurisdiction of formation of the entity is:  Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800

*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
|---|---|---|---|
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

OR

☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

OR

☐ 7c. The assumed name will be used until _____ (not to exceed 10 years).

*mm/dd/yyyy*

Form 503                                    4

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:   Harris _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:   9/1/15

Glen P. Smith, Senior Vice President

Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

Form 503                                                                 5

# Exhibit 2-O

| **Form 503**<br>**(Revised 09/13)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | <br>**Assumed Name Certificate** | This space reserved for office use.<br><br>**F I L E D**<br>**In the Office of the**<br>**Secretary of State of Texas**<br><br>**SEP 02 2015**<br><br>**Corporations Section** |
| --- | --- | --- |

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:  Post Square

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation          ☐ Limited Liability Company
☐ Nonprofit Corporation          ☑ Limited Partnership
☐ Professional Corporation       ☐ Limited Liability Partnership
☐ Professional Association        ☐ Cooperative Association
☐ Other _____

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:  10222411

5. The state, country, or other jurisdiction of formation of the entity is:  Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800

*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
| --- | --- | --- | --- |
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.
**OR**
☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).
**OR**
☐ 7c. The assumed name will be used until _____ (not to exceed 10 years).
<br>*mm/dd/yyyy*

Form 503                                                           4

## County or Counties in which Assumed Name Used

8.  The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:   Dallas _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date: _____9/1/15_____

_____

Glen P. Smith, Senior Vice President
_____
Signature of a person authorized by law to sign on behalf of the
identified entity (see instructions)

Form 503                                        5

# Exhibit 2-P

| Form **503**<br>**(Revised 09/13)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | <br><br>**Assumed Name Certificate** | This space reserved for office use.<br><br>**F I L E D**<br>**In the Office of the**<br>**Secretary of State of Texas**<br><br>**SEP 0 2 2015**<br><br>**Corporations Section** |
| --- | --- | --- |

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post Uptown Village

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation                    ☐ Limited Liability Company

☐ Nonprofit Corporation                    ☑ Limited Partnership

☐ Professional Corporation              ☐ Limited Liability Partnership

☐ Professional Association              ☐ Cooperative Association

☐ Other

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:   10222411

5. The state, country, or other jurisdiction of formation of the entity is:   Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800
*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
| --- | --- | --- | --- |
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

**OR**

☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

**OR**

☐ 7c. The assumed name will be used until _____ (not to exceed 10 years).
<br>                                                                                 *mm/dd/yyyy*

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:   Dallas _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity.  If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:   9/1/15

Glen P. Smith, Senior Vice President

Signature of a person authorized by law to sign on behalf of the
identified entity (see instructions)

Form 503                                  5

# Exhibit 2-Q

| | | |
|---|---|---|
| **Form 503**<br>**(Revised 09/13)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | *(State seal of Texas)*<br><br>**Assumed Name Certificate** | This space reserved for office use.<br><br>**FILED**<br>**In the Office of the**<br>**Secretary of State of Texas**<br><br>**SEP 0 2 2015**<br><br>**Corporations Section** |

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   Post Vineyard

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

- [ ] For-profit Corporation
- [ ] Nonprofit Corporation
- [ ] Professional Corporation
- [ ] Professional Association
- [ ] Other

- [ ] Limited Liability Company
- [x] Limited Partnership
- [ ] Limited Liability Partnership
- [ ] Cooperative Association

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:   10222411

5. The state, country, or other jurisdiction of formation of the entity is:   Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800

*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
|---|---|---|---|
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

[x] 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

**OR**

[ ] 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

**OR**

[ ] 7c. The assumed name will be used until _____ (not to exceed 10 years).

*mm/dd/yyyy*

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:   Dallas _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity.  If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:   9/1/15

Glen P. Smith, Senior Vice President

Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

# Exhibit 2-R

**Form 503**
**(Revised 09/13)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**



**Assumed Name Certificate**

This space reserved for office use.

**FILED**
**In the Office of the**
**Secretary of State of Texas**
**SEP 0 2 2015**
**Corporations Section**

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:  Post Vintage

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation       ☐ Limited Liability Company
☐ Nonprofit Corporation       ☑ Limited Partnership
☐ Professional Corporation       ☐ Limited Liability Partnership
☐ Professional Association       ☐ Cooperative Association
☐ Other _____

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:  10222411

5. The state, country, or other jurisdiction of formation of the entity is:  Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800
*Street or Mailing Address*

Atlanta       GA       US       30327
*City*       *State*       *Country*       *Postal or Zip Code*

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.
**OR**

☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).
**OR**

☐ 7c. The assumed name will be used until _____ (not to exceed 10 years).
                                              *mm/dd/yyyy*

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties: Dallas _____

_____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date: **9 / 1 / 15**

Glen P. Smith, Senior Vice President

Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

Form 503                                         5

# Exhibit 2-S

**Form 503**
**(Revised 09/13)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**

**Assumed Name Certificate**

This space reserved for office use.

FILED
In the Office of the
Secretary of State of Texas
SEP 02 2015
Corporations Section

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is: Post Worthington

## Entity Information

2. The legal name of the entity filing the assumed name is:

Post Apartment Homes, L.P.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation
☐ Nonprofit Corporation
☐ Professional Corporation
☐ Professional Association
☐ Other

☐ Limited Liability Company
☑ Limited Partnership
☐ Limited Liability Partnership
☐ Cooperative Association

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is: 10222411

5. The state, country, or other jurisdiction of formation of the entity is: Georgia

6. The entity's principal office address is:

4401 Northside Parkway, Suite 800

*Street or Mailing Address*

| Atlanta | GA | US | 30327 |
|---|---|---|---|
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.
**OR**

☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).
**OR**

☐ 7c. The assumed name will be used until _____ (not to exceed 10 years).
*mm/dd/yyyy*

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☐ All counties

☐ All counties with the exception of the following counties: _____

☑ Only the following counties:  Dallas  _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:   **9 / 1 / 15**   _____

_____

Glen P. Smith, Senior Vice President

Signature of a person authorized by law to sign on behalf of the identified entity (see instructions)

Form 503                                    5

# Exhibit 2-T



Mailing Address: P.O. Box 149325, Austin, Texas 78714-9325
Phone: (512) 854-9188
www.traviscountyclerk.org

**Dana DeBeauvoir** *Travis County Clerk*

Recording, Elections, Computer Resources, Accounting, and Administration Divisions     5501 Airport Boulevard, Austin, Texas 78751
Misdemeanor Records, Civil/Probate/Commissioners Court Minutes, and Records Management Divisions     1000 Guadalupe, Austin, Texas 78701

## ASSUMED NAME RECORDS CERTIFICATE OF OWNERSHIP
## FOR UNINCORPORATED BUSINESS OR PROFESSION

Notice: "Certificates of Ownership" are valid only for a period not to exceed 10 years from the date filed in the County Clerk's Office (Chapter 36, Section 1, Title 4 of the Business and Commerce Code). This Certificate properly executed is to be filed immediately with the County Clerk.

Business Name <u>Post South Lamar</u>

Business Address <u>1500 South Lamar</u>

City <u>Austin</u>     State <u>TX</u>     Zip Code <u>78704</u>

Period (not to exceed ten years) during which the assumed name will be used is: <u>10 Years</u>

Business is to be conducted as (check one):

☐ Sole Proprietorship    ☐ Joint Venture    ☐ Real Estate Investment Trust    ☐ Joint Stock Company

☑ Limited Partnership    ☐ Sole Practitioner    ☐ General Partnership    ☐ Other (name type) _____

I/WE, the undersigned, are the owner(s) of the above business and my/our name(s) and address(es) given is/are true and correct and there is/are no ownership(s) in said business other than those listed herein below. Names of owners

Name <u>AUSTIN SL, L.P.</u> <u>a Georgia limited partnership</u>    4401 Northside Parkway, Suite 800
*Signature* Atlanta, GA 30327

By: Austin SL Acquisition GP, LLC,
Residence Address <s>a Georgia limited liability company,</s>    City <u>4401 Northside Parkway, Suite 800</u>    Zip
its sole general partner    Atlanta, GA 30327

Name <s>By: Post Apartment Homes, L.P.,</s>    *Signature*
a Georgia limited partnership, its sole member    4401 Northside Parkway, Suite 800
Residence Address <s>By: Post GP Holdings, Inc.,</s>    City <u>Atlanta, GA 30327</u>    State    Zip

Name   a Georgia corporation,    *Signature* 4401 Northside Parkway, Suite 800
its sole general partner    Atlanta, GA 30327
Residence Address   By: *Glen P. Smith*    City    State    Zip
Glen P. Smith, SVP

*FOR USE BY NOTARY AND CLERK OF THE COURT, DEPUTY. The State of* ~~Texas~~ Georgia *and County of* ~~Travis~~ Fulton:

*Before me, the undersigned authority, on this day personally appeared:* <u>Glen P. Smith</u>

*known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that he/she/they signed the same purpose and consideration therein expressed. Given under my hand and seal of office, on* <u>September 25, 2014</u>

*Pamela D Smith*

*Signature of Notary Public in and for the State of* ~~Texas~~ or Clerk of the Court, Deputy
Georgia

*Seal of the Notary Public or Clerk of the Court, Deputy*

| INFORMATION WHERE DOCUMENT SHOULD BE RETURNED |
|---|
| **(to be completed by applicant):** |
| In the spaces below, clearly print the name, address, city, state, and zip code where this document should be returned |
| Pam Smith, AUSTIN SL, L.P. |
| 4401 Northside Parkway, Suite 800 |
| Atlanta, GA 30327-3093 |

**SEAL**

*Form of identification presented:* _____

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

Sep 29, 2014  03:06 PM     2014146055
MORALESA: $25.50
Dana DeBeauvoir, County Clerk
Travis County  TEXAS

# Exhibit 3

TRV
2016211643
4 PGS

Control Number : 07052525

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

### CERTIFICATE OF CERTIFIED COPY

I, Brian P. Kemp, the Secretary of State of the State of Georgia, do hereby certify under the seal of my office that the attached documents are true and correct copies of documents filed with the Corporations Division of the Office of the Secretary of State of Georgia under the name of

### AUSTIN SL, L.P.

#### a Domestic Limited Partnership

This certificate is issued pursuant to Title 14 of the Official Code of Georgia Annotated and is prima-facie evidence of the existence or nonexistence of the facts stated herein.

| | |
|---|---|
| Docket Number | : 13580124 |
| Date Inc/Auth/Filed | : 06/25/2007 |
| Jurisdiction | : Georgia |
| Print Date | : 12/06/2016 |
| Form Number | : 215 |



B. P. h.

Brian P. Kemp
Secretary of State

Control Number : 07052298

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

### CERTIFICATE OF MERGER

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, do hereby issue this certificate pursuant to Title 14 of the Official Code of Georgia Annotated certifying that articles or a certificate of merger and fees have been filed regarding the merger of the below entities, effective as of **11/22/2016**.  Attached is a true and correct copy of the said filing.

**Surviving Entity:**

SL AUSTIN LP, LLC , a Domestic Limited Liability Company

**Nonsurviving Entity/Entities:**

AUSTIN SL, L.P. Georgia, a Domestic Limited Partnership

WITNESS my hand and official seal in the City of
Atlanta and the State of Georgia on 11/22/2016



Brian P. Kemp
Secretary of State

**ARTICLES OF MERGER**
merging
**AUSTIN SL, L.P.**
**(a Georgia limited partnership)**
with and into
**SL AUSTIN LP, LLC**
**(a Georgia limited liability company)**

Pursuant to Section 14-9-206.1 and Section 14-11-904 of the Official Code of Georgia Annotated (the "*Code*"), the undersigned hereby certifies as follows:

1.   The name and state of organization or domicile of each of the constituent entities are:

| Name | State of Organization or Domicile |
|------|-----------------------------------|
| Austin SL, L.P. | Georgia |
| SL Austin LP, LLC | Georgia |

2.   Under an Agreement and Plan of Merger (the "***Merger Agreement***"), Austin SL, L.P. (the "***Partnership***") is merging with and into SL Austin LP, LLC (the "***Merger***"). SL Austin LP, LLC will be the surviving limited liability company (the "***Surviving Company***") following the Merger.

3.   There will be no amendments to the Articles of Organization of the Surviving Company in connection with the Merger.

4.   The Merger Agreement is on file at the principal place of business of the Surviving Company. The address of the principal place of business of the Surviving Company is 4401 Northside Parkway, Suite 800, Atlanta, Georgia 30327.

5.   A copy of the Merger Agreement will be furnished by the Surviving Company, on request and without cost, to any partner or member of any constituent entity.

6.   The Merger Agreement was duly authorized and approved by the Partnership and the Surviving Company in accordance with Section 14-9-206.1 and Section 14-11-903 of the Code.

7.   The Merger shall become effective as of 2:05 p.m. Eastern Standard Time on November 22, 2016.

*[Signature Page Follows]*

DMSLIBRARY01-29522871.v2

**IN WITNESS WHEREOF,** the undersigned limited liability company has executed and delivered these Articles of Merger as of this <u>22nd</u> day of November, 2016.

**SL AUSTIN LP, LLC,** a Georgia limited liability company

By: Post Apartment Homes, L.P., a Georgia limited partnership, its sole member

By: Post GP Holdings, Inc., a Georgia corporation, its general partner

By: _Sherry W Cohen_

Name: Sherry W. Cohen

Title: Executive Vice President and Corporate Secretary

DMSLIBRARY01-29522871.v1

**Recorders Memorandum**-At the time of recordation this instrument was found to be inadequate for the best reproduction, because of illegibility, carbon or photocopy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

_Dana DeBeauvoir_

Dec 21, 2016   04:12 PM   **2016211643**

GONZALESM: $38.00

Dana DeBeauvoir, County Clerk

Travis County   TEXAS

# Exhibit 4

NRV 2016211644
4 PGS

Control Number : 07052298

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF CERTIFIED COPY

I, Brian P. Kemp, the Secretary of State of the State of Georgia, do hereby certify under the seal of my office that the attached documents are true and correct copies of documents filed with the Corporations Division of the Office of the Secretary of State of Georgia under the name of

### SL AUSTIN LP, LLC

#### a Domestic Limited Liability Company

This certificate is issued pursuant to Title 14 of the Official Code of Georgia Annotated and is prima-facie evidence of the existence or nonexistence of the facts stated herein.

| | |
|---|---|
| Docket Number | : 13580123 |
| Date Inc/Auth/Filed | : 06/22/2007 |
| Jurisdiction | : Georgia |
| Print Date | : 12/07/2016 |
| Form Number | : 215 |



Brian P. Kemp
Secretary of State

Control Number : 07052299

# STATE OF GEORGIA

## Secretary of State

### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

**CERTIFICATE OF MERGER**

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, do hereby issue this certificate pursuant to Title 14 of the Official Code of Georgia Annotated certifying that articles or a certificate of merger and fees have been filed regarding the merger of the below entities, effective as of **11/22/2016**.  Attached is a true and correct copy of the said filing.

**Surviving Entity:**
AUSTIN SL ACQUISITION GP, LLC , a Domestic Limited Liability Company

**Nonsurviving Entity/Entities:**
SL AUSTIN LP, LLC Georgia, a Domestic Limited Liability Company

WITNESS my hand and official seal in the City of
Atlanta and the State of Georgia on 11/22/2016



B. P. Kemp

Brian P. Kemp
Secretary of State

**ARTICLES OF MERGER**
merging
**SL AUSTIN LP, LLC**
**(a Georgia limited liability company)**
**with and into**
**AUSTIN SL ACQUISITION GP, LLC**
**(a Georgia limited liability company)**

Pursuant to Section 14-11-904 of the Official Code of Georgia Annotated ("***Code***"), the undersigned hereby certifies as follows:

1.    The name and state of organization of each of the constituent business entities are:

| Name | State of Organization |
|------|----------------------|
| SL Austin LP, LLC | Georgia |
| Austin SL Acquisition GP, LLC | Georgia |

2.    Under an Agreement and Plan of Merger (the "***Merger Agreement***"), SL Austin LP, LLC (the "***Merged Company***") is merging with and into Austin SL Acquisition GP, LLC (the "***Merger***"). Austin SL Acquisition GP, LLC will be the surviving limited liability company (the "***Surviving Company***") following the Merger.

3.    There will be no amendments to the Articles of Organization of the Surviving Company in connection with the Merger.

4.    The Merger Agreement is on file at the principal place of business of the Surviving Company. The address of the principal place of business of the Surviving Company is 4401 Northside Parkway, Suite 800, Atlanta, Georgia 30327.

5.    A copy of the Merger Agreement will be furnished by the Surviving Company, on request and without cost, to any member of any constituent entity.

6.    The Merger Agreement was duly authorized and approved by the Merged Company and the Surviving Company in accordance with Section 14-11-903 of the Code.

7.    The Merger shall become effective as of 2:06 p.m. Eastern Standard Time on November 21, 2016.

*[Signature Page Follows]*

DMSLIBRARY01-29523087 v2

IN WITNESS WHEREOF, the undersigned limited liability company has executed these Articles of Merger this 21st day of November, 2016.

AUSTIN SL ACQUISITION GP, LLC, a Georgia limited liability company

By: Post Apartment Homes, L.P., a Georgia limited partnership, its sole member

By: Post GP Holdings, Inc., a Georgia corporation, its general partner

By: _Sherry W. Cohen_

Name: Sherry W. Cohen

Title:   Executive Vice President and Corporate Secretary

Post Properties
4401 Northside Pkwy
Ste 800
Atlanta Ga 30327

DMSLIBRARY01 29523087.v1

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

Dec 21, 2016   04:12 PM   **2016211644**

GONZALESM: $38.00

Dana DeBeauvoir, County Clerk

Travis County   TEXAS

**Recorders Memorandum-**At the time of recordation this instrument was found to be inadequate for the best reproduction, because of illegibility, carbon or photocopy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

# Exhibit 5

TRV
2016211645

4 PGS



Control Number : 07052299

# STATE OF GEORGIA

## Secretary of State

### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

## CERTIFICATE OF CERTIFIED COPY

I, Brian P. Kemp, the Secretary of State of the State of Georgia, do hereby certify under the seal of my office that the attached documents are true and correct copies of documents filed with the Corporations Division of the Office of the Secretary of State of Georgia under the name of

### AUSTIN SL ACQUISITION GP, LLC

#### a Domestic Limited Liability Company

This certificate is issued pursuant to Title 14 of the Official Code of Georgia Annotated and is prima-facie evidence of the existence or nonexistence of the facts stated herein.

| | |
|---|---|
| Docket Number | : 13580114 |
| Date Inc/Auth/Filed | : 06/22/2007 |
| Jurisdiction | : Georgia |
| Print Date | : 12/07/2016 |
| Form Number | : 215 |



*B. P. L*

Brian P. Kemp
Secretary of State

Control Number : K310993

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

## CERTIFICATE OF MERGER

I, Brian P. Kemp, the Secretary of State and the Corporation Commissioner of the State of Georgia, do hereby issue this certificate pursuant to Title 14 of the Official Code of Georgia Annotated certifying that articles or a certificate of merger and fees have been filed regarding the merger of the below entities, effective as of **11/22/2016**. Attached is a true and correct copy of the said filing.

**Surviving Entity:**
POST APARTMENT HOMES, L.P. , a Domestic Limited Partnership

**Nonsurviving Entity/Entities:**
AUSTIN SL ACQUISITION GP, LLC Georgia, a Domestic Limited Liability Company

WITNESS my hand and official seal in the City of
Atlanta and the State of Georgia on 11/22/2016



Brian P. Kemp
Secretary of State

**CERTIFICATE OF MERGER**
merging
**AUSTIN SL ACQUISITION GP, LLC**
**(a Georgia limited liability company)**
**with and into**
**POST APARTMENT HOMES, L.P.**
**(a Georgia limited partnership)**

Pursuant to Section 14-11-904 and Section 14-9-206.1 of the Official Code of Georgia Annotated (the "**Code**"), the undersigned hereby certifies as follows:

1.      The name and state of organization or domicile of each of the constituent entities are:

| Name | State of Incorporation or Domicile |
|------|-----------------------------------|
| Austin SL Acquisition GP, LLC | Georgia |
| Post Apartment Homes, L.P. | Georgia |

2.      Under an Agreement and Plan of Merger (the "***Merger Agreement***"), Austin SL Acquisition GP, LLC (the "***Merged LLC***") is merging with and into Post Apartment Homes, L.P. (the "***Merger***").  Post Apartment Homes, L.P. will be the surviving limited partnership (the "***Surviving Partnership***") following the Merger.

3.      There will be no amendments to the Certificate of Limited Partnership of the Surviving Partnership in connection with the Merger.

4.      The Merger Agreement is on file at the principal place of business of the Surviving Partnership.  The address of the principal place of business of the Surviving Partnership is 4401 Northside Parkway, Suite 800, Atlanta, Georgia 30327.

5.      A copy of the Merger Agreement will be furnished by the Surviving Partnership, on request and without cost, to any member of the Merged LLC or to any interest holder of the Surviving Partnership.

6.      The Merger Agreement was duly authorized and approved by the Merged LLC and the Surviving Partnership in accordance with Section 14-11-903 and Section 14-9-206.1 of the Code.

7.      The Merger shall become effective as of 2:07 p.m. Eastern Standard Time on November 22, 2016.

*[Signature Page Follows]*

DMSLIBRARY01 29523128 v2

**IN WITNESS WHEREOF**, the undersigned limited partnership has executed and delivered this Certificate of Merger as of November 22 , 2016.

> **POST APARTMENT HOMES, L.P.**, a Georgia
> limited partnership
>
> By: Post GP Holdings, Inc., a Georgia corporation,
> its general partner
>
> By:   _Sherry W. Cohen_
> Name: Sherry W. Cohen
> Title:   Executive Vice President and Corporate
>    Secretary

Return
Post Properties
4401 Northside Pkwy
Ste 800
Atlanta Ga 30327

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

_Dana DeBeauvoir_

Dec 21, 2016  04:12 PM   **2016211645**
GONZALESM  $38.00
Dana DeBeauvoir, County Clerk
Travis County  TEXAS

DMSLIBRARY01:29523128.v1

**Recorders Memorandum**-At the time of recordation
this instrument was found to be inadequate for the best
reproduction, because of illegibility, carbon or
photocopy, discolored paper, etc. All blockouts,
additions and changes were present at the time the
instrument was filed and recorded.

# Exhibit 6

 (http://www.maac.com/)

Our Communities (http://www.maac.com/our-communities)  |  About MAA (http://www.maac.com/about-maa)

For Investors (http://ir.maac.com/)  |  Careers (/careers)  |  For Residents (https://www.mymaa.com/)

Where do you want to live? 🔍

🔍

| Where do you want to live? | ✖ |

☰ Menu

 (http://www.maac.com/)

- Home (http://www.maac.com/)
- Our Communities (http://www.maac.com/our-communities)
- About MAA (http://www.maac.com/about-maa)
- For Investors (http://ir.maac.com/)
- Careers (/careers)
- For Residents (https://www.mymaa.com/)

# Austin, TX   change location (/modal/changeLocation)

| | MOVE-IN DATE | | BEDROOMS | | | | BATHS | | | PRICE | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | mm/dd/yyyy 📅 to mm/dd/yyyy 📅 | STUDIO 1 | 2 | 3 | 4+ | 1 | 2 | 3 | $728 | $2,181 | $3,633 | 🔍 |

more filters ⌄ ()

## Apartment Homes in Austin

Sort:
Featured ▼

22 Results(/modal/CityMobileFilters)

⇄ Edit Filters


(https://maps.google.com/maps?ll=30.333725,-97.768552&z=12&t=m&hl=en-US&gl=US&mapclient=apiv3)

Google
(https://www.google.com/maps/@30.333725,-97.768552,12z/data=!3m1!1e3)
Map data ©2017 Google


$793 - $1743
(http://balconeswoods.maac.com)
Balcones Woods (http://balconeswoods.maac.com)
11215 Research Blvd, Austin, TX 78759
Br 1-2  |  Ba 1-2  |  Sq. Ft. 460-1019
1st Available: 4/7/2017  |  Phone: 866-428-0882

$863 - $2478
(http://cgashtonoaks.maac.com)
Colonial Grand at Ashton Oaks (http://cgash
300 South A W Grimes Blvd, Round Rock, TX 78664
Br 1-3  |  Ba 1-2  |  Sq. Ft. 719-1129
1st Available: 4/7/2017  |  Phone: 866-359-7915





Apartments for Rent in Austin, TX/MAAC

$929 - $2423
(http://cgcanyoncreek.maac.com)

$809 - $2433
(http://cgcanyonpointe.maac.com)

Colonial Grand at Canyon Creek (http://cgcanyoncreek.maac.com)

Colonial Grand at Canyon Pointe (http://cgc

9501 N FM 620, Austin, TX 78726

9715 FM 620 N, Austin, TX 78726

Br 1-3 | Ba 1-2 | Sq. Ft. 680-1410

Br 1-3 | Ba 1-2 | Sq. Ft. 726-1273

1st Available: 4/7/2017 | Phone: 866-374-5578

1st Available: 4/7/2017 | Phone: 855-753-6554



$868 - $3008
(http://cgdoublecreek.maac.com)

$805 - $2665
(http://cgonioncreek.maac.com)

Colonial Grand at Double Creek (http://cgdoublecreek.maac.com)

Colonial Grand at Onion Creek (http://cgoni

11001 S First St, Austin, TX 78748

1901 Onion Creek Pkwy, Austin, TX 78748

Br 1-3 | Ba 1-2 | Sq. Ft. 727-1420

Br 1-3 | Ba 1-2 | Sq. Ft. 680-1410

1st Available: 4/7/2017 | Phone: 877-363-1830

1st Available: 4/7/2017 | Phone: 866-248-6918



$910 - $3005
(http://cgroundrock.maac.com)

$918 - $2428
(http://cgsilveradoapts.maac.com)

Colonial Grand at Round Rock (http://cgroundrock.maac.com)

Colonial Grand at Silverado (http://cgsilvera

1800 Plateau Vista Blvd, Round Rock, TX 78664

3001 Colonial Pkwy, Cedar Park, TX 78613

Br 1-3 | Ba 1-2 | Sq. Ft. 680-1410

Br 1-2 | Ba 1-2 | Sq. Ft. 600-1251

1st Available: 4/7/2017 | Phone: 866-339-3241

1st Available: 4/7/2017 | Phone: 866-298-5247



$863 - $2823
(http://cgsilveradoreserve.maac.com)

$943 - $3013
(http://cgwellsbranch.maac.com)

Colonial Grand at Silverado Reserve (http://cgsi

Colonial Grand at Wells Branch (http://cgwe

3000 Colonial Pkwy, Cedar Park, TX 78613

1630 Wells Branch Pkwy, Austin, TX 78728

Br 1-3 | Ba 1-2 | Sq. Ft. 680-1265

Br 1-3 | Ba 1-2 | Sq. Ft. 712-1419

1st Available: 4/7/2017 | Phone: 866-319-1424

1st Available: 4/7/2017 | Phone: 866-448-0366

Apartments for Rent in Austin



$763 - $2958
(http://cvquarryoaks.maac.com)

Colonial Village at Quarry Oaks (http://cvquarry...

6263 McNeil Dr, Austin, TX 78729
Br 1-3 | Ba 1-2 | Sq. Ft. 619-1381
1st Available: 4/7/2017 | Phone: 855-466-6612



$918 - $2353
(http://cvsierravista.maac.com)

Colonial Village at Sierra Vista (http://cvsierr...

1111 S Creek Dr, Round Rock, TX 78664
Br 1-3 | Ba 1-2 | Sq. Ft. 652-1200
1st Available: 4/7/2017 | Phone: 866-349-8167



$918 - $3078
(http://grandreservesunset.maac.com)

Grand Reserve at Sunset Valley (http://grandres...

5800 Brodie Lane, Austin, TX 78745
Br 1-3 | Ba 1-2 | Sq. Ft. 650-1352
1st Available: 4/7/2017 | Phone: 866-217-2634

$1033 - $3633
(http://legacywesternoaks.maac.com)

Legacy at Western Oaks (http://legacyweste...

8801 La Cresada Dr, Austin, TX 78749
Br 1-3 | Ba 1-2 | Sq. Ft. 800-1477
1st Available: 4/7/2017 | Phone: 866-701-6948



$1335 - $3380
(http://postbartoncreek.maac.com)

Post Barton Creek (http://postbartoncreek.maac...

2001 S Mopac Expressway, Austin, TX 78746
Br 1-3 | Ba 1-3.5 | Sq. Ft. 837-1545
1st Available: 4/7/2017 | Phone: 844-511-8775

$1165 - $2300
(http://postparkmesa.maac.com)

Post Park Mesa (http://postparkmesa.maac...

5811 Mesa Drive, Austin, TX 78731
Br 1-2 | Ba 1-2 | Sq. Ft. 846-1773
1st Available: 4/7/2017 | Phone: 844-548-4608

Apartments for Rent in Austin, TX



$1230 - $2825
(http://postsouthlamar.maac.com)

Post South Lamar (http://postsouthlamar.maac.com)

1500 South Lamar Blvd, Austin, TX 78704

Br 0-2 | Ba 1-2 | Sq. Ft. 586-1252

1st Available: 4/7/2017 | Phone: 844-553-1044

$1225 - $2400
(http://postwestaustin.maac.com)

Post West Austin (http://postwestaustin.maac.com)

4330 Bull Creek Rd, Austin, TX 78731

Br 1-2 | Ba 1-2 | Sq. Ft. 657-1320

1st Available: 4/7/2017 | Phone: 844-567-8442



$913 - $2808
(http://silverado.maac.com)

Silverado at Brushy Creek (http://silverado.maac.com)

11300 W Parmer Lane, Cedar Park, TX 78613

Br 1-3 | Ba 1-2 | Sq. Ft. 650-1343

1st Available: 4/7/2017 | Phone: 866-519-5026

$728 - $1833
(http://sixty600.maac.com)

Sixty600 (http://sixty600.maac.com)

6600 Ed Bluestein Blvd, Austin, TX 78723

Br 1-2 | Ba 1-2 | Sq. Ft. 500-1150

1st Available: 4/7/2017 | Phone: 866-429-1332




$843 - $1948
(http://stassneywoods.maac.com)

Stassney Woods (http://stassneywoods.maac.com)

1800 E Stassney Lane, Austin, TX 78744

Br 1-2 | Ba 1-2 | Sq. Ft. 618-1044

1st Available: 4/7/2017 | Phone: 866-875-3660

$1108 - $2913
(http://thewoods.maac.com)

The Woods on Barton Skyway (http://thewoods.maac.com)

2901 Barton Skyway, Austin, TX 78746

Br 1-2 | Ba 1-2 | Sq. Ft. 650-1030

1st Available: 4/7/2017 | Phone: 866-681-6242

**LINKS**

Home (http://www.maac.com/)

Our Communities (http://www.maac.com/our-communities)

About MAA (http://www.maac.com/about-maa)

Contact Us (http://www.maac.com/contact-us)

Furnished Apartments (http://www.maac.com/our-programs/furnished-apartments)

Commercial Space (http://www.maac.com/our-programs/commercial-space)

**CORPORATE HEADQUARTERS**

MAA

6584 Poplar Avenue

Memphis, Tennessee 38138

**RESIDENT CONTACT**

For Investors (http://ir.maac.com/)

Careers (http://www.maac.com/careers)

For Residents (https://www.mymaa.com/)

Resident Support Contact

866-620-1130

Send Us a Message (http://www.maac.com/contact-us)

 © Copyright 2015 MAA     Privacy Policy (http://www.maac.com/privacy-policy)  |  Terms of Service (http://www.maac.com/terms-of-service)     

 (http://www.maac.com/)

Our Communities (http://www.maac.com/our-communities) | About MAA (http://www.maac.com/about-maa)

For Investors (http://ir.maac.com/) | Careers (/careers) | For Residents (https://www.mymaa.com/)

Where do you want to live? 🔍

🔍

Where do you want to live?    ✕

☰ Menu

 (http://www.maac.com/)

- Home (http://www.maac.com/)
- Our Communities (http://www.maac.com/our-communities)
- About MAA (http://www.maac.com/about-maa)
- For Investors (http://ir.maac.com/)
- Careers (/careers)
- For Residents (https://www.mymaa.com/)

# Dallas/Ft Worth, TX   change location (/modal/changeLocation)

| MOVE-IN DATE | | BEDROOMS | | | | | BATHS | | | PRICE | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| mm/dd/yyyy 📅 to mm/dd/yyyy 📅 | | STUDIO | 1 | 2 | 3 | 4+ | 1 | 2 | 3 | $738 | $2,519 | $4,300 | 🔍 |

more filters ⌄ ()

## Apartment Homes in Dallas/Ft Worth

Sort:
Featured ▼

43 Results (/modal/CityMobileFilters)

Edit Filters





$1048 - $2838
(http://bellacasita.maac.com)
Bella Casita (http://bellacasita.maac.com)
851 Lake Carolyn Pkwy, Irving, TX 75039
Br 1-2 | Ba 1-2 | Sq. Ft. 700-1625
1st Available: 4/7/2017 | Phone: 866-651-7363



$903 - $2588
(http://boulderridge.maac.com)
Boulder Ridge (http://boulderridge.maac.com)
1515 Cannon Pkwy, Roanoke, TX 76262
Br 1-3 | Ba 1-2 | Sq. Ft. 628-1263
1st Available: 4/7/2017 | Phone: 866-849-2729








(https://maps.google.com/maps?ll=32.892941,-96.953862&z=10&t=m&hl=...Maps Data ©2017 Google

($3013 - $4203)
(http://cityscape.maac.com)
Cityscape at Market Center (http://cityscape.maac.com)

3825 Mapleshade Lane, Plano, TX 75075
Br 1-3 │ Ba 1-2 │ Sq. Ft. 561-2136
1st Available: 4/7/2017 │ Phone: 844-334-1786

($3013 - $4173)
(http://cityscapeii.maac.com)
Cityscape at Market Center II (http://cityscapeii.maac.com)

440 Coit Rd, Plano, TX 75075
Br 0-3 │ Ba 1-3.5 │ Sq. Ft. 501-2174
1st Available: 4/7/2017 │ Phone: 844-213-8173



($883 - $2888)
(http://cgbearcreek.maac.com)
Colonial Grand at Bear Creek (http://cgbearcreek.maac.com)

1200 Fuller Wiser Rd, Euless, TX 76039
Br 1-3 │ Ba 1-2 │ Sq. Ft. 692-1362
1st Available: 4/7/2017 │ Phone: 866-290-0877



($913 - $3213)
(http://cgfairview.maac.com)
Colonial Grand at Fairview (http://cgfairview.maac.com)

344 Murray Farm Rd, Fairview, TX 75069
Br 1-3 │ Ba 1-2 │ Sq. Ft. 660-1330
1st Available: 4/7/2017 │ Phone: 877-929-6893



($1043 - $2628)
(http://cghebron.maac.com)
Colonial Grand at Hebron (http://cghebron.maac.com)

1701 E Hebron Pkwy, Carrollton, TX 75010
Br 1-2 │ Ba 1-2 │ Sq. Ft. 890-1324
1st Available: 4/7/2017 │ Phone: 866-813-2536

($1133 - $4048)
(http://cgvalleyranch.maac.com)
Colonial Grand at Valley Ranch (http://cgvalleyranch.maac.com)

8001 N MacArthur Blvd, Irving, TX 75063
Br 1-3 │ Ba 1-2 │ Sq. Ft. 901-1624
1st Available: 4/7/2017 │ Phone: 866-252-3584



($958 - $3008)
(http://crfriscobridges.maac.com)
Colonial Reserve at Frisco Bridges (http://crfriscobridges.maac.com)

3150 Ave of the Stars, Frisco, TX 75034
Br 0-3 │ Ba 1-2 │ Sq. Ft. 560-1486
1st Available: 4/7/2017 │ Phone: 855-423-1057



($1028 - $2598)
(http://crlascolinas.maac.com)
Colonial Reserve at Las Colinas (http://crlascolinas.maac.com)

350 E Las Colinas Blvd, Irving, TX 75039
Br 0-2 │ Ba 1-2 │ Sq. Ft. 551-1417
1st Available: 4/7/2017 │ Phone: 877-537-9893

Luxury Apartments for Rent in Dallas, Downtown Dallas - MAAC



$908 - $3348
(http://crmeddistrict.maac.com)

Colonial Reserve at Medical District (http://crmeddistrict.maac.com)

2222 Medical District Dr, Dallas, TX 75235

Br 0-3 | Ba 1-3 | Sq. Ft. 502-1465

1st Available: 4/7/2017 | Phone: 866-402-9326

$738 - $2658
(http://cvgrapevine.maac.com)

Colonial Village at Grapevine (http://cvgrapevine.maac.com)

2300 Grayson Dr, Grapevine, TX 75051

Br 0-3 | Ba 1-2 | Sq. Ft. 652-1264

1st Available: 4/7/2017 | Phone: 866-293-2790



$823 - $1878
(http://cvoakbend.maac.com)

Colonial Village at Oak Bend (http://cvoakbend.maac.com)

195 E Round Grove Rd, Lewisville, TX 75067

Br 1-2 | Ba 1-2 | Sq. Ft. 659-1234

1st Available: 4/7/2017 | Phone: 866-263-6527

$863 - $2223
(http://cvshoalcreek.maac.com)

Colonial Village at Shoal Creek (http://cvshoalcreek.maac.com)

2500 Central Park Blvd, Bedford, TX 76022

Br 1-2 | Ba 1-2 | Sq. Ft. 692-1163

1st Available: 4/7/2017 | Phone: 866-289-4417



$914 - $2809
(http://cvwillowcreek.maac.com)

Colonial Village at Willow Creek (http://cvwillowcreek.maac.com)

2801 Airport Freeway, Bedford, TX 76021

Br 1-3 | Ba 1-2 | Sq. Ft. 650-1352

1st Available: 4/7/2017 | Phone: 866-286-5501

$863 - $2603
(http://copperridge.maac.com)

Copper Ridge (http://copperridge.maac.com)

2001 Holley Pkwy, Roanoke, TX 76262

Br 1-3 | Ba 1-2 | Sq. Ft. 573-1425

1st Available: 4/7/2017 | Phone: 866-485-7115



$873 - $2328
(http://courtyardsatcampbell.maac.com)

Courtyards at Campbell (http://courtyardsatcampbell.maac.com)

16500 Lauder Lane, Dallas, TX 75248

Br 1-2 | Ba 1-2 | Sq. Ft. 600-1000

1st Available: 4/7/2017 | Phone: 866-251-9623

$773 - $1748
(http://deerrun.maac.com)

Deer Run (http://deerrun.maac.com)

3637 Trinity Mills Rd, Dallas, TX 75287

Br 1-2 | Ba 1-2 | Sq. Ft. 488-912

1st Available: 4/7/2017 | Phone: 866-213-9682



$848 - $2698
(http://grandcourtyards.maac.com)

Grand Courtyards (http://grandcourtyards.maac.com)

525 W Westchester Pkwy, Grand Prairie, TX 75052

Br 1-3 | Ba 1-2 | Sq. Ft. 639-1257

1st Available: 4/7/2017 | Phone: 866-853-9691

$878 - $2083
(http://highwood.maac.com)

Highwood (http://highwood.maac.com)

2401 Ohio Dr, Plano, TX 75093

Br 1-2 | Ba 1-2 | Sq. Ft. 636-951

1st Available: 4/7/2017 | Phone: 866-807-0055




$918 - $3228
(http://lavalencia.maac.com)

La Valencia at Starwood (http://lavalencia.maac.com)

6805 Lebanon Rd, Frisco, TX 75034

Br 1-3 | Ba 1-2 | Sq. Ft. 744-1450

1st Available: 4/7/2017 | Phone: 866-927-0597

$883 - $3238
(http://legendsloweafarm.maac.com)

Legends at Lowes Farm (http://legendslowe...)

1400 N State Highway 360, Mansfield, TX 76063

Br 1-3 | Ba 1-2 | Sq. Ft. 647-1279

1st Available: 4/7/2017 | Phone: 888-496-2026



$923 - $2858
(http://losrios.maac.com)
Los Rios (http://losrios.maac.com)

4701 14th St, Plano, TX 75074

Br 1-3 | Ba 1-2 | Sq. Ft. 650-1256

1st Available: 4/7/2017 | Phone: 866-828-1503



$823 - $1713
(http://northwoodplace.maac.com)
Northwood Place (http://northwoodplace.ma

500 Tish Circle, Arlington, TX 76006

Br 1-2 | Ba 1-2.5 | Sq. Ft. 664-1094

1st Available: 4/7/2017 | Phone: 866-485-5942



$2515 - $3945
(http://postabbey.maac.com)
Post Abbey (http://postabbey.maac.com)

2525 Worthington, Dallas, TX 75204

Br 2-3 | Ba 2-2.5 | Sq. Ft. 1233-1700

1st Available: 4/7/2017 | Phone: 855-222-0595



$855 - $2445
(http://postaddisoncircle.maac.com)
Post Addison Circle (http://postaddisoncircle

5009 Addison Circle, Addison, TX 75001

Br 0-2 | Ba 1-2.5 | Sq. Ft. 420-2360

1st Available: 4/7/2017 | Phone: 844-445-6136



$985 - $2275
(http://postcolescorner.maac.com)
Post Cole's Corner (http://postcolescorner.maac

3096 N Hall Street, Dallas, TX 75204

Br 0-2 | Ba 1-2 | Sq. Ft. 438-1359

1st Available: 4/7/2017 | Phone: 844-852-8359



$825 - $2300
(http://posteastside.maac.com)
Post Eastside (http://posteastside.maac.com

1801 N Greenville Ave, Richardson, TX 75081

Br 1-2 | Ba 1-2 | Sq. Ft. 503-1806

1st Available: 4/7/2017 | Phone: 844-461-3417



$1680 - $4300
(http://postgallery.maac.com)

Post Gallery (http://postgallery.maac.com)

3006 Woodside St, Dallas, TX 75204

Br 1-3 │ Ba 1.5-3 │ Sq. Ft. 891-5651

1st Available: 4/7/2017 │ Phone: 844-208-9138



$1005 - $2945
(http://postheights.maac.com)

Post Heights (http://postheights.maac.com)

3015 State St, Dallas, TX 75204

Br 0-2 │ Ba 1-2 │ Sq. Ft. 447-1256

1st Available: 4/7/2017 │ Phone: 844-210-3426



$1425 - $3250
(http://postkatytrail.maac.com)

Post Katy Trail (http://postkatytrail.maac.com)

3223 Lemmon Avenue, Dallas, TX 75204

Br 0-2 │ Ba 1-2 │ Sq. Ft. 621-1321

1st Available: 4/7/2017 │ Phone: 844-210-8302



$830 - $2005
(http://postlegacy.maac.com)

Post Legacy (http://postlegacy.maac.com)

5741 Martin Road, Plano, TX 75204

Br 0-2 │ Ba 1-2 │ Sq. Ft. 486-1680

1st Available: 4/7/2017 │ Phone: 844-490-3594



$1350 - $2625
(http://postmeridian.maac.com)

Post Meridian (http://postmeridian.maac.com)

2427 Allen Street, Dallas, TX 75204

Br 1-2 │ Ba 1-2 │ Sq. Ft. 554-1068

1st Available: 4/7/2017 │ Phone: 844-216-9543



$1045 - $2010
(http://postsierra.maac.com)

Post Sierra at Frisco Bridges (http://postsier

3200 Rifle Gap Rd, Frisco, TX 75034

Br 1-2 │ Ba 1-2 │ Sq. Ft. 709-1376

1st Available: 4/7/2017 │ Phone: 844-501-2666



$1180 - $2780
(http://postsquare.maac.com)
Post Square (http://postsquare.maac.com)

2815 Allen Street #120, Dallas, TX 75204
Br 1-2  |  Ba 1-2.5  |  Sq. Ft. 538-1383
1st Available: 4/7/2017  |  Phone: 844-220-3256



$955 - $2260
(http://postuptownvillage.maac.com)
Post Uptown Village (http://postuptownvillag

2121 Routh Street, Dallas, TX 75201
Br 0-2  |  Ba 1-2  |  Sq. Ft. 489-1222
1st Available: 4/7/2017  |  Phone: 844-233-4055



$965 - $2365
(http://postvineyard.maac.com)
Post Vineyard (http://postvineyard.maac.com)

3015 Cole Ave, Dallas, TX 75204
Br 1-2  |  Ba 1-2  |  Sq. Ft. 485-1215
1st Available: 4/7/2017  |  Phone: 844-234-5569



$1110 - $2355
(http://postvintage.maac.com)
Post Vintage (http://postvintage.maac.com)

2800 Cole Avenue, Dallas, TX 75204
Br 1-2  |  Ba 1-2  |  Sq. Ft. 516-1204
1st Available: 4/7/2017  |  Phone: 844-237-1896



$945 - $2895
(http://postworthington.maac.com)
Post Worthington (http://postworthington.maac.com

2808 Mckinney Ave, Dallas, TX 75204
Br 0-2  |  Ba 1-2.5  |  Sq. Ft. 334-1570
1st Available: 4/7/2017  |  Phone: 844-244-0482



$808 - $1958
(http://remingtonhillsatlascolinas.maac.com)
Remington Hills at Las Colinas (http://remin

1201 Meadow Creek Dr, Irving, TX 75038
Br 1-2  |  Ba 1-2  |  Sq. Ft. 665-1222
1st Available: 4/7/2017  |  Phone: 866-861-2594



$943 - $3093
(http://timessquare.maac.com)

Times Square at Craig Ranch (http://timessquare.maac.com)

7951 Collin McKinney Pkwy, McKinney, TX 75070

Br 1-2 | Ba 1-2 | Sq. Ft. 773-1477

1st Available: 4/7/2017 | Phone: 888-502-6001



$873 - $2828
(http://venuestonebridge.maac.com)

The Venue Stonebridge Ranch (http://venuestonebridge.maac.com)

6530 Virginia Pkwy, McKinney, TX 75070

Br 1-3 | Ba 1-2 | Sq. Ft. 635-1325

1st Available: 4/7/2017 | Phone: 877-912-5358



$1003 - $2313
(http://watermark.maac.com)

Watermark (http://watermark.maac.com)

150 Parish Lane, Roanoke, TX 76262

Br 1-2 | Ba 1-2 | Sq. Ft. 675-1225

1st Available: 4/7/2017 | Phone: 866-665-0620

LINKS

Home (http://www.maac.com/)
Our Communities (http://www.maac.com/our-communities)
About MAA (http://www.maac.com/about-maa)
Contact Us (http://www.maac.com/contact-us)
Furnished Apartments (http://www.maac.com/our-programs/furnished-apartments)
Commercial Space (http://www.maac.com/our-programs/commercial-space)
For Investors (http://ir.maac.com/)
Careers (http://www.maac.com/careers)
For Residents (https://www.mymaa.com/)

CORPORATE HEADQUARTERS

MAA
6584 Poplar Avenue
Memphis, Tennessee 38138

RESIDENT CONTACT

Resident Support Contact
866-620-1130
Send Us a Message (http://www.maac.com/contact-us)

 © Copyright 2015 MAA     Privacy Policy (http://www.maac.com/privacy-policy) | Terms of Service (http://www.maac.com/terms-of-service)      

 (http://www.maac.com/)

Our Communities (http://www.maac.com/our-communities) | About MAA (http://www.maac.com/about-maa)

For Investors (http://ir.maac.com/) | Careers (/careers) | For Residents (https://www.mymaa.com/)

Where do you want to live? 🔍

🔍

| Where do you want to live? | ✖ |

☰ Menu

 (http://www.maac.com/)

- Home (http://www.maac.com/)
- Our Communities (http://www.maac.com/our-communities)
- About MAA (http://www.maac.com/about-maa)
- For Investors (http://ir.maac.com/)
- Careers (/careers)
- For Residents (https://www.mymaa.com/)

# Houston, TX    change location (/modal/changeLocation)

| MOVE-IN DATE | BEDROOMS | BATHS | PRICE | |
|---|---|---|---|---|
| mm/dd/yyyy 📅 to mm/dd/yyyy 📅 | STUDIO 1 2 3 4+ | 1 2 3 | $738 $2,118 $3,498 | 🔍 |

more filters ⌄ ()

## Apartment Homes in Houston

Sort:
Featured ▼

15 Results(/modal/CityMobileFilters)

⊞ Edit Filters







$868 - $2398
(http://cascadefallcreek.maac.com)
Cascade at Fall Creek (http://cascadefallcreek.maac.com)
8440 N Sam Houston Pkwy E, Humble, TX 77396
Br 1-3 | Ba 1-2 | Sq. Ft. 684-1462
1st Available: 4/7/2017 | Phone: 877-912-7127



$738 - $1658
(http://cypresswoodcourt.maac.com)
Cypresswood Court (http://cypresswoodcou
22221 Cypresswood Dr, Spring, TX 77373
Br 1-2 | Ba 1-2 | Sq. Ft. 639-1020
1st Available: 4/7/2017 | Phone: 866-369-0564





 (https://maps.google.com/maps?ll=29.88403&z=10&t=m&hl=en&gl=US&mapclient=apiv3)
Map data ©2017 Google, INEGI

http://www.maac.com/texas/houston

$843 - $2105
(http://grandcypress.maac.com)

Grand Cypress (http://grandcypress.maac.com)

14144 Mueschke Rd, Cypress, TX 77433

Br 1-2 | Ba 1-2 | Sq. Ft. 650-1205

1st Available: 4/7/2017 | Phone: 866-430-8503

$795 - $1798
(http://greentreeplace.maac.com)

Green Tree Place (http://greentreeplace.ma

315 Valley Wood Dr, The Woodlands, TX 77380

Br 1-2 | Ba 1-2 | Sq. Ft. 540-950

1st Available: 4/7/2017 | Phone: 866-824-9905



$853 - $2683
(http://greenwoodforest.maac.com)

Greenwood Forest (http://greenwoodforest.maac.com)

12820 Greenwood Forest Dr, Houston, TX 77066

Br 1-3 | Ba 1-2 | Sq. Ft. 684-1458

1st Available: 4/7/2017 | Phone: 866-505-3768

$888 - $2263
(http://legacypines.maac.com)

Legacy Pines (http://legacypines.maac.com

11100 Louetta Rd, Houston, TX 77070

Br 1-3 | Ba 1-2 | Sq. Ft. 711-1344

1st Available: 4/7/2017 | Phone: 866-322-7806



$803 - $2278
(http://parkplacehouston.maac.com)

Park Place Houston (http://parkplacehouston.maac.com)

15200 Park Row, Houston, TX 77084

Br 1-2 | Ba 1-2 | Sq. Ft. 654-1178

1st Available: 4/7/2017 | Phone: 866-485-5793

$1240 - $2250
(http://post510.maac.com)

Post 510 (http://post510.maac.com)

510 Richmond Ave, Houston, TX 77006

Br 1-2 | Ba 1-2 | Sq. Ft. 591-1328

1st Available: 4/7/2017 | Phone: 844-511-1793



$1180 - $2950
(http://postaftonoaks.maac.com)

Post at Afton Oaks (http://postaftonoaks.maac.com)

3131 West Loop South, Houston, TX 77027

Br 0-2 | Ba 1-2 | Sq. Ft. 539-1325

1st Available: 4/7/2017 | Phone: 844-867-1383

$1015 - $2355
(http://postmidtownsquare.maac.com)

Post Midtown Square (http://postmidtownsq

302 Gray Street, Houston, TX 77002

Br 0-2 | Ba 1-2 | Sq. Ft. 483-1700

1st Available: 4/7/2017 | Phone: 844-543-1105





$803 - $2928 (http://ranchstone.maac.com)

Ranchstone (http://ranchstone.maac.com)

10901 Ranchstone Dr, Houston, TX 77064

Br 1-3 | Ba 1-2 | Sq. Ft. 731-1320

1st Available: 4/7/2017 | Phone: 866-720-9947



$768 - $2383 (http://reservewoodwindlakes.maac.com)

Reserve at Woodwind Lakes (http://reserve

14555 Philippine St, Houston, TX 77040

Br 1-3 | Ba 1-2 | Sq. Ft. 677-1370

1st Available: 4/7/2017 | Phone: 866-261-6764



$903 - $2493 (http://retreatatvintagepark.maac.com)

Retreat at Vintage Park (http://retreatatvintagepark.maac.com)

19939 Chasewood Park Dr, Houston, TX 77070

Br 1-3 | Ba 1-2 | Sq. Ft. 655-1468

1st Available: 4/7/2017 | Phone: 855-336-0490

$823 - $2463 (http://villageskirkwood.maac.com)

Villages of Kirkwood (http://villageskirkwood

12840 S Kirkwood Rd, Stafford, TX 77477

Br 1-3 | Ba 1-2 | Sq. Ft. 590-1239

1st Available: 4/7/2017 | Phone: 866-729-5913



$1303 - $3498 (http://yaleat6th.maac.com)

Yale @ 6th (http://yaleat6th.maac.com)

655 Yale St., Houston, TX 77007

Br 1-2 | Ba 1-2 | Sq. Ft. 552-1404

1st Available: 4/7/2017 | Phone: 855-973-1495

LINKS

Home (http://www.maac.com/)

Our Communities (http://www.maac.com/our-communities)

About MAA (http://www.maac.com/about-maa)

Contact Us (http://www.maac.com/contact-us)

Furnished Apartments (http://www.maac.com/our-programs/furnished-apartments)

Commercial Space (http://www.maac.com/our-programs/commercial-space)

CORPORATE HEADQUARTERS

MAA

6584 Poplar Avenue

Memphis, Tennessee 38138

RESIDENT CONTACT

For Investors (http://ir.maac.com/)

Careers (http://www.maac.com/careers)

For Residents (https://www.mymaa.com/)

Resident Support Contact

866-620-1130

Send Us a Message (http://www.maac.com/contact-us)

---

 © Copyright 2015 MAA      Privacy Policy (http://www.maac.com/privacy-policy)  |  Terms of Service (http://www.maac.com/terms-of-service)     

 (http://www.maac.com/)

Our Communities (http://www.maac.com/our-communities)  |  About MAA (http://www.maac.com/about-maa)

For Investors (http://ir.maac.com/)  |  Careers (/careers)  |  For Residents (https://www.mymaa.com/)

Where do you want to live?  🔍

🔍

Where do you want to live?   ✕

☰ Menu

 (http://www.maac.com/)

- Home (http://www.maac.com/)
- Our Communities (http://www.maac.com/our-communities)
- About MAA (http://www.maac.com/about-maa)
- For Investors (http://ir.maac.com/)
- Careers (/careers)
- For Residents (https://www.mymaa.com/)

# San Antonio, TX   change location (/modal/changeLocation)

| | MOVE-IN DATE | | BEDROOMS | | | | | BATHS | | | PRICE | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | mm/dd/yyyy 📅 to mm/dd/yyyy 📅 | STUDIO 1 | 2 | 3 | 4+ | 1 | 2 | 3 | | $713 | $1,983 | $3,253 | 🔍 |

more filters ⌄ ()

## Apartment Homes in San Antonio

Sort: Featured ▼

4 Results(/modal/CityMobileFilters)

⊞ Edit Filters



$713 - $2673 (http://alamoranch.maac.com)

Alamo Ranch (http://alamoranch.maac.com)

11585 Alamo Ranch Pkwy, San Antonio, TX 78253

Br 1-3  |  Ba 1-2  |  Sq. Ft. 553-1296

1st Available: 4/7/2017  |  Phone: 866-956-9587



$833 - $3253 (http://bulverdeoaks.maac.com)

Bulverde Oaks (http://bulverdeoaks.maac.com)

3515 Canyon Pkwy, San Antonio, TX 78259

Br 1-3  |  Ba 1-2  |  Sq. Ft. 629-1360

1st Available: 4/7/2017  |  Phone: 844-334-0527







 (https://maps.google.com/maps?ll=29.539863,-98.57397&z=11&t=m&hl=en-US&gl=US&mapclient=apiv3) Map data ©2017 Google

Apartments for Rent in San Antonio, Texas | MAA

(http://havenatblanco.maac.com)

Haven at Blanco (http://havenatblanco.maac.com)

15150 Blanco Rd, San Antonio, TX 78232

Br 1-3 │ Ba 1-2 │ Sq. Ft. 678-1292

1st Available: 4/7/2017 │ Phone: 866-457-3201

(http://stoneranch.maac.com)

Stone Ranch at Westover Hills (http://stoner

9531 SH 151 (Stotzer Freeway), San Antonio, TX 78251

Br 1-3 │ Ba 1-2 │ Sq. Ft. 612-1501

1st Available: 4/7/2017 │ Phone: 866-909-3883

LINKS

Home (http://www.maac.com/)

Our Communities (http://www.maac.com/our-communities)

About MAA (http://www.maac.com/about-maa)

Contact Us (http://www.maac.com/contact-us)

Furnished Apartments (http://www.maac.com/our-programs/furnished-apartments)

Commercial Space (http://www.maac.com/our-programs/commercial-space)

For Investors (http://ir.maac.com/)

Careers (http://www.maac.com/careers)

For Residents (https://www.mymaa.com/)

CORPORATE HEADQUARTERS

MAA

6584 Poplar Avenue

Memphis, Tennessee 38138

RESIDENT CONTACT

Resident Support Contact

866-620-1130

Send Us a Message (http://www.maac.com/contact-us)

 © Copyright 2015 MAA　Privacy Policy (http://www.maac.com/privacy-policy) │ Terms of Service (http://www.maac.com/terms-of-service)　 

# Exhibit 7

THIS RESIDENTIAL LEASE AGREEMENT ("Lease" or "Agreement") is made this 3rd of March, 2015 between Landlord and Resident(s).  Subject to the Lease Summary and Specific Terms and General Terms and Conditions set forth below, Landlord leases to Resident(s), and Resident(s) leases from Landlord, the Apartment located at the Property.

# LEASE SUMMARY AND SPECIFIC TERMS

Property (also referred to as "Premises"): **Post South Lamar**

Property Address:
**1500 South Lamar Boulevard**
**Austin TX, 78704**

Landlord (referred to as "Management", "Post", or "We"): Austin SL, L.P., a Georgia limited partnership
Authorized Agent of Landlord: Post Apartment Homes, L.P., a Georgia limited partnership

Resident(s) (referred to as "Resident", "You", or "Your"):
**Nathanael Brown**

Apartment:
**1500 South Lamar #**
**Austin TX, 78704**

Lease Start Date:  12:00 noon on: **03/03/2015**

Lease End Date:  11:59 a.m. on: **03/02/2016**

Monthly Base Rent: **$1595.00**

Security Deposit: **$0.00**

Additional Security Deposit: **$0.00**

Included Rentable Spaces

Additional Rentable Items

Other Recurring Charges:
**Monthly Trash Fee: $7.50 Per Month.**

You DO NOT HAVE a pet at this time.
If You obtain a pet, You agree to let Post know immediately and to comply with all requirements of pet owners, including execution of a Pet Addendum and payment of the Non-refundable Pet Fee and Refundable Pet Deposit required by Post at that time.  You understand that any pet that visits for any part of one day shall be considered Your pet if such visits number more than fourteen (14) during the term of this Lease.  You understand that any violation of this provision may be deemed to be a material breach of this Lease.

# GENERAL TERMS AND CONDITIONS

**1.  RENT:**

1.1  You agree to pay Post the Monthly Base Rent set forth above, which is payable each month in advance on the first day of each month, during the initial or extended term of this Lease at the office of Post at the Property or such other place as Post may designate.  Rent paid after the first day of the month is late.  If the Lease Start Date is not the first day of the month, then Your Monthly Base Rent for that month will be prorated and will be payable in advance on the Lease Start Date.

1.2  Any additional sums or charges due from You under this Lease (for example including but not limited to sums for trash, late fees, other fees, utilities, or because of a breach or violation of this Lease ("Additional Sums") shall be due as additional rent.  Such Additional Sums or charges shall also include, but are not limited to, damages exceeding normal wear and tear to the Apartment and/or Premises, when such damages are caused by You or Your Occupants, guests or invitees.

1.3  Only after Total Rent (which shall include Monthly Base Rent and the Additional Sums) is tendered will rent payment be accepted.  Total Rent must be submitted in full.  Separate payments at different times will not be accepted.

1.4  All rent shall be paid by personal check drawn on Your personal account, cashier's check, certified funds or money order.  Post may, but is not required to, accept rent through direct debit, ACH, or other electronic means established and approved by Post.  You will not use and Post shall have the right to refuse cash for any payment due under this Lease.

1.5  You waive all rights to deduct or offset any sums from rent , whether such rights exist now, arise after the Lease Start Date, or were created by statute or other laws.  Notwithstanding the foregoing, nothing herein or elsewhere in the Lease shall be deemed to constitute a waiver of any right or remedy provided to You by applicable law, which right or remedy may not be waived pursuant to such law.

1.6  Monthly Trash Fee:  Post shall provide the following services:  maintenance of the grounds and removal of trash deposited by You in the trash chute or common area dumpster.  Post may elect to provide additional services at its sole discretion.  You agree to pay a Monthly Trash Fee, as set forth above, for trash collection.  This amount shall be due and payable as additional rent.

1.7  Rent Increases:  You agree that 75 days prior to the Lease End Date, or at any time thereafter, Post shall have the right to increase the Monthly Base Rent and any other rent or sums due under this Lease by giving You no less than 75 days' written notice (the "rent increase notice period"), and such increase shall not terminate this Lease.

1.7.1  You agree the rent increase notice period shall begin when Post either (a) delivers the notice regarding a rent increase personally to You or any one of You, (b) sends such notice to any email address on file with Post as provided by You or any one of You, (c) places such notice on the Apartment door, or (d) mails such notice by U.S. First Class Mail to the Apartment.

1.7.2  The rental increase shall be effective following the end of the initial Lease term or the 75th day after such notice was given, whichever shall occur later.

1.7.3  The terms of any renewal may specify rent greater than the Monthly Base Rent under this Lease, may incorporate Lease provisions that are different from the provisions of this Lease, and may specify rules that are different from the Rules in effect during the term of this Lease

**2.  LATE PAYMENTS;  RETURNED CHECKS, ACH TRANSACTIONS, OR OTHER PAYMENTS:**

> **Electronically Initialed By**
> **Nathanael Brown**
> **on 3/3/2015**

Time is of the essence of this Lease.  If Your rent is not paid on or before the **third** day of the month, a late fee or charge in the amount of **10%** of the full monthly rent shall be due as additional rent.  Such "full monthly rent" shall include all additional monthly rent due.

**You agree that, in order to allow for processing, there is a 4:00 p.m. deadline for paying rent in person or by placing it in a rent drop box.  Because such payments received after 4:00 p.m., or at any time on a Sunday, holiday or other day when Post's office is not open for business will not be credited to Your account until the next business day, a late fee may be incurred.  Electronic payments will be credited to Your account at the time funds are actually received.**

2.1  If Post elects to accept late rent, You shall tender all late rents, dispossessory warrant costs, and administrative filing fees to Post only by cashier's check, certified check or money order. Acceptance of late rent is not a waiver of the requirement that rent is due on the first day of the month.

2.2  In the event Your rent check or any other check written by You or any direct debit, ACH, or other electronic payment made by You or on Your behalf is dishonored, returned, or rejected by the bank or is otherwise unsuccessful through no fault of Post, You shall pay Post a service charge in the amount of **$50.00** in addition to the amount of the check or payment, any late charges, and any other amounts owed.  Dishonored, returned, rejected, or unsuccessful checks, direct debits, ACH transactions, or other electronic payments shall be redeemed only by cashier's check, certified check or money order, and, thereafter, You shall pay all future rents and charges due under this Lease only by cashier's check, certified check or money order.

2.3  Nothing in this Lease shall constitute a waiver or limitation of Post's right to institute legal proceedings for rent, damages and/or repossession of the Apartment for non-payment of any installment of rent when and as the same becomes due and payable.

**3.  WRITTEN NOTICE TO VACATE REQUIREMENT AND AUTOMATIC RENEWAL TERM:**

> **Electronically Initialed By**
> **Nathanael Brown**
> **on 3/3/2015**

**Notice Regarding Automatic Renewal Provision**

**By initialing here, You indicate Your written acknowledgement of Your agreement to the automatic renewal provision contained in this Lease.**

3.1  Either party may terminate this Lease at the end of the initial lease term by delivering to the other party **60** days' **WRITTEN NOTICE** prior to the Lease End Date.

3.1.1  A written notice given by either party less than 60 days before, but prior to, the Lease End Date will be effective 60 days from the day the written notice is given.

3.2  Without 60 days' prior written notice, then this Lease will automatically be extended for 60 days from the end of the initial term with all other terms and conditions remaining the same, subject to any change in rent, including the Monthly Base Rent.  The Lease will continue to be automatically extended for additional 60 day increments until terminated by either party providing at least 60 days' **WRITTEN NOTICE** to the other party, such notice being effective 60 days from the day the written notice is given.

3.3  **SPECIFIC PROVISIONS REGARDING WRITTEN NOTICE BY YOU:**

3.3.1  **YOU UNDERSTAND AND AGREE THAT, IN ORDER FOR YOU TO TERMINATE THIS LEASE AT THE END OF THE INITIAL LEASE TERM, YOU MUST PROVIDE TO POST WRITTEN NOTICE AT LEAST 60 DAYS PRIOR TO THE LEASE END DATE.**

3.3.2  **YOU UNDERSTAND AND AGREE THAT POST'S EMPLOYEES ARE NOT AUTHORIZED TO ACCEPT A VERBAL NOTICE OF A LEASE NON-RENEWAL, SURRENDER, TERMINATION, OR EARLY TERMINATION FROM YOU.**

3.3.3  **YOU HAVE NO RIGHT TO RELY ON ANY STATEMENT BY POST'S EMPLOYEES THAT A VERBAL NOTICE IS ACCEPTABLE.**

3.3.4  **YOUR NOTICE MUST BE IN WRITING, DATED, AND SIGNED BY ALL RESIDENTS ON THIS LEASE, AND MUST SPECIFY THE MOVE-OUT DATE.**

3.3.5  **YOU SHOULD CONFIRM RECEIPT OF THE NOTICE BY POST WITH THE AUTHORIZED SIGNATURE OF A POST REPRESENTATIVE USING POST'S PRESCRIBED FORM.**

3.3.6  **YOU SHOULD KEEP A SIGNED RECEIPT OF THE WRITTEN NOTICE FOR YOUR PERSONAL RECORDS IN CASE OF ANY DISPUTE AS TO WHETHER SUCH NOTICE WAS GIVEN TO AND RECEIVED BY POST.**

3.4  **IF YOU DO NOT OBTAIN OR CANNOT PRODUCE A SIGNED RECEIPT OF THE WRITTEN NOTICE FROM POST, OR IF POST DOES NOT HAVE A SIGNED ORIGINAL NOTICE(S) FROM ALL RESIDENTS, THEN A PRESUMPTION SHALL ARISE THAT YOU FAILED TO GIVE A PROPER NOTICE.**

**4.  RESIDENT'S OPTION FOR EARLY LEASE TERMINATION, THIRTY DAY SATISFACTION GUARANTEE, or TRANSFER TO ANOTHER POST APARTMENT OR PROPERTY:**

> Electronically Initialed By
> Nathanael Brown
> on 3/3/2015

4.1  Early Lease Termination:  You may terminate this Lease before the expiration of the initial term, if You are not in default under this Lease at the time of giving written notice or thereafter, and if You strictly comply with all the provisions of this paragraph.

4.1.1  In order to terminate this Lease pursuant to this paragraph before the expiration of the initial term, You must:

4.1.1.1  Give Post thirty (30) days' written notice; PLUS

4.1.1.2  Pay all monies due through date of termination, including, but not limited to, the payment of prorated rent and previously received conditional rent concession credits; PLUS

4.1.1.3  Pay an Early Termination Fee in an amount equal to the sum of (a) two times your Monthly Base Rent, and (b) Your then existing security deposit (excluding any additional deposit, pet deposit, or other deposit).  By way of illustration only, if Your Monthly Base Rent is $1,000 and Your then existing Security Deposit is $100, your Early Termination Fee will equal $2,100.  Reference is made to Your then existing Security Deposit merely for calculating Your Early Termination Fee.  Payment of the Early Termination Fee does not affect Your Security Deposit which shall remain available to be applied to Your obligations under this Lease at the sole discretion of Post.

4.1.2  All terms and conditions of this paragraph must be satisfied **before** Your Lease will be terminated.  Failure to comply with all terms and conditions of this paragraph will result in Your continued liability under the terms and conditions of this Lease. Additionally, Your election for early termination shall not relieve You of Your responsibilities and obligations regarding any damage beyond normal wear and tear to the Apartment.

4.2  Thirty Day Satisfaction Guarantee:  You may terminate this Lease early by giving to Post a written notice to vacate within 30 days of the Lease Start Date if You are not completely satisfied with the Apartment for any reason.  You must vacate the Apartment within 30 days of receipt by Post of Your written notice to vacate.  You will owe Monthly Base Rent and any Additional Sums (on a prorated basis as appropriate) until You vacate the Apartment and Premises.  Post will refund Your deposit, less any damages, unpaid rent, and other charges under this Lease.  Nonrefundable fees, including any Non-refundable Pet Fees, will NOT be refunded.  You may not use this Thirty Day Satisfaction Guarantee on this Apartment if You have used the Thirty Day Satisfaction Guarantee to terminate a Lease on another Post apartment within the previous 24 months, or if this Lease is a renewal of a prior lease for the Apartment.

4.3  Military Termination:  You may terminate this Lease, pursuant to 50 App. USCA § 535 or other applicable state law ("Military Relief Laws"), if You (a) enter military service (active or reserve), or (b) while in military service, receive military orders for a permanent change of station or to deploy with a military unit (or as an individual in support of a military operation) for a period of at least 90 days, or (c) meet any other conditions for an early termination of this Lease by military personnel under applicable law ("Military Cause").

4.3.1  To terminate this Lease under this paragraph, You must deliver to Post a written termination notice and a copy of the service member's military orders or a signed letter, confirming the orders, from Your commanding officer, confirming a Military Cause (collectively, the "Military Termination Notice") either by hand delivery directly to Post by private business carrier, or by placing the written notice in an envelope with sufficient postage and with return receipt requested and addressed as designated in this Lease and depositing the written notice in the United States mail.  Upon our receipt of the Military Termination Notice and supporting documents, the Lease will terminate 30 days after receipt of the notice of termination, provided that all criteria required by law are met,  (the "Military Termination Date") and the Military Termination Date will become the new Lease End Date.

4.3.2  You must perform all of Your obligations under this Lease through the Military Termination Date, including but not limited to, paying all Monthly Base Rent and any Additional Sums accruing or incurred through the Military Termination Date when due and You must vacate the Apartment by the Military Termination Date.  The Military Termination Notice shall be effective as to all Residents and Occupants under this Lease.

4.3.3  Any concession pay back requirement under this Lease shall be waived for any military service member, spouse, or dependent but not for any other Resident to whom the Military Relief Laws do not otherwise extend.

4.4  Transfer to Another Post Apartment or Post Property:  You may terminate this Lease before the expiration of the initial term, if You are not in default under this Lease at the time of giving written notice or thereafter, You strictly comply with all the provisions of this paragraph, and Post,  in its sole discretion, approves the termination.

4.4.1  In order to terminate this Lease pursuant to this paragraph before the expiration of the initial term, You must:

4.4.1.1  Give Post thirty (30) days' written notice; PLUS

4.4.1.2  Pay all monies due through date of termination, including, but not limited to, the payment of prorated rent and previously received conditional rent concession credits; PLUS

4.4.1.3  Pay a Transfer Fee of $500 when You give the required written notice (Note: You must pay a Transfer Fee of $750 if the lease for the Post apartment to which You will be transferring includes another leaseholder who also is transferring from another Post apartment); PLUS

4.4.1.4  Participate with Post in a pre-transfer inspection of the Apartment; PLUS

4.4.1.5  Complete a new application and/or submit to all or part of the application approval process, involving, in part, credit, criminal, employment, and rental history background check or screening; PLUS

4.4.1.6  Pay any required fees (in addition to the Transfer Fee) and deposits associated with leasing the Post apartment to which You will be transferring; PLUS

4.4.1.7  Execute a Transfer Agreement and a lease for the Post apartment to which You will be transferring.

4.4.2  Post, in its sole discretion, may deny any transfer.

4.4.3  If this Lease requires You or any one of You to have an approved Guarantor(s), You agree that Post, in its sole discretion, may elect to deny any transfer if Your Guarantor(s) decline(s) to execute a new Guarantor Agreement associated with such transfer.

4.4.4  All terms and conditions of this paragraph must be satisfied **before** Your Lease will be terminated.  Failure to comply with all terms and conditions of this paragraph will result in Your continued liability under the terms and conditions of this Lease. Additionally, transfer to another apartment shall not relieve You of Your responsibilities and obligations regarding any damage beyond normal wear and tear to the Apartment.

4.5  You understand that, unless and until all necessary and corresponding forms required for any termination under this paragraph are completed and signed by both You and Post, such termination is considered incomplete, regardless of when, or if, You gave notice to Post.

4.6  **Termination for Family Violence or Military Deployment:**   You may have special statutory rights to terminate this Lease early in certain situations involving family violence or a military deployment or transfer.

**5.  NO ASSIGNMENT OR SUBLETTING; RELEASE, SUBSTITUTION, OR ADDITION OF RESIDENT:**

5.1  You may not sublet the Apartment or assign this Lease without prior written consent of Post which consent may be withheld in Post's sole discretion.

5.2  Roommate Release Procedure:

5.2.1  Post may, in its sole discretion, allow for the release of one, but not all Residents from this Lease, if You are not in default under this Lease and You strictly comply with all the provisions of this paragraph.  Before Post will release one Resident, but not all Residents, from this Lease, You must:

5.2.1.1  Complete Post's Roommate Release Form or other application documentation required by Post; PLUS

5.2.1.2  Pay all monies due through date of release; PLUS

5.2.1.3  Pay a Roommate Release Fee of $150 which shall be due as additional rent; PLUS

5.2.1.4  Complete a new application and/or submit to all or part of the application approval process (including payment of an application fee in addition to the Roommate Release Fee), involving, in part, credit, criminal, employment background check or screening, and resident history; PLUS

5.2.1.5  Execute a new lease for the Apartment, if required by Post, in the name of the remaining (and, if allowed by Post, any additional) roommate(s).

5.2.2  Post, in its sole discretion, may deny any release.

5.2.3  If this Lease requires You or any one of You to have an approved Guarantor(s), You agree that Post, in its sole discretion, may elect to deny any release if Your Guarantor(s) decline(s) to execute a new Guarantor Agreement associated with such release.

5.2.4  All terms and conditions of this paragraph must be satisfied before a Resident may be released.  After completion of the roommate release process, the departing Resident will no longer have a right to occupy the Apartment or any other rights under this Lease or be entitled to any portion or a refund of any Security Deposits regardless of which Resident originally paid such Security Deposits.  Failure to comply with all terms and conditions of this paragraph will result in the continued liability of all Residents under the terms and conditions of this Lease.

5.2.5  You understand that, unless and until all necessary and corresponding forms required for release of a Resident under this paragraph are completed and signed by both You and Post, such release is considered incomplete, regardless of when, or if, You gave notice to Post.

5.3  Addition of Resident:  The Apartment shall be occupied only by the person(s) named in this Lease as a Resident or Occupant.  Substitution or addition of any Resident(s) or Occupant(s) will be allowable only with prior written consent of Post, which may be withheld in Post's sole discretion and may require the execution of a new Lease, an increase in the total Security Deposits required, the use of one or more Guarantors, the successful completion of the application approval process (including payment of an application fee), involving, in part, credit, criminal, employment, and resident history background check or screening.

**6.  HOLD OVER:**

6.1  If You fail to return possession of the Apartment to Post on or before the date that Your right of occupancy or possession ends or the date on which your Lease terminates, is non-renewed, or expires, then:

6.1.1  You are deemed to be holding possession over beyond the term of the Lease;

6.1.2  Your legal status is that of a hold over tenant at sufferance;

6.1.3  You shall be obligated to immediately remove all of Your property and persons occupying the Apartment, return all keys to Post, and deliver possession of the Apartment to Post in a clean condition and good order and repair; and

6.1.4  You shall pay Post an amount equal to two times the then existing Monthly Base Rent(without concession), prorated by the day for each day held over and beyond the termination, non-renewal or expiration of this Lease, in addition to any other damages.

6.2  If Your hold over prevents a new resident from occupying the Apartment, You may also be liable to Post for all rent for the new resident's full lease term, subject to Post's obligation, if any, to mitigate damages.

**7.  JOINT AND SEVERAL LIABILITY:**
**Each person who signs this Lease, or who enters into a Continuing Guaranty of Payment ("Guaranty Agreement") with Post on behalf**

of the Resident(s) who signed this Lease, understands and agrees that his/her liability is both joint and several with every other person who signs this Lease or signs a Guaranty Agreement.  This means that Post may seek to recover the full amount due from any Resident or Guarantor without first seeking to collect from the other Resident(s) or Guarantor(s).  Post is not required to seek recovery of money owed by the Resident(s) before seeking recovery from a Guarantor.  Post is not required to seek recovery of money owed by the Guarantor(s) before seeking recovery from the Resident(s).

## 8. SECURITY DEPOSIT:

8.1  You agree to pay to Post any Security Deposit, Additional Security Deposit, and Refundable Pet Deposit due under this Lease (collectively "Security Deposits") before taking possession of the Apartment as security for Your fulfillment of the conditions of this Lease.  Your Security Deposits will be returned to You, less Lawful Deductions, after possession of the Apartment has been returned to Post if:

8.1.1  The Lease term has expired or this Lease has been terminated; AND

8.1.2  You provide and fulfill a written notice to vacate as required under this Lease; AND

8.1.3  All monies due Post have been paid in full; AND

8.1.4  The Apartment is not damaged, is not excessively dirty, and is left in its original condition, normal wear and tear excepted.  Damages beyond normal wear and tear include, but are not limited to:  broken or missing door locks, stained or burned carpeting, badly scratched floors, burns and cuts in countertops, stains on another resident's ceilings from Your overflowed tub, unapproved holes, painting on walls performed by anyone other than Post or its vendor which requires more than one coat of paint to return to move-in condition, bent or broken blinds, odor or stains throughout the Apartment due to an animal, smoke, or other source, and any fixtures missing from the Apartment. Any of Your Security Deposits may be applied by Post to satisfy all or part of Your obligations under this Lease, including, but not limited to, unpaid rent, late fees, utilities, damages, cleaning costs, and other charges specified in Paragraph 8.9 below.  Withholding of your Security Deposits shall not prevent Post from claiming damages in excess of the Security Deposits.  Determination of damages and final costs of remediation are determined solely by Post.

8.2  You acknowledge and agree that You are not permitted to apply any Security Deposits to any past-due rent payment or payment that shall come due in the future.

8.3  You agree and acknowledge that, prior to or at the time of signing this Lease, You have been given a properly signed list of any existing damages to the Apartment, have been given the right to inspect the Apartment and have approved this list except as specified in writing to Post.

8.4  Your Security Deposits may or may not be placed by Post in an account separate from Post's operating account.  You acknowledge that any interest earned on such Security Deposits shall belong to Post.  You further acknowledge that Post has complied with the Texas Security Deposit Law.

8.5  You will provide Post with a forwarding address so Post may forward Your Security Deposits, or any remaining balance thereof, to You.  Post may disburse a refund of Your Security Deposits by one check, jointly payable to all named as Residents or to any one named Resident, and may send a refund of Your Security Deposit, and deduction itemizations, to only one Resident named on this Lease.

8.6  At Post's sole discretion, any named Resident on this Lease, if more than one is named, may be designated as agent for all Residents for purposes of receiving any applicable refund of Your Security Deposits, or any other balance owed or accounted at the time of Lease termination.  You agree to look to said Resident for payment of any portion of the amount refunded.

8.7  If Post sells or transfers the Premises to a new owner, You agree that, once the sale or transfer has occurred, Post will be released from liability related to Your Security Deposits and that You will look solely to the successor owner for satisfaction of claims relating to Your Security Deposits.

8.8  If this Lease constitutes a renewal or revised Lease, then You agree to pay to Post only the amount, if any, by which the Security Deposits shown in this Lease exceed the amount of Security Deposits Post is already holding.

8.9  You will be liable for, including but not limited to, the following charges, if applicable, as Lawful Deductions:  unpaid rent; accelerated rent; unpaid utilities; unreimbursed service charges; Early Termination Fees which you have voluntarily elected pursuant to Paragraph 4 above; cancellation fees; revoked conditional rent concession credits; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the Apartment and is missing; replacing dead or missing smoke detector batteries at any time; replacing missing or burned out light bulbs at any time; utilities for repairs or cleaning; unreturned keys, parking identifiers (e.g. hangtags, decals, etc.), and access control devices; removing or rekeying unauthorized security devices or alarm systems; packing, removing or storing property removed or stored under this Lease; removing illegally parked vehicles; animal-related charges; late-payment and returned-check charges; attorney's fees, court costs and filing fees actually paid; government fees or fines against Post for violation by You, Your Occupants, guests, or invitees of local ordinances relating to detection devices, false alarms, recycling or other matters; trips to the Apartment to allow removal of Your telephone or TV cable services or other rental items (if You so request or have moved out); special trips for trash removal caused by parked vehicles blocking dumpsters; false security alarm charges unless due to Post's negligence; and any other sums due under this Lease.

8.10  You agree that Post also may, but shall not be obligated to, make deductions from Your Security Deposits for any amounts due to Post under this Lease while You are still in possession of the Apartment.  Post shall provide You with written notice of such deduction, itemizing the amounts deducted.  Upon receipt of such notice, You agree to pay to Post, on or before the next rent due date, an amount sufficient to bring Your Security Deposits to the original amount, and You further agree that failure to do so constitutes a material breach of this Lease.

## 9. UTILITIES:

9.1  You must pay charges for all utilities provided to the Apartment, including but not limited to electricity, natural gas, water and sewer, internet, cable TV and telephone, except as may otherwise be set forth in this Lease.  Where applicable, Your utility bills may include a one-time deposit, flat fees, common usage charges and any increases as billed by the utility provider.

9.2  You must have all utility services transferred to Your name immediately upon signing this Lease, except for those utilities which are submetered or billed pursuant to an allocation method.  You must pay all utility bills promptly.  You must provide to Post proof of transferring utility services into Your name prior to move-in.  If You fail to transfer utility service into Your name prior to taking possession of the Apartment, such failure will be a material breach and You will be in default under this Lease.  Upon move-out, You shall transfer, or cooperate in the transfer of, all utility service back into Post's

name.  You hereby agree that Post will not reimburse You for any costs related to utilities left in Your name after You move out.

9.3  You must not allow Your utilities to be disconnected, terminated or interrupted for any reason, including for a failure to pay Your bills.  Breach of this provision shall constitute a material default by You under this Lease.

9.4  If Post incurs any utility charges or late fees associated with Your utility bills or use, such charges or fees will be due from You to Post as additional rent.

9.5  Post may modify the method by which utilities are furnished to the Apartment and/or billed to You during the term of this Lease and any extension or renewal thereof or hold over period, including, but not limited to, direct metering and/or use of a ratio utility billing system, energy allocation equipment, and submetering equipment.  In the event Post chooses to so modify any non-electric utility service to the Apartment and/or billing methods, Post shall give You not less than thirty-five (35) days' prior written notice of such modification.  In the event Post chooses to so modify electric utility service to the Apartment and/or billing methods, Post shall give You not less than ninety (90) days' prior written notice of such modification.

9.6  You agree and consent that Post has the right to designate who Your utility providers will be, to the extent allowed by applicable law.

9.7  Post is not liable for any interruption, outage, or fluctuation of any utility provided to You by others even if Post has designated who the provider of that utility would be.  You release Post from any liability for such interruption, outage or fluctuation.

9.8  You will notify Post immediately of any known or suspected leak of water from any pipe in the Apartment, or any continually running or otherwise malfunctioning fixture in the Apartment.  You will at all times be responsible for Your entire water bill, including any and all increases, even if unexpected, in Your water bill that may result from a leak or abnormally running fixture, even if, and after, such leak or running is reported to Post.

9.9  **UTILITY SUBMETERING:**

You will be billed by Post for submetered utility services.  Water and Wastewater billed to the Apartment will be included in the bill issued by Post.  As permitted by state law and following a 35 day written notice to You, a service fee not to exceed 9% may be added to Your total monthly bill for water costs, wastewater costs, and any other applicable taxes and surcharges that are charged by the retail public utility to Post related to submetering.

9.9.1  WATER AND WASTEWATER UTILITY SUBMETERING

9.9.1.1  You will be billed by Post for submetered utility services.  Water and wastewater billed to the Apartment will be included in the bill issued by Post.

9.9.1.2  For information purposes only, during the previous calendar year identified below, the following is provided:

For calendar year **2013**:

the average monthly bill for all dwelling units was **$24.67**.

the highest monthly bill for that period was **$203.80**.

the lowest monthly bill for that period was **$0.00.**

Water and wastewater billings will vary over time depending on usage characteristics, changes in the rates imposed by the retail public utility that provides service to the Post property, or other factors.  Actual billings to residents should therefore be expected to vary from the average monthly bill for all dwelling units in the previous calendar year and to vary from the highest and lowest month's bills for that period.

9.9.1.3  Your meter will be read on the 10th day of each month.  Post will issue a bill for Your water and wastewater usage on or before the 15th day of each month.  The due dates for payment of water and wastewater billings shall be due no less than sixteen (16) days after the bill is mailed or hand delivered to You, unless the due date falls on a federal holiday or weekend in which case the following work day shall be the due date.  Payment shall be made to the address of the Management office, as specified on the bill.  A one-time fee not to exceed 5% may be applied to delinquent accounts.  If such a fee is applied, Your bill will indicate the amount due if the late fee is incurred.

9.9.1.4  Upon notification to Post, Post will repair leaks in the Apartment, and in common areas if common areas are not submetered, within 48 hours barring unforeseen circumstances or other matters beyond the control of Post.

9.9.1.5  Post and You agree that submeter bill issuance, submeter readings, requests for submeter tests, charges for submeter testing, issuance of estimated bills, billing errors, billing disputes, changes in billing methods, interruption or discontinuance of service, and partial month's bills for move-in or move-out shall be governed by the requirements of Subchapter H of Chapter 291, Title 30, Texas Administrative Code, relating to Utility Submetering and Allocation, as such rules may from time to time be amended pursuant to the Texas Administrative Procedure Act, or as otherwise required or provided by law.  In addition, the terms of this Lease are subject to such requirements, and those requirements control in the event of any conflict between those requirements and the terms of this Lease.

9.9.1.6  You have the right to receive information from Post to verify the utility bill.  Upon Your written request, Post shall make the submetering or allocation records, as required by law, available for Your inspection.  Such inspection shall be at the onsite manager's office during normal business hours, within three (3) days after receiving such written request if such records are maintained at the onsite manager's office, or within fifteen (15) days after receiving such written request if such records are not routinely maintained at the onsite manager's office.  If there is no onsite manager, Post shall make copies of the records available at the Apartment at a time agreed upon by You within thirty (30) days of Post receiving the written request from You.  At Post's option, copies of such records may instead be provided by mail if postmarked by midnight of the last day of the respective applicable periods specified above.  Any disputes relating to the computation of Your bill or the accuracy of any submetering device will be between the You and Post.

9.9.1.7  If the retail public utility's rate structure includes a dwelling unit base charge, Post shall bill each dwelling unit for the base charge applicable to that unit.  Post shall not bill You for any dwelling unit base charges applicable to unoccupied dwelling units.

9.9.1.8  If the retail public utility's rate structure includes a customer service charge, Post shall bill each dwelling unit the amount of the customer service charge divided by the total number of dwelling units, including vacant units, that can receive service through the master meter serving the residents.

9.9.1.9  The charges for water utility service shall include any dwelling unit base charge and customer service charge, if applicable, and the gallonage charge calculated each month as follows:  the retail public utility's total monthly charges for water service (less dwelling unit base charges or customer service charges if applicable), divided by the total monthly water consumption measured by the retail public utility, multiplied by Your monthly consumption.

9.9.1.9.1  The charges for wastewater utility service shall include any dwelling unit base charge and customer service charge, if applicable, and the gallonage charge calculated each month as follows:  the retail public utility's total monthly charges for wastewater service (less dwelling unit base charges or customer service charges, if applicable), divided by the total monthly water consumption measured by the retail public utility, multiplied by Your monthly consumption .

9.9.1.10  You acknowledge that at the time this Lease was discussed, Post provided to Resident a copy of the current version at that time of Subchapter H of Chapter 291, Title 30, Texas Administrative Code, relating to Utility Submetering and Allocation, or a copy of the current version at that time of the Texas Commission on Environmental Quality executive director's summary of those rules, to inform You of Your rights and Post's responsibilities under those rules.

**10.  RISK OF LOSS:**

> Electronically Initialed By
> Nathanael Brown
> on 3/3/2015

10.1  Post does not carry any personal property insurance on Your personal possessions or property.  You agree to maintain insurance protecting the personal possessions or property owned by You and Your family.  The personal property coverage must be in an amount sufficient to cover replacement of all such personal possessions or property in the Apartment or on the Premises.  Such insurance must cover and protect such personal possessions or property in the Apartment or on the Premises from loss or damage arising from or caused by perils, including, but not limited to, (i) theft, (ii) vandalism, (iii) bursting or breaking pipes, (iv) fire, (v) windstorm, (vi) hail, (vii) accidental discharge or overflow of water or steam, (viii) installation, removal, operation, or the presence of appliances, including but not limited to washer or dryers, (ix) backing up of drainage pipes, and (x) overflow of water or sewage on the property of which Your Apartment is a part.  You agree to look only to Your insurance for any loss or damage to Your personal possessions or property.

10.2  Post does not carry any liability insurance for Your actions that may cause harm to You or other persons or loss or damage to real or personal property owned by Post or other persons.  You (or each of You if there is more than one Resident) agree to maintain insurance, in an amount of not less than $50,000, protecting against liability of You, Your family, Your guests (including social guests), invitees, and the Occupants of the Apartment for claims involving harm, including bodily injury, to other persons or loss or damage to real or personal property owned by Post or other persons, arising out of the negligence or other acts of You, Your family, Your guests (including social guests), invitees, and the Occupants of the Apartment or otherwise related to (i) bursting or breaking pipes, (ii) installation, removal, operation, or the presence of appliances, including but not limited to washer or dryers, (iii) fire, (iv) running water, and (v) backing up of drainage pipes.

10.3  The insurance required under this paragraph shall be maintained by You for Your benefit as well as for the benefit of Post.  Your liability and obligations under this Lease or arising from a legal duty shall not be affected by denial of a claim made against Your insurance carrier.

10.4  Your right to possession of the Apartment is contingent upon You first obtaining and maintaining the insurance provided for in this paragraph, and providing Post with evidence of required insurance.  If this Lease is a renewal lease, You must provide evidence of insurance for the new lease term.  Your obligation to obtain such insurance and Your liability under this Lease or otherwise is not waived even if You do not provide such evidence of insurance.

10.5  Post shall not be liable for damage, theft, vandalism, breakage of glass, or other loss of any kind to Your personal property or the personal property of Your Occupants, guests, or invitees, except where such damage is due to Post's gross negligence or intentional misconduct by Post.

10.6  It is understood and agreed that Post shall not be responsible for or liable to You or to those claiming by, through, or under You for any loss or damage to either person or property that may be occasioned by or through the acts or omissions of persons occupying adjacent, connecting or adjoining apartments, or by or through the acts or omissions of third parties, including independent contractors retained by Post.

10.7  You hereby consent that, in the event that You, Your Occupants, guests, or invitees cause harm, loss, or damage, by act or omission, to the property or person of another resident, occupant, guest, or invitee, Post has the right to share Your name, Your contact information, and information concerning Your insurance with any such injured person and/or his/her insurer.

10.8  At any time prior to or after execution of this Lease, Post may, but is not required to, demand from You evidence, in a form acceptable to Post, of such insurance coverage.  Any failure or refusal by You to provide such evidence shall constitute a material breach of this Lease.  Post's demand for or failure to demand, receipt of or failure to receive, or review of or failure to review any evidence of coverage shall in no way be deemed an acknowledgement or endorsement by Post of the adequacy of such coverage.

**11.  ANIMALS:**

11.1  No animals of any kind including, but not limited to, mammals, reptiles, birds, fish, rodents, amphibians, arachnids, or insects are permitted in the Apartment or on the Premises without Post's prior written consent, unless the animal is required pursuant to a verified need because of a disability.  You certify that you have no animals except as specifically referenced in this Lease.

11.1.1  The following dogs are specifically prohibited:  Akita, Rottweiler, Doberman Pinscher, German Shepherd, Pit Bull including American Staffordshire Terrier, Staffordshire Bull Terrier and Bull Terrier, Chow, Presa Canario, Shar pei, any mixed breed that includes any prohibited breed, dogs with specific defensive or attack training, former Military or Police trained dogs, and any dog with a history of biting, injuring any person or animal, or damaging property.

11.1.2  Exceptions may be made upon proper verification for animals necessary because of a disability. By way of example and not limitation, any Resident who is visually or hearing impaired may choose, keep, and maintain a dog (certified as being specially trained to aid the Resident in his or her disability) within the Apartment and the Premises, in accordance with applicable laws.

11.2  Any animal, including the animal of a guest, that visits the Apartment for any part of one day shall be considered Your animal if such visits number more than fourteen (14) during the term of this Lease.  Without prior written permission from Management and the payment of the then required Non-refundable Pet Fee and Refundable Pet Deposit as applicable, the presence of that animal on the Premises shall constitute a material breach of this Lease.

11.3  In the event You have an animal or a visiting animal, You agree:

11.3.1  to relieve the animal only in natural, wooded areas, or other area specifically designated by Post for that purpose;

11.3.2  to clean up and dispose of waste, and not to use landscaped areas for this purpose;

11.3.3  to keep the animal on a leash under the control of and accompanied by a responsible person at all times;

11.3.4  to not tie the animal outside the Apartment;

11.3.5  to not leave the animal unattended on patios or balconies;

11.3.6  to keep the animal out of the management/leasing office, clubhouse/community room, laundry room, fitness or spa space, swimming pool, tennis courts, and any recreational area or amenity on the Premises, unless prior permission as may be necessary to accommodate a disability is obtained;

11.3.7  to pay all costs involved in the restoration of the Premises to its original condition and to accept financial responsibility for any damage to the exterior or interior of the Premises caused by the animal;

11.3.8  to pay for removal from the Premises any unaccompanied animal or animal not on a leash brought to the Premises by You, Your family, or Your guests;

11.3.9  to control and prevent the animal from engaging in behaviors or creating excessive noise, e.g. barking, jumping, running, which disrupts or interferes with another resident's quiet enjoyment of the Premises or disrupts Management from carrying out its day-to-day business at the Premises;

11.3.10  to not abandon or neglect the animal in any manner;

11.3.11  to ensure that the animal is properly licensed and that the animal displays proper tags to show that it has received all required vaccinations;

11.3.12  to have the animal wear a collar with an identification tag showing Your name, phone number, and address;

11.3.13  that any Non-refundable Pet Fee or Refundable Pet Deposit does not limit Your liability for property damages, cleaning, deodorizing, defleaing, replacements, or personal injuries caused by the animal;

11.3.14  that in an emergency involving an accident or apparent injury to the animal, or in the case of apparent abandonment or neglect, Post has the right, but not a duty, to take the animal to a veterinarian for treatment, at Your expense; and

11.3.15  that any violation of the listed provisions may be deemed to be a material breach of this Lease.

11.4  If Post has proof, or, in exercising reasonable judgment concludes, that any animal is abandoned, neglected, abused, not being adequately fed or provided clean water, or is otherwise not being properly cared for, Post may, but is under no obligation to, remove the animal from the Apartment and have it kenneled at Your expense or turned over to local authorities or humane societies.

## 12.  PACKAGE RELEASE:

Post is not required to accept packages for You.  It is within Post's sole discretion whether to accept packages for you.  By signing this Lease, You authorize Post, in its sole discretion, to accept on your behalf any packages which are delivered by mail, or otherwise addressed to you.  You understand that Post will not accept any package shipped COD or having postage due.  If Post does accept a package for You, You agree that Post will have no responsibility to provide a signature to the carrier, examine the condition, determine the contents, inform You that a package has been delivered, or take any precautions in the handling and storage of the package.  Packages not claimed within two (2) weeks may be (but are not required to be) returned to the delivery agent.  Post will not accept packages on Your behalf if the accumulation of packages has an unfavorable impact on the office work area.  If Post, in its sole discretion, accepts packages, it does so solely as a favor to You, without consideration, and You release Post from any claim You might otherwise have for loss or damage suffered as a result of Post's accepting, refusing to accept, holding, storing, handling or disposing of any such package, even if such loss or damage is due to the negligence or other act of omission of Post.  Additionally, You agree to indemnify Post for any such claims made by a third party.  You, and not Post, absolutely assume all risks of damage, theft, destruction, or loss for any reason of any package received or held by Post.  The term "package" includes, but is not limited to, any parcels, goods, or other items of value.  You agree that Post may curtail or eliminate such service in its sole discretion, and You will not be relieved from the terms of this Lease or entitled to any reduction in rent if such service is curtailed or eliminated.

## 13.  RIGHT OF ACCESS:

13.1  You agree and consent that Post shall have a right of access to the Apartment and any Included Rentable Space(s) for inspection and maintenance without notice during reasonable hours.  In case of emergency, Post may enter at any time to protect life and prevent damage to the Apartment, Premises, or personal property of Post or others.

13.2  You authorize Post to show the Apartment and any Included Rentable Space(s) to prospective renters at any time after You have given notice of termination.

13.3  In the event of a power outage that lasts more than 8 hours, Post has the right, but not an obligation, to dispose of the contents of Your refrigerator.  You shall not have a right of recovery against Post for interruption of power that results in disposal, loss, or spoilage of refrigerated food.

## 14.  USE:

14.1  Apartment shall be used by You **for residential purposes only** and shall be occupied only by the person(s) named in this Lease as a Resident or Occupant.  An Occupant is defined as any person listed in this Lease as an Occupant.  A guest is defined as any person who enters the Apartment,

or upon the Premises, by Your expressed or implied invitation or by an Occupant's expressed or implied invitation. **Only the Residents and Occupants named in this Lease may continuously occupy the Apartment. Persons who are not a Resident or Occupant named in this Lease who visit the Apartment will be considered guests ("guest" includes social guests) and are not permitted to continuously occupy the Apartment. Guests may not occupy the Apartment in excess of 14 days, or portion thereof, during any 12 month period.**

14.2  You, an Occupant, or any guest shall not use the Apartment or Premises (or permit any portion thereof to be used) for any disorderly or unlawful purpose or in any manner so as to interfere with another resident's quiet enjoyment of his, her, or their apartment(s) or with the operation or management of the Premises.

14.2.1  You, an Occupant, or any guest of either shall not violate any federal, state, county or municipal laws or ordinances while on the Premises or in the Apartment. Any violation of this provision by You, an Occupant, or a guest will be a material breach of this Lease and grounds for termination of this Lease or right of occupancy by demanding possession or filing a dispossessory action or an eviction.

14.2.2  You, an Occupant, or any guest shall not engage in criminal activity, including drug-related criminal activity, on or near the Premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use of a controlled substance (as defined in Section 102 of the Controlled Substance Act (21 USC 802)).

14.2.3  You, an Occupant, or any guest shall not permit the Apartment or Premises to be used for, or to facilitate, criminal activity (specifically including, but not limited to, drug-related activity), regardless of whether the individual engaging in such activity is a Resident, an Occupant, or a guest.

14.2.4  You, an Occupant, or any guest shall not engage in acts of violence or threats of violence, including, but not limited to, the unlawful discharge of firearms, on or near the Premises. The unlawful or accidental discharge of a firearm on or near the Premises shall constitute a material breach of this Lease.

14.3  You, an Occupant, or any guest shall not distribute petitions, flyers, or solicitation notices to other residents in any manner other than through lawful use of the US mail.

14.4  You, an Occupant, or any guest shall not commit business libel or slander or make untruthful, unfair, or misleading statements to others about Post or its employees.

14.5  You, an Occupant, or any guest shall not commit waste to the Apartment and/or Premises and shall not commit any act or fail to take any action that would endanger the life, health, safety, welfare, or property of any person in the Apartment or Premises.

14.6  You agree that no "garage sales" shall be permitted in or around the Premises, parking areas or common areas and nothing shall be sold out of or around the Premises, parking areas or common areas without express written permission by Post.

14.7  Any violation of this paragraph by You, an Occupant, or any guest may be considered to be a material breach of this Lease and grounds for termination of this Lease or right of occupancy by demanding possession or filing a dispossessory action or an eviction.

14.8  In the event of an eviction against You, You shall not return to any portion of the Premises.

14.9  Any Resident or Occupant who allows an unauthorized person or trespasser access to the Apartment and/or Premises shall be in violation of this Lease.

14.10  Any Resident or Occupant who is under court order to not enter the Apartment and/or Premises is no longer entitled to occupancy, keys, or other access devices while the order is in effect.

14.11  You agree that any recreation, service, and amenities areas, if they are available at the Premises, are merely ancillary to this Lease and may be used by You only with the permission of Post. You also agree that Post may curtail or eliminate such services or facilities in its sole discretion, and You will not be relieved from the terms of this Lease or entitled to any reduction in rent if such services or facilities are curtailed or eliminated.

14.12  Any violation of the Rules and Regulations by You, an Occupant, or guest will be considered a violation of this Lease by You.

14.13  The Rules are part of this Lease and enforceable as terms and conditions of this Lease.

14.14  Post may exclude any guest that Post determines, in its sole discretion, to be violating the law, violating the Lease, violating the Rules, or disturbing any other residents, visitors, or our representatives. Post may exclude any person who refuses to properly identify himself or herself and/or identify which Resident or Occupant gave permission for him/her to be on the Premises.

14.15  You may have a home office in order to operate a business in the Apartment, if You advise Post of the nature of the business, obtain Post's consent, and comply with the following conditions: (1) Your home business must comply with all applicable laws; (2) You cannot employ anyone at the Apartment besides You or anyone named as an Occupant on this Lease; (3) You do not require receipt or delivery of merchandise, goods, or equipment other than by parcel or letter carrier mail service; (4) You must not be a nuisance; (5) You must not display stock in trade in the Apartment or on the Premises; (6) the home business must not require any special permit or license; (7) You must not cause additional vehicles of suppliers, vendors, delivery services, customers or clients to park in the Premises; (8) Your customers and/or clients of the home business may not come to the Apartment or on the Premises to receive goods or services; and (9) You may not display signage relating to or identifying the home business. Post will not sign or otherwise agree to any business license or similar application. A home business permitted by this Lease includes, by way of example and not by limitation, an internet-based company, legal service provider, or a consulting service provider, to the extent they are also permitted by applicable law and conform to each of the requirements listed herein. A business not permitted by this Lease includes, by way of example and not by limitation, massage therapy, retail sales or a home day care service.

## 15.  DEFAULT BY YOU

15.1  If You fail to pay any rent or other charges as and when due hereunder, or if You abandon the Apartment or fail to perform any of Your obligations hereunder, or if You violate any provision of this Lease or any rules and regulations, or if You materially affect the health and safety of others in the Apartment or on the Premises, or if You violate any criminal laws on the Premises, regardless of whether arrest or conviction occurs, or if any facts contained in Your rental application (Application for Residency) are untrue or misleading, then, upon the happening of any said events, You shall be in default hereunder and Post may at its option (a) terminate this Lease, or (b) terminate Your rights of possession, or (c) pursue any other rights,

remedies, claims, or legal actions, whether in law or in equity, without terminating this Lease, by written notice to You.  To the extent permitted by law, You agree that such notice period will be 24 hours unless Post, in its sole discretion, chooses a longer period.  To the extent permitted by law, notice to cure default is not required but, if given, shall not waive Post's right to terminate or insist on strict compliance.

15.2  You shall surrender possession of the Apartment and any storage, parking, or garage area to Post upon the effective date of such termination notice and You shall be liable to Post for, and shall indemnify Post against, all rent loss and other expenses (for re-letting, cleaning or otherwise making the Apartment suitable for re-letting) suffered or incurred by Post as a result of Your default and the termination of the Lease.

15.3  Post's application of Your Security Deposits (if any) shall not relieve You of liability for any other rent, charges, damages or other costs until the term of this Lease expires, or the Apartment is re-rented, whichever comes first.  Accepting money does not waive Post's rights to damages, past or future rent or other sums, or, if allowed by law, to continue with the eviction proceedings.  Exercising one remedy will not constitute an election or waiver of other remedies.

15.4  **Once You have vacated the Apartment, You will be sent a statement of deposit that may indicate a balance due to Post.**  Any such balance outstanding thirty (30) days after mailing of the statement shall bear interest at the rate of **16 percent per annum** or, if such rate is usurious, the highest non-usurious interest rate permitted by applicable law.  Interest on the debt evidenced by this Lease shall not exceed the maximum amount of non-usurious interest that may be contracted for, taken, reserved, charged, or received under law and any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded.

15.5  **Notwithstanding the filing of a dispossessory proceeding or an eviction and the issuance and execution of a writ of possession on account of any default by You, You shall remain liable to Post for all rent and other charges accrued through the date on which possession is obtained by Post and shall continue to be liable for any rent accruing thereafter until the earlier of (a) the expiration of the term of this Lease; or (b) the re-rental of the Apartment.**

## 16.  REPAIRS:

16.1  You accept the Apartment and any garage, parking, or storage area in "AS IS" condition as suited for the use intended.  You understand and agree that the Apartment and any garage, parking, or storage area equipment and fixtures will be under the control of You, and agree to keep the Apartment and any garage, parking, or storage area, together with the fixtures and equipment therein, in a clean, sightly and sanitary condition.  You agree to provide notice to Post of the existence of any water intrusion, mold, damage, imminently dangerous, hazardous, unsanitary, or unhealthy condition in the Apartment or on the Premises immediately upon discovery of such condition by You.

16.2  Post will make necessary repairs to the Apartment and any garage, parking, or storage area with reasonable promptness after receipt of notice from You.  Any delay by Post in making necessary repairs shall not be deemed unreasonable if the delay is due to circumstances falling outside of Post's control, including the availability of necessary parts, personnel, or contractors, or the effects of adverse weather.  If you feel Post has failed to make repairs with reasonable promptness, Post shall be deemed to have no knowledge of such failure until Post receives written notice from You detailing the failure.

16.3  If any damage, beyond normal wear and tear, is caused by You or Your Occupants, guests or invitees, You agree to pay Post the cost of repair as additional rent with the next rent payment or, if this Lease has been terminated, immediately upon presentation of such costs to You.

16.4  You may not remodel or structurally change the Apartment and any garage, parking, or storage area, nor remove any fixture or equipment therefrom.

16.5   You may not custom paint any or part of the Apartment and any garage, parking, or storage area unless You provide to Post advance written notice of the name and brand of paint color and obtain Post's written permission to proceed.  You will be responsible for any cost associated with returning the Apartment and any garage, parking, or storage area to the original color or other color of Post's choosing.

16.6  Insect or Bug Infestation

16.6.1   You agree to immediately notify Post of any insect or bug infestation in the Apartment or affecting You or Your personal property, specifically including, but not limited to, "bed bugs" (including Cimex Lectularius and all other name variants).

16.6.2  To the extent permitted by law, You agree to reimburse any costs incurred by Post to treat the Apartment for bed bugs or any other pest, including any costs Post incurs associated with treating the Premises, neighboring apartments, and/or personal property arising out of pests which You introduced to the Apartment or for which You are otherwise responsible.  All costs of extermination of bed bugs and other pests for which You are responsible shall be considered damages exceeding normal wear and tear and shall be due as additional rent.  A determination of the cause or source of the infestation or presence may occur after treatment.

16.6.3  You agree to comply with any reasonable plan to treat, exterminate, or otherwise eradicate insects, bugs, pests, rodents, or other vermin from the Apartment or Premises.  Such a plan may require (a) treatment by You, with heat, cold, chemicals, or otherwise (as specified by Post), of some or all of Your personal property, (b) immediate temporary or permanent removal by You of some or all personal property from the Apartment or Premises, (c) treatment of personal property which is allowed to remain in the Apartment or Premises.  Your failure to comply with any such plan shall constitute a material breach of this Lease.

16.6.4  Although You may be required to treat some or all of Your personal property, You agree that You will not try to treat the Apartment or Premises for any infestation on Your own and that Post has the full right to select a qualified exterminator.

16.7  You are hereby notified and understand that, during the term of this Lease, including any extension or renewal hereof, rehabilitation, repair, and maintenance projects may be conducted on the Premises, including in the Apartment, common areas, amenities, parking areas, and on the exterior and interior of buildings.  Post is not obligated to undertake or continue any particular project.  The possibility of any project has not impacted Your decision to enter into this Lease.  If a project occurs, such project will continue for as long as necessary until terminated or completed in Post's sole discretion.  Such projects may, at times, create unfavorable conditions, including but not limited to:  obstruction of common hallways and breezeways, obstruction of parking areas, obstruction of balconies, decks, and windows, temporary or permanent closing and/or changes to amenity areas, limited use of elevators, dust, debris, odors, and noise.  You acknowledge that You may experience unfavorable conditions related to such projects and You agree that such conditions, individually or collectively, will in no way constitute a breach of this Lease, including the covenant of quiet enjoyment, or serve as a basis for any claim by You against Post for constructive eviction or a reduction in rent, except to the extent the Apartment is rendered untenantable due

to Post's alterations. You further acknowledge that, even in the absence of construction, there is still the potential for dust, noise, odor, and other unfavorable conditions and that these circumstances will in no way constitute a breach of this Lease, including the covenant of quiet enjoyment, or serve as basis for any claim by You against Post for constructive eviction or a reduction in rent.

16.8  If (a) You have delivered the required written notice(s) to repair or remedy a condition of the type that materially affects the physical health or safety of an ordinary tenant, (b) You were not delinquent in paying rent at the time such notice(s) were delivered, and (c) Post has failed to diligently repair or remedy such condition within at least 7 days, You may have certain non-judicial remedies including termination of the lease or repairing the condition and deducting such repair expenses from rent. The requirements and conditions that must be satisfied in order for a tenant to exercise these non-judicial remedies are set forth and described in Sections 92.056 and 92.0561 of the Texas Property Code. If You are eligible to terminate the lease, You may also be entitled to either a pro rata refund of rent, a deduction of Your security deposit from rent, or a refund of Your security deposit in accordance with applicable law. If You are eligible to repair the condition and then deduct the expenses from rent, there are specific requirements in Section 92.0561 of the Texas Property Code regarding additional notices that must be delivered, restrictions on who can make the repairs, and limitations on the amount of repair expenses which can be deducted from rent. In addition to the above-described non-judicial remedies, You may also have certain judicial remedies that are described in Section 92.0563 of the Texas Property Code.

## 17.  SECURITY ACKNOWLEDGMENT:

> **Electronically Initialed By**
> **Nathanael Brown**
> **on 3/3/2015**

17.1  You have responsibility for Your safety and security. Post does not market, represent, or guarantee that the Apartment or the Premises are safe from crime or that Post provides security services and devices that ensure the safety of You, Your Occupants, guests, or invitees or for Your or their property. You agree that Post is not responsible for the crimes of others, the actions of third parties, or any damages or injuries caused by other residents, guests, intruders, or trespassers. You are aware of the risk of crime against You and, to the greatest extent allowed by law, choose to assume all such risk.

17.2  While Post may choose to provide notices of crimes or offenses believed to have been committed on or near the Premises, Post is not obligated by any specific provision of law to warn You of crime, to provide specific kinds of security, or to take specific steps to reduce the risk of crime on the Premises. Post is not required to research and notify You of what crimes may have occurred at the Premises and will not necessarily have actual knowledge of every crime committed or reported to law enforcement agencies.

17.3  You agree that Post may send You notices of crimes or other incidents believed to have occurred on or near the Premises via email or electronic communication, despite any election that You may have made, or may in the future make, to opt out of other email or electronic communication from Post. In the alternative or in addition to email, You agree that Post, in its sole discretion, may provide notices of crimes (as an alternative or in addition to email notices) by posting such notice in certain common areas of the Premises, on Your door, and/or on the Resident Portal.

17.4  Post has no obligation to obtain criminal background checks on any person living, working, or visiting on the Premises. If Post obtains a criminal background check on a person on the Premises, it does not imply that Post will obtain any other background check on any other people on the Premises and does not obligate Post to notify You that Post obtained a criminal background check or to notify You of the contents or information contained in any such report. Post makes no representation or warranty, and cannot make any representation or warranty, that any resident, occupant, worker, guest, or invitee on the Premises does not have a criminal background.

17.5  You agree that You will inspect the Apartment continuously after occupancy to make sure that any Post-provided smoke detector(s), fire extinguisher, and door and window locks are adequate and in good working order. You specifically agree to test all smoke detector(s) in the Apartment no less frequently than monthly. You promise to give immediate written notice to Post if You determine that any of these items, or any other item affecting safety or security of the Apartment or Premises, need repair or replacement. Provision of any items or services that could relate to community safety does not in any way obligate Post to provide for the safety or security of You, Your Occupants, Your guests, Your invitees, or Your personal property.

17.6  While courtesy officers may reside within the Premises or temporary guard patrols may take place, these individuals, while acting in that capacity, do not have any law enforcement powers or direct responsibility to provide for Your personal safety or security. Post has the right at any time to modify, reduce, or cease the use of courtesy officers and other security measures without notice to You. You agree to look solely to public police authorities for security and protection. You agree to take reasonable steps to protect your own safety and property from damage or injury. In the event of loss or injury due to criminal activity in the Apartment or on the Premises, You agree to look solely to Your insurance against such losses and agree to hold Post harmless from any claims for damage due to criminal acts.

17.7  If the Apartment has an individual security system in it, Post did not necessarily install, design, or manufacture the security system, and Post does not activate, operate, maintain, or monitor the security system. You agree that Post shall have no liability whatsoever with respect to the installation, design, manufacture, use, operation, maintenance, monitoring, effectiveness, or functionality of the security system. It is Your decision whether to activate the system, and any such activation must be arranged through an independent security company under an agreement with it. In the event You activate an individual security system, You shall without delay provide Post with the name of the security company that has installed, will install, or monitors the system, any codes or passwords, as well as any other information that Post may request regarding the system, its operation, or maintenance. You agree that it is Your responsibility to learn from the security company how to properly operate the security system, and You understand that the security company is solely responsible for all aspects of the security system. Whatever amounts the security company charges You for the use of the security system are payable directly to that company and You, not Post, are responsible for the payment of such charges. Post is not responsible for the acts or omissions of the security company and does not guarantee or warrant the services of the security company in any respect. You agree to hold Post harmless from any and all claims for losses of any type arising from any aspect of the security system, and You agree to look to Your own insurance for any loss due to personal injury, death, or property damage.

## 18.  SURRENDER; ABANDONMENT:

18.1  You will have surrendered the Apartment if all keys to the Apartment have been delivered to Post or Post, exercising its reasonable judgment, determines that (1) the Apartment is not being occupied and (2) the Lease End Date has passed or the Lease has been terminated by You or by Post according to its terms.

18.2  You will have abandoned the Apartment if You have not paid Post all monies due and Post, exercising its reasonable judgment, determines that the Apartment is not being occupied.

18.3  You agree that, for purposes of both surrender and abandonment, Post may use any or all of the following indicia in determining whether the Apartment is not being occupied:  removal of substantially all personal property from the Apartment, failure to pay rent or other charges, discontinuance of any utility service, failure to respond to any notices, phone calls, correspondence, or other communications from Post, reduction or lack of use of controlled access devices associated with the Apartment or Premises.

18.4  Surrender or abandonment of the Apartment without properly ending this Lease and without giving proper notices to end this Lease is a serious default and terminates Your right of possession to the Apartment, as well as your use of any parking, garage, or storage rented under this Lease. Following surrender or abandonment, Post may exercise any and all legal rights and remedies without limiting any other rights or remedies.  Any damages caused by surrender or abandonment of the Apartment will be due as additional rent under this Lease.

18.5  Following surrender or abandonment, Post shall have the right, without notice, to (1) secure the Apartment and/or garage and/or storage with new locks, (2) store and/or dispose of any personal property or possessions left on the Premises by You or Your occupants, guests or invitees, and/or (3) re-rent the Apartment and/or parking and/or garage and/or storage unit for new residency.  Post may perform any of these options without filing a court action seeking a dispossessory warrant, writ of possession, or similar court order.

18.6  You agree that Post shall have no liability for any actions taken to secure the Apartment and/or garage and/or storage unit, obtain possession of the Apartment and/or garage and/or storage unit, or store or dispose of any personal property or possessions found in the Apartment, parking, garage, and/or storage after Post deems the Apartment, parking, garage, and/or storage to have been surrendered or abandoned.

18.7  You acknowledge and agree that Post's acts or failure to act with regard to securing the Apartment, parking, garage, and/or storage unit, obtaining possession of the Apartment, parking, garage, and/or storage, or storing or disposing of any personal property or possessions found in the Apartment, parking, garage, and/or storage under circumstances which are, or may indicate, surrender or abandonment, are a contractual matter to which You have given Your consent, and any alleged breach shall not give rise to a claim in tort nor to a claim for punitive damages.

18.8  Animals removed after surrender, abandonment, or eviction may be kenneled at Your expense or turned over to local authorities or humane societies.

18.9  **Texas Contractual Lien and Property Left in the Apartment:**

18.9.1  Removal After Post Exercises Lien for Rent.  If Your rent is delinquent, Post's representative may peacefully enter the Apartment and remove and/or store all property subject to lien.  If property has been seized and stored under a contractual lien for rent as authorized by Texas law, You may redeem the property by paying all delinquent rent due at the time of seizure.

18.9.2  Removal After Surrender, Abandonment, or Eviction.  Post or law officers may remove and/or store all property remaining in the Apartment or in common areas (including any vehicle You or any occupant or guest owns or uses) if You are judicially evicted or if You surrender or abandon the Apartment.

18.9.3  Storage.  Post will store property removed under a contractual lien as required by law.  You must pay reasonable charges for our packing, removing, storing, and selling any property.  Post has a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums You owe.

18.9.4  Disposition or Sale.  Except for animals and property removed after the death of a sole resident, We may throw away or give to a charitable organization all items of personal property that are:  (1) left in the Apartment after surrender or abandonment; or (2) left outside more than one hour after a writ of possession is executed, following a judicial eviction.  If notice of sale is given before You seek redemption, You may redeem only by paying the delinquent rent and reasonable charges for packing, removing, and storing.

**19.  MANAGEMENT'S PERMISSION OR CONSENT:**

If any provision of this Lease requires the permission or consent of Post as a condition to any act by You, such permission or consent must be in writing and may be granted or withheld in the sole discretion of Post, may contain such conditions as Post deems appropriate, shall be effective only so long as You comply with such conditions, and may be modified, revoked, or withdrawn by Post at any time at Post's sole discretion, upon notice to You.

**20.  DISCLOSURE:**

20.1  Post Apartment Homes, L.P., whose address is 4401 Northside Parkway, Suite 800, Atlanta, Georgia, 30327, is either the Premises owner or is authorized to act on behalf of the Premises owner with respect to this Lease, to manage the Apartment and the Premises, and is the Premises owner's duly designated agent for service of process with respect to any matter arising under this Lease.

20.2  You agree that Post (periodically, at any time, and from time to time during the term of this Lease or any extension or renewal hereof) may obtain a background report on You, an Occupant, or any guest, including but not limited to, information as to Your credit and criminal history, in connection with this Lease and that the Lease may be non-renewed based on information contained in the reports.  During and after the term of this Lease, You consent to Post furnishing data about You and Your relationship with Post to one or more credit reporting agencies.

20.3  **Notice Regarding Construction Activity**:  You hereby acknowledge that Post is engaged in the ongoing construction and completion of  the Premises and that this construction activity may, at times, create unfavorable conditions, including but not limited to:  loud and/or sudden noises, voices, vibrations, dust, smoke, noxious fumes, additional traffic, and vehicular annoyance.  You acknowledge the possible experience of unfavorable conditions relating to the construction activity during tenancy, and hereby agree that such conditions, individually or collectively, will in no way constitute a breach of this Lease, including the covenant of quiet enjoyment, or serve as a basis for any claim by You against Post for constructive eviction.

**Liability for Damage to Awnings, Etc.:**  In addition to residential apartments, some Post properties contain commercial and/or retail space.  Residents whose apartments are above commercial and/or retail establishments will be financially responsible for any damages below to persons or property such as awnings, benches, or any other similar items which are caused by Resident, Occupants, guests, invitees, or licensees.  Post shall not be liable for any damages to commercial and/or retail tenants, guests, customers, invitees or licensees caused by You, Your Occupants, guests, invitees, or licensees.

**21.  FIRE:**

If the Apartment is made uninhabitable by fire not the fault or negligence of You, Your Occupants, guests, or invitees, this Lease shall be terminated immediately, Your Security Deposits will be returned to You (less any amount of damage attributable to You, as described above), and no early termination fee shall be due from You.  If the Apartment and/or Premises are made uninhabitable by fire caused by You, Your Occupants, guests, or invitees, You must vacate the Apartment, but You may still remain liable for damages and future rent under this Lease.

**22.  INDEMNIFICATION:**

You release Post from liability for and agree to indemnify Post against all losses incurred by Post as a result of:

22.1  failure by You, Your Occupants, guests or invitees to fulfill any condition of this Lease;

22.2  any damage or injury, happening in or about the Apartment or Premises, to You, Your Occupants, guests, or invitees or such person's property unconnected with Post's or Post's parent, subsidiary, and affiliate companies' negligence, fault, or violation of any applicable laws;

22.3  Your failure to comply with any requirements imposed by any governmental authority; and/or

22.4  any judgment, lien or other encumbrance filed against the Apartment or Premises as a result of Your actions.

22.5  Nothing herein or elsewhere in this Lease shall be deemed to exempt Post from liability or limit the liability of Post from damages to person or property caused by or resulting from the negligence of Post (or Post's agents, servants or employees) in the operation, care or maintenance of the apartment or any facility upon or portion of the Premises of which the Apartment is a part.

**23.  FAILURE OF MANAGEMENT TO ACT:**

Failure of Post to insist upon strict compliance with the terms of this Lease shall not constitute a waiver of any violation or default by You or limit Post's rights or remedies in any way.

**24.  REMEDIES CUMULATIVE; LIMITATION OF PERSONAL LIABILITY; WAIVER OF JURY TRIAL:**

24.1  All remedies under this Lease or by law or in equity shall be cumulative.  In a legal proceeding as to any breach of this Lease, to the extent permitted by applicable law, the prevailing party shall be entitled to reasonable attorney's fees (including paralegal fees) in the amount of not less than 15% of the principal due and owing and all expenses of litigation, including, but not limited to court costs and administrative filing fees.  The prevailing party shall be entitled to post-judgment interest on all sums due hereunder.

24.2  No employee, agent or management company will be personally liable for any of Post's contractual, statutory, or other obligations merely by virtue of acting on Post's behalf.

24.3  **TO THE EXTENT PERMISSIBLE UNDER APPLICABLE LAW, YOU AND POST AGREE THAT ANY ACTION OR PROCEEDING ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, REGARDLESS OF WHETHER SUCH CLAIM IS BASED ON CONTRACT, TORT, OR OTHER LEGAL THEORY, WILL BE HEARD BY A COURT SITTING WITHOUT A JURY.  YOU AND POST HEREBY WAIVE ALL RIGHTS TO A TRIAL BY JURY.**

**25.  NOTICES:**

25.1  **Except as otherwise required by applicable law or set forth in this Lease, any notice required by this Lease shall be in writing and shall be deemed to be given:**

25.1.1  **By Post to You if (a) delivered personally, (b) sent to any email address on file with Post as provided by You, (c) posted to the Apartment door, (d) mailed by U.S. First Class Mail to the Apartment, or (e) if You have vacated, mailed by U.S. First Class Mail to the last known address for You or any one of You.**

25.1.2  **By You to Post if delivered to and received by a Post employee on duty in the property management office for the Premises listed in this Lease.**

25.2  Email addresses are used for the purpose of informing residents about events and promotions concerning the Premises, notifications relating to safety and maintenance, as well as notifications concerning Your contractual obligations under this Lease.  Generally, You may opt out of such emails related to events and promotions, but Post reserves the right to send You and You agree to receive information via email regarding safety, maintenance and other issues, including those related to contractual obligations.  You understand that opting out of emails related to events and promotions may result in you not receiving emails regarding safety, maintenance, and other issues.

25.3  Any notice that Post gives to any Resident in this Lease, or any adult Occupant, or sent to any email address on file as provided by You, constitutes notice to all persons named as a Resident in this Lease.

25.4  In any legal action, any person named as a Resident in this Lease is considered the agent of all persons named as a Resident in this Lease for service of process.

**26.  POSSESSION:**

If Post causes a delay in delivery of possession of the Apartment until after the Lease Start Date, rent shall be abated on a daily basis until possession is granted.  If such delay extends beyond seven (7) days after the Lease Start Date, then You may terminate this Lease and receive full refund of any deposit and prepaid rent.  Post shall not be liable for damages for delay in possession.  If Post is repairing or cleaning the Apartment and/or Premises on the Lease Start Date in a manner that does not prevent You from occupying the Apartment, You will occupy the Apartment, rent will not be abated, and You will not have the right to terminate this Lease, except as otherwise set forth herein.  The Apartment will be considered to be in clean, safe and good working condition at the time You take possession of the Apartment unless You notify Post otherwise in writing within 72 hours after You take possession of the Apartment.

**27.  LENDER'S RIGHTS; GOVERNMENT ACTION:**

27.1  Post may use or is using the Premises as security for a debt or mortgage.  Your rights under this Lease shall at all times be subject to and subordinate to any deed to secure debt, mortgage, or any other security instrument which is now or shall hereafter be placed on the Premises.  If requested, You shall execute promptly any certificate that Post may request specifically to implement the subordination of this Lease.

27.2  If a city, state, or other law enforcement or government agency condemns the Apartment, the portion of the Premises where the Apartment is located, or any material portion of the Premises, or if any of these areas are destroyed, Post may terminate this Lease upon 10 days written notice (or such other period as may be required by applicable law) to You or Post may elect to make any necessary repairs to the Apartment or portion of the Premises where the Apartment is located.

## 28.  GENDER AND USE OF "FOR EXAMPLE":

In all references herein to "Resident" or "You" or "Your," the use of the singular number is intended to include the appropriate number as the text of this Lease may require, and all gender references to male or female are intended to be gender neutral.  Whenever the words "for example" are used and are followed by a list, the list is by no means limited to the listed words, is not all-inclusive, and is used in place of the term "including without limitation."

## 29.  NO ESTATE IN LAND:

This Lease creates only the relationship of landlord and tenant between Post and You.  You have a usufruct only and not an estate for years.  No estate shall pass out of Post.

## 30.  ENTIRE AGREEMENT AND SEVERABILITY:

30.1  This Lease, any addenda, and any incorporated documents, including without limitation, Rules and Regulations, constitute the entire agreement between the parties and no prior, concurrent, or subsequent oral statements shall be binding.

30.2  No representative of Post is authorized to make any representations, warranties, or agreements other than as expressly set forth herein.

30.3  This Lease may only be modified in an amendment signed by all parties hereto.

30.4  If any provision of this Lease is invalid, such provision shall be considered deleted from this Lease, and shall not invalidate the remaining provisions.

30.5  You further agree that the terms and conditions of this Lease shall also apply to and govern the lease of any parking, garage, and/or storage except as to the term, use, rental amount, and notice provisions.

30.6  **You understand that execution of this Lease involves the waiver and release of valuable legal rights.**

30.7  A copy of an original signature transmitted by facsimile (FAX) or a scanned copy of an original signature transmitted by electronic mail (email), e.g. via a ".pdf" file, will be deemed to be an original.  This Lease may be executed in two or more counterparts, each of which, whether existing electronically or in paper form, shall be deemed to be an original, and such counterparts shall together constitute the same agreement.

30.8  This Lease shall be voidable by Post if You, or one of You, cannot or will not produce to Post the original government-issued identification(s) used by You during the application process.

## 31.  FAIR HOUSING:

Post is an equal opportunity housing provider and complies with all federal, state and local fair housing laws and regulations.  Post does not discriminate in any way based upon race, religion, color, sex, national origin, familial status, disability, age, source of income, marital status, sexual orientation, or any other classification protected by federal, state, or local law applicable in the jurisdiction where the Premises is located.

## 32.  SUCCESSORS AND ASSIGNS:

Subject to Paragraph 27.1, all provisions contained in this Lease shall be binding upon, inure to the benefit of, and be enforceable by the successors and assigns of Post. Any sale or conveyance of the Premises or any part thereof will not affect this Lease or any of Your obligations under this Lease, but under a sale or conveyance Post will be released from all obligations under this Lease and You will look solely to the new owner of the Premises for the performance of Post's duties under this Lease from and after the date of the sale or conveyance.

## 33.  MOLD:

You are hereby notified that the Apartment, including any garage or storage area, may be subject to the growth of mold or mildew if not properly cleaned and maintained, if leaks or other water damage occur, or if excess moisture is allowed to accumulate.  If moldy materials are allowed to grow, exposure to mold organisms and associated products can occur through inhalation or direct physical contact.  While most molds and their associated products that are routinely encountered are not hazardous to healthy individuals, some people who are exposed to significant levels of them in the air may experience symptoms similar to those associated with asthma, hay fever, or other allergies.  Molds and their associated products are commonly found in all outdoor and indoor air of apartments.  In addition, the presence of mold or excessive moisture may damage the Apartment or Your property.  To reduce the chance of such potential conditions or exposures, You must take steps to prevent mold growth, must arrange for proper actions if mold or excessive moisture is discovered, and must comply with the other requirements set out in this Lease.  You acknowledge that the most reliable methods for identifying the presence of mold or mildew or conditions favorable to their growth are:  (i)  routine visual inspections for mold growth, signs of leaks, water damage, and wetness; and (ii)  odor inspections for sources of mold odors.  Whenever leaks, water damage, wetness, mold, or mildew are identified, they must be addressed immediately.  You agree to clean and maintain the Apartment in a manner that prevents mold or mildew and prevents conditions favorable to their growth.  Possibly the single most important way of preventing or controlling mold is preventing excessive moisture build up within the Apartment or any water intrusion into the Apartment.  You agree to uphold this responsibility in part by complying with the following list of responsibilities:

33.1  You shall take all reasonable measures to control the moisture level of the interior of the Apartment by immediately reporting to Post any water intrusion, such as building leaks, plumbing leaks, drips or "sweating" pipes, other wetness, water damage, or elevated moisture levels.

33.2  You shall limit the sources of indoor humidity by increasing fresh air ventilation when outdoor air is not humid, and warming cold surfaces where

condensation occurs.

33.3   You shall use bathroom fans while showering or bathing and shall immediately report to Post any non-working fan or window.

33.4   You shall use all reasonable care to close all windows and other openings in the Apartment to prevent rain or other forms of precipitation from penetrating into the interior of the Apartment

33.5   You shall use exhaust fans whenever cooking, dishwashing, or engaging in water-based or other wet cleaning techniques.

33.6   You shall clean and dry any personal property within 24 to 48 hours of water intrusion and shall monitor those items to verify that no mold or mildew growth occurs.

33.7   You shall notify Post immediately upon discovery of any damp or wet building materials, such as wet wallboard or ceiling tiles.

33.8   You shall conduct a visual and odor inspection of the Apartment for the presence of mildew, mold growth, leaks, or water damage at least once per month.  The inspection shall include, but shall not be limited to, an examination of:  (a) window frames and carpets; (b) ceiling tiles, and any currently or formerly damp or wet material made of cellulose (such as wallpaper, books, papers, and newspapers); (c) all indoor plants; and (d) Your personal property.

33.9   You shall perform regular and routine cleaning of caulking around the sinks, bathtubs, showers, and windows by using common household cleaning products or a bleach and water solution if moisture is condensing or sitting on the caulking and causing mold growth.

33.10   You shall immediately report to Post if mold or mildew growth is noted on surfaces inside the Apartment, and the growth affects more than a very small area that You will clean and dry promptly (a very small area is generally not more than one square foot).  Most very small areas of mold can be cleaned by using water and detergent or bleach and drying the surface completely afterwards.  If in doubt about the size of the area or Your ability to clean it properly or without damaging the Apartment, report the mold immediately so that Post can address it.  If the mold growth is in an area that is not ordinarily subjected or exposed to moisture or water, you must report the mold to Post so we can investigate the source of moisture.

33.11   You also must report to Post immediately whenever mold, mildew, leaks, water damage, or other evidence of moisture problems are observed anywhere in the Apartment.

33.12   You agree to not bring any personal property into the Apartment that You know or suspect contains mold, especially "soft possessions" which have fabric or porous surfaces such as sofas, mattresses, and pillows.  If You discover evidence of mold on such items and need help in arranging for disposal, notify Post.

33.13   You hereby agree to defend, indemnify and hold harmless Post against and from any and all actions, causes of action, claims, demands, liabilities, losses, damages and expenses of whatsoever kind, including, but not limited to, reasonable attorney's fees at both the trial and appellate levels, that Post or any or all of its affiliates may at any time sustain or incur by reason of any and all claims asserted against them to the extent that such claims arise out of or are based upon any potentially health affecting substances brought, or allowed to be brought, into the Apartment or Premises, or caused to grow in or infest the Apartment or Premises as a result of the negligence of Resident, or any guest or other person living in, occupying, using or residing in the Apartment.

33.14   Breach of this mold provision constitutes a material breach of this Lease.

**34.  RULES AND REGULATIONS:**

Post has established certain rules and regulations to enhance Your resident experience ("Rules and Regulations").  Some of these Rules and Regulations appear in this Lease.  Others may be posted in recreational, storage, service, and amenity areas.  Failure to adhere to Rules and Regulations, by You, Your Occupants, or Your guests or invitees will constitute a material breach of this Lease.  You agree and understand that additional Rules and Regulations may be established by Post at any time during the initial or a renewal term.  Such additional Rules and Regulations shall be effective five (5) days after being delivered to You pursuant to the notice provision in Paragraph 25.1 or otherwise conspicuously posted on the Premises.  You acknowledge that the availability of amenities is subject to change in Post's sole discretion and that any such change shall not constitute a breach of this Lease.

34.1  **Parking**:

34.1.1   You understand that Post may contract with third parties to manage or operate the parking areas, including to provide towing and security services.

34.1.2   You agree to abide by all parking regulations established by Post.

34.1.3   The parking area(s) on the Premises may have one or more vehicle entry barrier such as a door, gate, or arm.  Access through such entry barriers should be limited to ONE VEHICLE AT A TIME.  Do not attempt to "tailgate" through any entry barrier.  Assume every entry barrier will lower and/or close after each vehicle.  Always use your controlled access device prior to proceeding through the entry barrier.  Tailgating could cause damage to the entry barrier and/or Your vehicle.  Such action may also cause personal injury or death.  You agree and consent that Post is not liable for any damages or injuries incurred in this manner.

34.1.4   All vehicles must be approved and registered with Post.  You shall, without delay, inform management if You have a change in vehicle.

34.1.5   No campers, recreational vehicles, boats, trailers, mobile homes, buses, commercial vehicles or mechanized equipment may be allowed on the Premises without Post's prior written approval.  If Post has designated spaces for You to park or areas for boats, trailers, campers or other vehicles, You agree to park only in those spaces so designated.

34.1.6   Improperly parked, non-operable, abandoned, or unauthorized vehicles or equipment are not permitted on the Premises and may be removed by Post at the expense of You or any other person owning same, for storage or public or private sale, at Post's option with no right of recourse against Post therefore.  The definition of improperly parked, non-operable, abandoned, or unauthorized vehicles or equipment shall be liberally construed in favor of Post.  In addition, but not limited to their generally accepted definitions, "improperly parked", "non-operable", "abandoned", and "unauthorized" shall also mean vehicles or equipment which:

34.1.6.1  Are noxious, offensive, unsightly, unpleasant or unkempt such as could reasonably affect the appearance or rental marketability of the Premises or such as could reasonably cause embarrassment, discomfort, annoyance, or nuisance to Post or other residents;

34.1.6.2  Are causing damage to the Premises or the parking lot, including but not limited to, oil or gas leaks, seepage or spills, and motorcycle kickstands which sink into the pavement;

34.1.6.3  Are not previously approved and registered with Post as required;

34.1.6.4  Are not displaying any required hangtag, decal, or other identifier provided by Post;

34.1.6.5  Are not properly parked between parallel lines or other lines marking spaces for parking;

34.1.6.6  Are blocking access to any prohibited areas, designated "no parking" areas, including but not limited to, fire lanes, fire hydrants, ingress and egress travel lanes, entrances, exits, trash dumpsters or compactors, carwash bays, or maintenance or service areas;

34.1.6.7  Are on blocks or jack stands;

34.1.6.8  Appear to be in a state of disrepair;

34.1.6.9  Appear to be incapable of self-propelled movement;

34.1.6.10  Do not have a proper license tag, proper handicap hang-tag, decal, or other designation, current license decal validation sticker, current state emissions inspection sticker or minimum applicable motor vehicle insurance;

34.1.6.11  Are not owned by You; or

34.1.6.12  Are left unattended on the Premises for a period of not less than thirty (30) days without anyone having claimed ownership of it.

34.1.7  Vehicles may not be repaired or washed on the Premises, except in specifically designated areas when they are provided.

34.2  **Entrances, Hallways, Breezeways, Walks and Lawns**:  Entrances, hallways, breezeways, walks, lawns and other public areas shall not be used for storage, gathering, or smoking, or obstructed or used for any purpose other than ingress and egress.

34.3  **Balcony or Patio**:  Balcony or patio shall be kept neat and clean at all times.  No items shall be stored, hung or draped on railings or other portions of balcony or patio.

34.4  **Antennas/Satellite Dishes**:  Radio or television aerials or satellite dishes, no larger than 1 meter in diameter, are permissible within the Apartment or contiguous space leased to You, e.g. a private balcony or patio.  Such permission does not extend to outside windows, doors and walls, nor to antennas/satellite dishes that extend beyond a balcony railing or a patio line on a ground floor, nor can You damage the Apartment  or Premises in the installation or removal.  You must keep Your aerials and satellite dishes in good working order and appearance.  Post makes no representation that the properly installed satellite dishes servicing the Apartment will be able to receive the desired signals.

34.5  **Signs**:  You shall not display any signs, exterior lights or markings at the Premises.  No awnings or other projections shall be attached to the outside of the building of which the Apartment is a part.

34.6  **Window Screens and Treatments**:  You agree not to remove any screens from the Apartment windows.  All window treatments installed by You must present a uniform appearance with the exterior of the Premises.

34.7  **Water Beds/Hot Tubs**:  You shall not have or keep any water beds or hot tubs in the Apartment without prior written permission of Post.

34.8  **Combustible Materials, Heaters, and Grills**:

34.8.1  You may not keep or store in the Apartment or on the Premises goods or materials of any kind or description which are combustible or would increase fire risk, nor may such items be taken to or placed in storage, balcony, patio, or garage areas.

34.8.2  You may not use gas, kerosene or electric heaters or any other heater other than Your Apartment's built-in heating system.  Post shall not be responsible for any loss or damage due to the storage or keeping of such materials.

34.8.3  You may not use, kindle, or maintain any charcoal or liquid-filled petroleum gas or liquid fueled burners, heaters, grills, or cooking devices in the Apartment or on the Premises or otherwise in violation of law.  Such devices may be used only if provided by Post in designated areas.  This Lease specifically prohibits the use of or igniting any charcoal cooker, brazier, hibachi or grill or any gasoline or other flammable liquid or liquefied petroleum gas-fired stove, grill or similar device in the Apartment or on the Premises except as may be provided by Post.  Additionally, the storage of gasoline powered equipment, or cooking devices using flammable or combustible liquids or liquefied petroleum gas (LPG) as a fuel source, is prohibited in the Apartment or on the Premises except as may be provided by Post.

34.9  **Mechanical Closets**:  You will not use any mechanical closet, including but not limited to water heater or HVAC closets, for storage of any type.

34.10  **Resident Liable for Actions of Your Occupants, Guests or Invitees**:  You are responsible and liable for the conduct of Your Occupants, guests or invitees. Acts or failure to act of Your Occupants, guests or invitees in violation of this Lease, any addenda, or Management's rules and regulations may be deemed by Post to be a breach by You.  You acknowledge and agree to communicate and explain all addenda, rules and regulations, and the terms of this Lease to Your Occupants, guests and invitees.

34.11  **Conduct**:

34.11.1  You agree to communicate and conduct yourself at all times in a lawful, courteous, and reasonable manner when interacting with Post; Post's employees, agents, independent contractors, and vendors; other residents, occupants, guests or invitees; or any other person on the Premises.  Any acts of unlawful, discourteous, or unreasonable communication or conduct by You or Your Occupants, guests or invitees, shall be a material breach of this Lease and will entitle Post to exercise all of its rights and remedies for default.

34.11.2  You agree not to engage in any abusive behavior, either verbal or physical, or any form of intimidation or aggression directed at Post; Post's employees, agents, independent contractors, and vendors; other residents, occupants, guests or invitees; or any other person on the Premises.  Any acts of abusive or offensive behavior whether verbal or physical by You or Your Occupants, guests or invitees, shall be a material breach of this Lease and will entitle Post to exercise all of its rights and remedies for default.

34.11.3  If requested by Post, You agree to conduct all further business with Post in writing.

34.11.4  You agree not to damage the Apartment or any other portion of the Premises, including but not limited to, the physical facilities, buildings, trees or landscape.  You shall be liable for all acts or failure to act of Your occupants, guests or invitees which result in damages to the Apartment or the Premises.  You shall remain liable to Post for any damages which exceed normal wear and tear and agree to pay Post promptly upon notice of such damages, notwithstanding whether the repairs have actually been made.  Further, Your acts or failure to act which results in damages to the Apartment or Premises shall constitute grounds for termination of this Lease.  Any amounts due from You because of damage exceeding normal wear and tear shall constitute additional rent.

34.12  **Keys and Controlled Access**:

34.12.1  Post may deliver keys to the Apartment to another person with Your prior written permission (a key release) specifically identifying the individual or company You intend to receive a key.  It is Your responsibility to return the checked out keys to Post the same day or to cover the cost of changing the locks to the Apartment.  You acknowledge that Post does not provide lock out service before or after leasing office hours.  You agree to pay $25.00 as a fee for re-keying locks if You request that Post re-key Your lock(s).

34.12.2  Each Resident, and each Occupant if Resident requests, will receive one controlled access device of Post's choice.  You will pay Post for replacement of any controlled access device that is lost, misplaced, stolen, or not returned to Post at termination of this Lease.

34.12.3  Post may, but is not required to, allow You to get one or, in Post's discretion, more than one, additional controlled access device for a non-refundable convenience fee to be set by Post.  You will be responsible for replacement of any such additional controlled access device that is lost, misplaced, stolen, or not returned to Post at termination of this Lease.

34.13  **Visual Smoke Detectors**:  Post hereby notifies deaf or hearing-impaired residents that Post will provide, upon request, a visual smoke detector.  You should notify Post if a visual smoke detector is needed.

34.14  **Waste**:  To the extent any trash cans, dumpsters, trash chutes, or other waste disposal facilities are located on the Premises, You understand and agree that they are to be used exclusively for the disposal of Your normal household waste generated on the Premises. They are not to be used for disposal of hazardous, dangerous, toxic, or specially regulated items or wastes (such as tires, car batteries, radioactive materials, etc.), over-sized items (such as mattresses, sofas, etc.), waste of any type generated elsewhere than on the Premises, or waste of any type or any other items brought onto the Premises for the purpose of disposal. You agree to abide by any rules and regulations posted at such facilities regarding their use, including additional use restrictions.

34.15  **Common Areas, Pools, and Other Community Rules:**

34.15.1  Use of all recreational facilities and amenity areas, including pools and exercise equipment, is **at your own risk**.  Post and its employees are not responsible for any personal or property damage, death, injury or loss suffered or sustained by residents, occupants, and/or guests from use of recreational facilities or amenity areas.  Call 911 in case of injury and report any injury to the leasing office as soon as possible.

34.15.2  Please read and abide by any specific rules posted in each recreational area or amenity area.

34.15.3  Pool.  Wear only swimwear in the pool.  Infants and toddlers must wear a protective swim diaper or swim pants to prevent fecal contamination of the pool.  Immediately report any contamination to Post.  Glass containers are prohibited in the pool area.  Dispose of all trash and waste in trash receptacles.  No pets are permitted in the pool area, with the exception of aid animals for persons with disabilities.  Do not hang or play on pool ropes, rings, hooks, or fountains.  Be courteous of other swimmers near the pool; profanity, horseplay, running, diving, bicycle riding, skating, rollerblading, loud music or harassment of others is not permitted.  Resident identification may be requested by Post at any time to assure that only residents and their guests are using the pool.  As a courtesy to all residents, no more than two guests per apartment are allowed at the pool at any one time.  Residents must accompany their guests at all times.  Subject to applicable law, persons under the age of 14 must be accompanied and supervised by a parent, guardian or another person over the age of 18 years who has been given written authority by the parent or guardian to supervise the child and who has assumed the responsibility for such supervision.  Post may require the use of identification bracelets or other device by residents and their guests while in the pool area, may limit the number of such bracelets or devices available to You, and may charge a convenience fee for those used by guests or for replacements (if Post, in its discretion, decides to issue replacements).  Failure to use such bracelet or device shall constitute a material breach of this Lease.

34.15.4  Exercise Room.  The Property may include an exercise room and exercise equipment for Your personal use.  Guests must be accompanied by a resident at all times.  Persons under the age of 14 must have adult supervision.  Only persons using the equipment are allowed in the workout area.

34.15.5  Other Recreational Facilities.  Post may provide tennis courts, basketball courts, sauna and steam rooms in Your Post community for your personal use.  Please exercise care and common sense and be courteous to other residents when using the facilities.

34.15.6  Laundry Facilities.  If the Property includes laundry facilities for Your personal use, such facilities are operated by an independent service and Post is not responsible for damaged, lost or stolen items.  Please call the leasing office if You find that any of the machines are not working properly so that Post can arrange to have them repaired as soon as possible.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed in person or by a person duly authorized the day and year written above.

BY SIGNING BELOW, RESIDENT ACKNOWLEDGES THAT HE OR SHE HAS BEEN GIVEN A SUFFICIENT OPPORTUNITY TO FULLY REVIEW THIS LEASE, HAS READ THE TERMS AND CONDITIONS OF THIS LEASE, AND UNDERSTANDS THE ABOVE LISTED LEASE TERMS AND CONDITIONS.  BY SIGNING BELOW, RESIDENT FURTHER AGREES TO COMPLY WITH ALL TERMS AND CONDITIONS OF THIS LEASE AS SET FORTH ABOVE.

**Electronically Signed By**
**Rachel ElShamy**
**on 3/3/2015**

_____

Authorized Representative of Post Apartment Homes, L.P.
as agent for Austin SL, L.P., a Georgia limited partnership

After hours phone number:  512-445-9797
(always call 911 for police, fire or medical emergencies)

**Electronically Signed By**
**Nathanael Brown**
**on 3/3/2015**

_____

Nathanael Brown

**Water allocation and submetering is regulated by the Texas Public Utility Commission (PUC). In accordance with PUC rules, a copy of the applicable rules are provided to you below:**

SUBCHAPTER H: WATER UTILITY SUBMETERING AND ALLOCATION

**§24.121. General Rules and Definitions.**

(a)   Purpose and scope. The provisions of this subchapter are intended to establish a comprehensive regulatory system to assure that the practices involving submetered and allocated billing of dwelling units and multiple use facilities for water and sewer utility service are just and reasonable and include appropriate safeguards for tenants.

(b)   Application. The provisions of this subchapter apply to apartment houses, condominiums, multiple use facilities, and manufactured home rental communities billing for water and wastewater utility service on a submetered or allocated basis.

(c)   Definitions. The following words and terms, when used in this subchapter, have the following meanings, unless the context clearly indicates otherwise.

(1)   Allocated utility service - Water or wastewater utility service that is master metered to an owner by a retail public utility and allocated to tenants by the owner.

(2)   Apartment house - A building or buildings containing five or more dwelling units that are occupied primarily for nontransient use, including a residential condominium whether rented or owner occupied, and if a dwelling unit is rented, having rental paid at intervals of one month or longer.

(3)   Customer service charge - A customer service charge is a rate that is not dependent on the amount of water used through the master meter.

(4)   Dwelling unit - One or more rooms in an apartment house or condominium, suitable for occupancy as a residence, and containing kitchen and bathroom facilities; a unit in a multiple use facility; or a manufactured home in a manufactured home rental community.

(5)   Dwelling unit base charge - A flat rate or fee charged by a retail public utility for each dwelling unit recorded by the retail public utility.

(6)   Master meter - A meter used to measure, for billing purposes, all water usage of an apartment house, condominium, multiple use facility, or manufactured home rental community, including common areas, common facilities, and dwelling units.

(7)   Manufactured home rental community - A property on which spaces are rented for the occupancy of manufactured homes for nontransient residential use and for which rental is paid at intervals of one month or longer.

(8)   Multiple use facility - A commercial or industrial park, office complex, or marina with five or more units that are occupied primarily for nontransient use and are rented at intervals of one month or longer.

(9)   Occupant - A tenant or other person authorized under a written agreement to occupy a dwelling.

(10)   Owner - The legal titleholder of an apartment house, a manufactured home rental community, or a multiple use facility; a condominium association; or any individual, firm, or corporation that purports to be the landlord of tenants in an apartment house, manufactured home rental community, or multiple use facility.

(11)   Point-of-use submeter - A device located in a building system to measure the amount of water used at a specific point of use, fixture, or appliance, including a sink, toilet, bathtub, or clothes washer.

(12)   Submetered utility service - Water utility service that is master metered for the owner by the retail public utility and individually metered by the owner at each dwelling unit; wastewater utility service based on submetered water utility service; water utility service measured by point-of-use submeters when all of the water used in a dwelling unit is measured and totaled; or wastewater utility service based on total water use as measured by point-of-use submeters.

(13)   Tenant - A person who owns or is entitled to occupy a dwelling unit or multiple1 use facility unit to the exclusion of others and, if rent is paid, who is obligated to pay for the occupancy under a written or oral rental agreement.

(14)   Utility service - For purposes of this subchapter, utility service includes only drinking water and wastewater.

**§24.122. Owner Registration and Records.**

(a)   Registration. An owner who intends to bill tenants for submetered or allocated utility service or who changes the method used to bill tenants for utility service shall register with the commission in a form prescribed by the commission.

(b)   Water quantity measurement. Except as provided by subsections (c) and (d) of this section, a manager of a condominium or the owner of an apartment house, manufactured home rental community, or multiple use facility, on which construction began after January 1, 2003, shall provide for the measurement of the quantity of water, if any, consumed by the occupants of each unit through the installation of:

(1)   submeters, owned by the property owner or manager, for each dwelling unit or rental unit; or

(2)   individual meters, owned by the retail public utility, for each dwelling unit or rental unit.

(c)   Plumbing system requirement. An owner of an apartment house on which construction began after January 1, 2003, and that provides government assisted or subsidized rental housing to low or very low income residents shall install a plumbing system in the apartment house that is compatible with the installation of submeters for the measurement of the quantity of water, if any, consumed by the occupants of each unit.

(d)   Installation of individual meters. On the request by the property owner or manager, a retail public utility shall install individual meters owned by the utility in an apartment house, manufactured home rental community, multiple use facility, or condominium on which construction began after January 1, 2003, unless the retail public utility determines that installation of meters is not feasible. If the retail public utility determines that installation of meters is not feasible, the property owner or manager shall install a plumbing system that is compatible with the installation of submeters or individual meters. A retail public utility may charge reasonable costs to install individual meters.

(e)   Records. The owner shall make the following records available for inspection by the tenant or the commission or commission staff at the on-site manager's office during normal business hours in accordance with subsection (g) of this section. The owner may require that the request by the tenant be in writing and include:

(1)   a current and complete copy of TWC, Chapter 13, Subchapter M;

(2)   a current and complete copy of this subchapter;

(3)   a current copy of the retail public utility's rate structure applicable to the owner's bill;

(4)   information or tips on how tenants can reduce water usage;

(5)   the bills from the retail public utility to the owner;

(6)   for allocated billing:

(A)   the formula, occupancy factors, if any, and percentages used to calculate tenant bills;

(B)   the total number of occupants or equivalent occupants if an equivalency factor is used under §24.124(e)(2) of this title (relating to Charges and Calculations); and

(C)   the square footage of the tenant's dwelling unit or rental space and the total square footage of the apartment house, manufactured home rental community, or multiple use facility used for billing if dwelling unit size or rental space is used;

(7)   for submetered billing:

(A)   the calculation of the average cost per gallon, liter, or cubic foot;

(B)   if the unit of measure of the submeters or point-of-use submeters differs from the unit of measure of the master meter, a chart for converting the tenant's submeter measurement to that used by the retail public utility;

(C)   all submeter readings; and

(D)   all submeter test results;

(8)   the total amount billed to all tenants each month;

(9)   total revenues collected from the tenants each month to pay for water and wastewater service: and

(10)   any other information necessary for a tenant to calculate and verify a water and wastewater bill.

(f)   Records retention. Each of the records required under subsection (e) of this section shall be maintained for the current year and the previous calendar year, except that all submeter test results shall be maintained until the submeter is permanently removed from service.

(g)   Availability of records

(1)   If the records required under subsection (e) of this section are maintained at the on-site manager's office, the owner shall make the records available for inspection at the on-site manager's office within three days after receiving a written request.

(2)   If the records required under subsection (e) of this section are not routinely maintained at the on-site manager's office, the owner shall provide copies of the records to the on-site manager within 15 days of receiving a written request from a tenant or the commission or commission staff .

(3)   If there is no on-site manager, the owner shall make copies of the records available at the tenant's dwelling unit at a time agreed upon by the tenant within 30 days of the owner receiving a written request from the tenant.

(4)   Copies of the records may be provided by mail if postmarked by midnight of the last day specified in paragraph (1), (2), or (3) of this subsection.

### §24.123. Rental Agreement.

(a)   Rental agreement content. The rental agreement between the owner and tenant shall clearly state in writing:

(1)   the tenant will be billed by the owner for submetered or allocated utility services, whichever is applicable:

(2)   which utility services will be included in the bill issued by the owner;

(3)   any disputes relating to the computation of the tenant's bill or the accuracy of any submetering device will be between the tenant and the owner:

(4)   the average monthly bill for all dwelling units in the previous calendar year and the highest and lowest month's bills for that period;

(5)   if not submetered, a clear description of the formula used to allocate utility services:

(6)   information regarding billing such as meter reading dates, billing dates, and due dates:

(7)   the period of time by which owner will repair leaks in the tenant's unit and in common areas, if common areas are not submetered:

(8)   the tenant has the right to receive information from the owner to verify the utility bill: and

(9)   for manufactured home rental communities and apartment houses, the service charge percentage permitted under §24,1 24(d)(3) (related to Charges and Calculations) of this title that will be billed to tenants.

(b)   Requirement to provide rules. At the time a rental agreement is discussed, the owner shall provide a copy of this subchapter or a copy of the rules to the tenant to inform the tenant of his rights and the owner's responsibilities under this subchapter.

(c)   Tenant agreement to billing method changes. An owner shall not change the method by which a tenant is billed unless the tenant has agreed to the change by signing a lease or other written agreement. The owner shall provide notice of the proposed change at least 35 days prior to implementing the new method.

(d)   Change from submetered to allocated billing. An owner shall not change from submetered billing to allocated billing, except after receiving written approval from the commission after a demonstration of good cause and if the rental agreement requirements under subsections (a), (b), and (c) of this section have been met. Good cause may include:

(1)   equipment failures: or

(2)   meter reading or billing problems that could not feasibly be corrected.

(e)   Waiver of tenant rights prohibited. A rental agreement provision that purports to waive a tenant's rights or an owner's responsibilities under this subchapter is void.

### §24.124. Charges and Calculations.

(a)   Prohibited charges. Charges billed to tenants for submetered or allocated utility service may only include bills for water or wastewater from the retail public utility and must not include any fees billed to the owner by the retail public utility for any deposit, disconnect, reconnect, late payment, or other similar fees.

(b)   Dwelling unit base charge. If the retail public utility's rate structure includes a dwelling unit base charge, the owner shall bill each dwelling unit for the base charge applicable to that unit. The owner may not bill tenants for any dwelling unit base charges applicable to unoccupied dwelling units.

(c)   Customer service charge. If the retail public utility's rate structure includes a customer service charge, the owner shall bill each dwelling unit the amount of the customer service charge divided by the total number of dwelling units, including vacant units, that can receive service through the master meter serving the tenants.

(d)   Calculations for submetered utility service. The tenant's submetered charges must include the dwelling unit base charge and customer service charge, if applicable, and the gallonage charge and must be calculated each month as follows:

(1)   water utility service: the retail public utility's total monthly charges for water service (less dwelling unit base charges or customer service charges, if applicable), divided by the total monthly water consumption measured by the retail public utility to obtain an average water cost per gallon, liter, or cubic foot, multiplied by the tenant's monthly consumption or the volumetric rate charged by the retail public utility to the owner multiplied by the tenant's monthly water consumption;

(2)   wastewater utility service: the retail public utility's total monthly charges for wastewater service (less dwelling unit base charges or customer service charges, if applicable), divided by the total monthly water consumption measured by the retail public utility, multiplied by the tenant's monthly consumption or the volumetric wastewater rate charged by the retail public utility to the owner multiplied by the tenant's monthly water consumption;

(3)   service charge for manufactured home rental community or the owner or manager of apartment house: a manufactured home rental community or apartment house may charge a service charge in an amount not to exceed 9% of the tenant's charges for submetered water and wastewater service, except when:

(A)   the resident resides in a unit of an apartment house that has received an allocation of low income housing tax credits under Texas Government Code, Chapter 2306, Subchapter DD: or

(B)   the apartment resident receives tenant-based voucher assistance under United States Housing Act of 1937 Section 8, (42 United States Code,§ 1437f ): and

(4)   final bill on move-out for submetered service: if a tenant moves out during a billing period, the owner may calculate a final bill for the tenant before the owner receives the bill for that period from the retail public utility. If the owner is billing using the average water or wastewater cost per gallon, liter, or cubic foot as described in paragraph (1) of this subsection, the owner may calculate the tenant's bill by calculating the tenant's average volumetric rate for the last three months and multiplying that average volumetric rate by the tenant's consumption for the billing period.

(e)   Calculations for allocated utility service.

(1)   Before an owner may allocate the retail public utility's master meter bill for water and sewer service to the tenants, the owner shall first deduct:

(A)   dwelling unit base charges or customer service charge, if applicable: and

(B)   common area usage such as installed landscape irrigation systems, pools and laundry rooms, if any, as follows:

(i)   if all common areas are separately metered or submetered, deduct the actual common area usage:

(ii)   if common areas that are served through the master meter that provides water to the dwelling units are not separately metered or submetered and there is an installed landscape irrigation system, deduct at least 25% of the retail public utility's master meter bill;

        (iii)  if all water used for an installed landscape irrigation system is metered or submetered and there are other common areas such as pools or laundry rooms that are not metered or submetered, deduct at least 5% of the retail public utility's master meter bill; or

        (iv)  if common areas that are served through the master meter that provides water to the dwelling units are not separately metered or submetered and there is no installed landscape irrigation system, deduct at least 5% of the retail public utility's master meter bill.

(2)  To calculate a tenant's bill:

    (A)  for an apartment house, the owner shall multiply the amount established in paragraph (1) of this subsection by:

        (i)  the number of occupants in the tenant's dwelling unit divided by the total number of occupants in all dwelling units at the beginning of the month for which bills are being rendered; or

        (ii)  the number of occupants in the tenant's dwelling unit using a ratio occupancy formula divided by the total number of occupants in all dwelling units at the beginning of the retail public utility's billing period using the same ratio occupancy formula to determine the total. The ratio occupancy formula will reflect what the owner believes more accurately represents the water use in units that are occupied by multiple tenants. The ratio occupancy formula that is used must assign a fractional portion per tenant of no less than that on the following scale:

           (I)  dwelling unit with one occupant = 1;

           (II)  dwelling unit with two occupants = 1.6;

           (III)  dwelling unit with three occupants = 2.2; or

           (IV)  dwelling unit with more than three occupants = 2.2 + 0.4 per each additional occupant over three; or

        (iii)  the average number of occupants per bedroom, which shall be determined by the following occupancy formula. The formula must calculate the average number of occupants in all dwelling units based on the number of bedrooms in the dwelling unit according to the scale below, notwithstanding the actual number of occupants in each of the dwelling unit's bedrooms or all dwelling units:

           (I)  dwelling unit with an efficiency = 1;

           (II)  dwelling unit with one bedroom = 1.6;

           (III)  dwelling unit with two bedrooms = 2.8;

           (IV)  dwelling unit with three bedrooms = 4 + 1.2 for each additional bedroom; or

        (iv)  a factor using a combination of square footage and occupancy in which no more than 50% is based on square footage. The square footage portion must be based on the total square footage living area of the dwelling unit as a percentage of the total square footage living area of all dwelling units of the apartment house; or

        (v)  the individually submetered hot or cold water usage of the tenant's dwelling unit divided by all submetered hot or cold water usage in all dwelling units;

    (B)  a condominium manager shall multiply the amount established in paragraph (1) of this subsection by any of the factors under subparagraph (A) of this paragraph or may follow the methods outlined in the\ condominium contract;

    (C)  for a manufactured home rental community, the owner shall multiply the amount established in paragraph (1) of this subsection by:

        (i)  any of the factors developed under subparagraph (A) of this paragraph; or

        (ii)  the area of the individual rental space divided by the total area of all rental spaces; and

    (D)  for a multiple use facility, the owner shall multiply the amount established in paragraph (1) of this subsection by:

        (i)  any of the factors developed under subparagraph (A) of this paragraph; or

        (ii)  the square footage of the rental space divided by the total square footage of all rental spaces.

(3)  If a tenant moves in or out during a billing period, the owner may calculate a bill for the tenant. If the tenant moves in during a billing period, the owner shall prorate the bill by calculating a bill as if the tenant were there for the whole month and then charging the tenant for only the number of days the tenant lived in the unit divided by the number of days in the month multiplied by the calculated bill. If a tenant moves out during a billing period before the owner receives the bill for that period from the retail public utility, the owner may calculate a final bill. owner may calculate the tenant's bill by calculating the tenant's average bill for the last three months and multiplying that average bill by the number of days the tenant was in the unit divided by the number of days in that month.

(f)  Conversion to approved allocation method. An owner using an allocation formula other than those approved in subsection (e) of this section shall immediately provide notice as required under §24.123(c) of this title (relating to Rental Agreement) and either:

  (1)  adopt one of the methods in subsection (e) of this section; or

  (2)  install submeters and begin billing on a submetered basis; or

  (3)  discontinue billing for utility services.

### §24.125. Billing.

(a)  Monthly billing of total charges. The owner shall bill the tenant each month for the total charges calculated under §24.124 of this title (relating to Charges and Calculations). If it is permitted in the rental agreement, an occupant or occupants who are not residing in the rental unit for a period longer than 30 days may be excluded from the occupancy calculation and from paying a water and sewer bill for that period.

(b)  Rendering bill.

  (1)  Allocated bills shall be rendered as promptly as possible after the owner receives the retail public utility bill.

  (2)  Submeter bills shall be rendered as promptly as possible after the owner receives the retail public utility bill or according to the time schedule in the rental agreement if the owner is billing using the retail public utility's rate.

(c)  Submeter reading schedule. Submeters or point-of-use submeters shall be read within three days of the scheduled reading date of the retail public utility's master meter or according to the schedule in the rental agreement if the owner is billing using the retail public utility's rate.

(d)  Billing period.

  (1)  Allocated bills shall be rendered for the same billing period as that of the retail public utility, generally monthly, unless service is provided for less than that period.

  (2)  Submeter bills shall be rendered for the same billing period as that of the retail public utility, generally monthly, unless service is provided for less than that period. If the owner uses the retail public utility's actual rate, the billing period may be an alternate billing period specified in the rental agreement.

(e)  Multi-item bill. If issued on a multi-item bill, charges for submetered or allocated utility service must be separate and distinct from any other charges on the bill.

(f)  Information on bill. The bill must clearly state that the utility service is submetered or allocated, as applicable, and must include all of the following:

  (1)  total amount due for submetered or allocated water;

  (2)  total amount due for submetered or allocated wastewater;

  (3)  total amount due for dwelling unit base charge(s) or customer service charge(s) or both, if applicable;

  (4)  total amount due for water or wastewater usage, if applicable;

  (5)  the name of the retail public utility and a statement that the bill is not from the retail public utility;

  (6)  name and address of the tenant to whom the bill is applicable;

  (7)  name of the firm rendering the bill and the name or title, address, and telephone number of the firm or person to be contacted in case of a billing dispute; and

(8)   name, address, and telephone number of the party to whom payment is to be made.

(g)   Information on submetered service. In addition to the information required in subsection (f) of this section, a bill for submetered service must include all of the following:

(1)   the total number of gallons, liters, or cubic feet submetered or measured by point-of-use submeters;

(2)   the cost per gallon, liter, or cubic foot for each service provided: and

(3)   total amount due for a service charge charged by an owner of a manufactured home rental community, if applicable.

(h)   Due date. The due date on the bill may not be less than 16 days after it is mailed or hand delivered to the tenant, unless the due date falls on a federal holiday or weekend, in which case the following work day will be the due date. The owner shall record the date the bill is mailed or hand delivered. A payment is delinquent if not received by the due date.

(i)   Estimated bill. An estimated bill may be rendered if a master meter, submeter, or point-of-use submeter has been tampered with, cannot be read, or is out of order: and in such case, the bill must be distinctly marked as an estimate and the subsequent bill must reflect an adjustment for actual charges.

(j)   Payment by tenant. Unless utility bills are paid to a third-party billing company on behalf of the owner, or unless clearly designated by the tenant, payment must be applied first to rent and then to utilities.

(k)   Overbilling and underbilling. If a bill is issued and subsequently found to be in error, the owner shall calculate a billing adjustment. If the tenant is due a refund, an adjustment must be calculated for all of that tenant's bills that included overcharges. If the overbilling or underbilling affects all tenants, an adjustment must be calculated for all of the tenants' bills. If the tenant was undercharged, and the cause was not due to submeter or point-of- use submeter error, the owner may calculate an adjustment for bills issued in the previous six months. If the total undercharge is $25 or more, the owner shall offer the tenant a deferred payment plan option, for the same length of time as that of the underbilling. Adjustments for usage by a previous tenant may not be back billed to a current tenant.

(l)   Disputed bills. In the event of a dispute between a tenant and an owner regarding any bill, the owner shall investigate the matter and report the results of the investigation to the tenant in writing. The investigation and report must be completed within 30 days from the date the tenant gives written notification of the dispute to the owner.

(m)   Late fee. A one-time penalty not to exceed 5% may be applied to delinquent accounts. If such a penalty is applied, the bill must indicate the amount due if the late penalty is incurred. No late penalty may be applied unless agreed to by the tenant in a written lease that states the percentage amount of such late penalty.

## §24.127. Submeters or Point-of-Use Submeters and Plumbing Fixtures.

(a)   Submeters or point-of-use submeters

(1)   Same type submeters or point-of-use submeters required. All submeters or point-of-use submeters throughout a property must use the same unit of measurement, such as gallon, liter, or cubic foot.

(2)   Installation by owner. The owner shall be responsible for providing, installing, and maintaining all submeters or point-of-use submeters necessary for the measurement of water to tenants and to common areas, if applicable.

(3)   Submeter or point-of-use submeter tests prior to installation. No submeter or point-of-use submeter may be placed in service unless its accuracy has been established. If any submeter or point-of-use submeter is removed from service, it must be properly tested and calibrated before being placed in service again.

(4)   Accuracy requirements for submeters and point-of-use submeters. Submeters must be calibrated as close as possible to the condition of zero error and within the accuracy standards established by the American Water Works Association (AWWA) for water meters. Point-of-use submeters must be calibrated as closely as possible to the condition of zero error and within the accuracy standards established by the AmericanSociety of Mechanical Engineers (ASME) for point-of-use and branch- water submetering systems.

(5)   Location of submeters and point-of-use submeters. Submeters and

point-of-use submeters must be installed in accordance with applicable plumbing codes and AWWA standards for water meters or ASME standards for point-of-use submeters, and must be readily accessible to the tenant and to the owner for testing and inspection where such activities will cause minimum interference and inconvenience to the tenant.

(6)   Submeter and point-of-use submeter records. The owner shall maintain a record on each submeter or point-of-use submeter which includes:

(A)   an identifying number;

(B)   the installation date (and removal date, if applicable);

(C)   date(s) the submeter or point-of-use submeter was calibrated or tested;

(D)   copies of all tests: and

(E)   the current location of the submeter or point-of-use submeter.

(7)   Submeter or point-of-use submeter test on request of tenant. Upon receiving a written request from the tenant, the owner shall either:

(A)   provide evidence, at no charge to the tenant, that the submeter or point-of-use submeter was calibrated or tested within the preceding 24 months and determined to be within the accuracy standards established by the AWWA for water meters or ASME standards for point-of-use submeters; or

(B)   have the submeter or point-of-use submeter removed and tested and promptly advise the tenant of the test results.

(8)   Billing for submeter or point-of-use submeter test.

(A)   The owner may not bill the tenant for testing costs if the submeter fails to meet AWWA accuracy standards for water meters or ASME standards for point-of-use submeters.PROJECT NO. 42190 PROPOSAL FOR ADOPTION PAGE 345 OF 379.

(B)   The owner may not bill the tenant for testing costs if there is no evidence that the submeter or point-of-use submeter was calibrated or tested within the preceding 24 months.

(C)   The owner may bill the tenant for actual testing costs (not to exceed $25) if the submeter meets AWWA accuracy standards or the point-of-use submeter meets ASME accuracy standards and evidence as described in paragraph (7)(A) of this subsection was provided to the tenant.

(9)   Bill adjustment due to submeter or submeter error. If a submeter does not meet AWWA accuracy standards or a point-of-use submeter does not meet ASME accuracy standards and the tenant was overbilled, an adjusted bill must be rendered in accordance with §24.125(k) of this title (relating to Billing). The owner may not charge the tenant for any underbilling that occurred because the submeter or point-of-use submeter was in error.

(10)   Submeter or point-of-use submeter testing facilities and equipment. For submeters, an owner shall comply with the AWWA's meter testing requirements. For point-of-use meters, an owner shall comply with ASME's meter testing requirements.

(b)   Plumbing fixtures. After January 1, 2003, before an owner of an apartment house, manufactured home rental community, or multiple use facility or a manager of a condominium may implement a program to bill tenants for submetered or allocated water service, the owner or manager shall adhere to the following standards:

(1)   Texas Health and Safety Code, §372.002, for sink or lavatory faucets, faucet aerators, and showerheads;

(2)   perform a water leak audit of each dwelling unit or rental unit and each common area and repair any leaks found: and

(3)   not later than the first anniversary of the date an owner of an apartment house, manufactured home rental community, or multiple use facility or a manager of a condominium begins to bill for submetered or allocated water service, the owner or manager shall:

(A)   remove any toilets that exceed a maximum flow of 3.5 gallons per flush; and

(B)   install toilets that meet the standards prescribed by Texas Health and Safety Code, §372.002.

(c)   Plumbing fixture not applicable. Subsection (b) of this section does not apply to a manufactured home rental community owner who does not own the manufactured homes located on the property of the manufactured home rental community.

# Exhibit 8



**Date : 6/8/2016**

**Resident Ledger**

| Code | | Property | 247600 | Lease From | 3/3/2015 |
|------|--|----------|--------|------------|----------|
| Name | Nathanael Brown | Unit | | Lease To | 3/2/2016 |
| Address | 1500 S Lamar Blvd, Unit # | Status | Past | Move In | 8/17/2013 |
| | | Rent | 1595 | Move Out | 3/13/2016 |
| City St. Zip | Austin, TX 78704 | Phone(O)- | | Phone(H)- | |

| Date | Description | Charge | Payment | Balance | Chg/Rec | Chg Code |
|------|-------------|--------|---------|---------|---------|----------|
| 9/17/2014 | Waterbilling | 30.13 | | 30.13 | 327663 | wtr |
| 9/17/2014 | Water Admin Fee | 2.71 | | 32.84 | 327780 | uaf |
| 10/1/2014 | Rent (10/2014) | 1,630.00 | | 1,662.84 | 356747 | rnt |
| 10/1/2014 | Trash (10/2014) | 7.50 | | 1,670.34 | 356748 | tra |
| 10/1/2014 | chk# :ACH-35898 Pre-Authorized Payment | | 1,670.34 | 0.00 | 118055 | |
| 10/24/2014 | Pubs Import - Waterbilling | 28.80 | | 28.80 | 471483 | wtr |
| 10/24/2014 | Pubs Import - Water Admin Fee | 2.59 | | 31.39 | 471762 | uaf |
| 11/1/2014 | Rent (11/2014) | 1,630.00 | | 1,661.39 | 436768 | rnt |
| 11/1/2014 | Trash (11/2014) | 7.50 | | 1,668.89 | 436769 | tra |
| 11/1/2014 | chk# :ACH-51358 Pre-Authorized Payment | | 1,668.89 | 0.00 | 166375 | |
| 11/18/2014 | Pubs Import - Waterbilling | 29.52 | | 29.52 | 542324 | wtr |
| 11/18/2014 | Pubs Import - Water Admin Fee | 2.66 | | 32.18 | 542596 | uaf |
| 12/1/2014 | Rent (12/2014) 16 days | 841.29 | | 873.47 | 600907 | rnt |
| 12/1/2014 | Rent (12/2014) 15 days | 945.97 | | 1,819.44 | 600908 | rnt |
| 12/1/2014 | Trash (12/2014) | 7.50 | | 1,826.94 | 600909 | tra |
| 12/1/2014 | chk# :ACH-66142 Pre-Authorized Payment | | 1,826.94 | 0.00 | 207906 | |
| 12/22/2014 | Pubs Import - Waterbilling | 28.55 | | 28.55 | 744966 | wtr |
| 12/22/2014 | Pubs Import - Water Admin Fee | 2.57 | | 31.12 | 745234 | uaf |
| 1/1/2015 | Rent (01/2015) | 1,955.00 | | 1,986.12 | 759042 | rnt |
| 1/1/2015 | Trash (01/2015) | 7.50 | | 1,993.62 | 759043 | tra |
| 1/1/2015 | chk# :ACH-81841 Pre-Authorized Payment | | 1,993.62 | 0.00 | 259559 | |
| 1/21/2015 | Pubs Import - Waterbilling | 28.63 | | 28.63 | 893254 | wtr |
| 1/21/2015 | Pubs Import - Water Admin Fee | 2.58 | | 31.21 | 893524 | uaf |
| 2/1/2015 | Rent (02/2015) | 1,955.00 | | 1,986.21 | 864233 | rnt |
| 2/1/2015 | Trash (02/2015) | 7.50 | | 1,993.71 | 864234 | tra |
| 2/1/2015 | chk# :ACH-97792 Pre-Authorized Payment | | 1,993.71 | 0.00 | 314856 | |
| 2/20/2015 | Pubs Import - Waterbilling | 32.26 | | 32.26 | 1029162 | wtr |
| 2/20/2015 | Pubs Import - Water Admin Fee | 2.90 | | 35.16 | 1029432 | uaf |
| 3/1/2015 | Rent (03/2015) | 1,955.00 | | 1,990.16 | 1000345 | rnt |
| 3/1/2015 | Trash (03/2015) | 7.50 | | 1,997.66 | 1000643 | tra |
| 3/3/2015 | Adjust MTM Rate to Renewal Rate $1595 (29 days) | (336.77) | | 1,660.89 | 1046128 | rnt |
| 3/3/2015 | | | 1,660.89 | 0.00 | 372331 | |

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  | chk# :ACH-WEB Online Payment - EFT Payment. CashMgmtCommon Webservice Payment with saved EFT |  |  |  |  |  |
| 3/18/2015 | Pubs Import - Waterbilling - 02/10/2015 to 03/10/2015 | 30.58 |  | 30.58 | 1109185 | wtr |
| 3/18/2015 | Pubs Import - Water Admin Fee - 02/10/2015 to 03/10/2015 | 2.75 |  | 33.33 | 1109460 | uaf |
| 4/1/2015 | Rent (04/2015) | 1,595.00 |  | 1,628.33 | 1168056 | rnt |
| 4/1/2015 | Trash (04/2015) | 7.50 |  | 1,635.83 | 1168057 | tra |
| 4/1/2015 | chk# :ACH-129078 Pre-Authorized Payment |  | 1,635.83 | 0.00 | 424351 |  |
| 4/17/2015 | Pubs Import - Waterbilling - 03/10/2015 to 04/10/2015 | 32.09 |  | 32.09 | 1269284 | wtr |
| 4/17/2015 | Pubs Import - Water Admin Fee - 03/10/2015 to 04/10/2015 | 2.89 |  | 34.98 | 1269553 | uaf |
| 5/1/2015 | Rent (05/2015) | 1,595.00 |  | 1,629.98 | 1321528 | rnt |
| 5/1/2015 | Trash (05/2015) | 7.50 |  | 1,637.48 | 1321529 | tra |
| 5/1/2015 | chk# :ACH-144798 Pre-Authorized Payment |  | 1,637.48 | 0.00 | 481843 |  |
| 5/21/2015 | Pubs Import - Waterbilling - 04/10/2015 to 05/07/2015 | 31.63 |  | 31.63 | 1468080 | wtr |
| 5/21/2015 | Pubs Import - Water Admin Fee - 04/10/2015 to 05/07/2015 | 2.85 |  | 34.48 | 1468339 | uaf |
| 6/1/2015 | Rent (06/2015) | 1,595.00 |  | 1,629.48 | 1444945 | rnt |
| 6/1/2015 | Trash (06/2015) | 7.50 |  | 1,636.98 | 1444946 | tra |
| 6/1/2015 | chk# :ACH-161141 Pre-Authorized Payment |  | 1,636.98 | 0.00 | 537387 |  |
| 6/19/2015 | Pubs Import - Waterbilling - 05/07/2015 to 06/07/2015 | 43.68 |  | 43.68 | 1572805 | wtr |
| 6/19/2015 | Pubs Import - Water Admin Fee - 05/07/2015 to 06/07/2015 | 3.93 |  | 47.61 | 1573076 | uaf |
| 7/1/2015 | Rent (07/2015) | 1,595.00 |  | 1,642.61 | 1626098 | rnt |
| 7/1/2015 | Trash (07/2015) | 7.50 |  | 1,650.11 | 1626099 | tra |
| 7/1/2015 | chk# :ACH-176860 Pre-Authorized Payment |  | 1,650.11 | 0.00 | 600171 |  |
| 7/13/2015 | Pubs Import - Waterbilling - 06/07/2015 to 07/08/2015 | 43.00 |  | 43.00 | 1674531 | wtr |
| 7/13/2015 | Pubs Import - Water Admin Fee - 06/07/2015 to 07/08/2015 | 3.87 |  | 46.87 | 1674807 | uaf |
| 8/1/2015 | Rent (08/2015) | 1,595.00 |  | 1,641.87 | 1780481 | rnt |
| 8/1/2015 | Trash (08/2015) | 7.50 |  | 1,649.37 | 1780482 | tra |
| 8/1/2015 | chk# :ACH-193708 Pre-Authorized Payment |  | 1,649.37 | 0.00 | 664588 |  |
| 8/14/2015 | Pubs Import - Waterbilling - 07/08/2015 to 08/08/2015 | 37.81 |  | 37.81 | 1858131 | wtr |
| 8/14/2015 | Pubs Import - Water Admin Fee - 07/08/2015 to 08/08/2015 | 3.40 |  | 41.21 | 1858403 | uaf |
| 9/1/2015 | Rent (09/2015) | 1,595.00 |  | 1,636.21 | 1929761 | rnt |
| 9/1/2015 | Trash (09/2015) | 7.50 |  | 1,643.71 | 1929762 | tra |
| 9/1/2015 | chk# :ACH-210539 Pre-Authorized Payment |  | 1,643.71 | 0.00 | 738348 |  |
| 9/17/2015 | Pubs Import - Waterbilling - 08/08/2015 to 09/08/2015 | 31.64 |  | 31.64 | 1989829 | wtr |
| 9/17/2015 | Pubs Import - Water Admin Fee - 08/08/2015 to 09/08/2015 | 2.85 |  | 34.49 | 1990109 | uaf |
| 10/1/2015 | Rent (10/2015) | 1,595.00 |  | 1,629.49 | 2043377 | rnt |
| 10/1/2015 | Trash (10/2015) | 7.50 |  | 1,636.99 | 2043676 | tra |
| 10/1/2015 | chk# :ACH-226729 Pre-Authorized Payment |  | 1,636.99 | 0.00 | 806868 |  |
| 10/8/2015 | Replaced lost remote | 15.00 |  | 15.00 | 2112562 | caf |
| 10/16/2015 | chk# :ACH-WEB Online Payment - EFT Payment. |  | 15.00 | 0.00 | 827706 |  |
| 10/20/2015 | Pubs Import - Waterbilling - 09/08/2015 to 10/08/2015 | 40.09 |  | 40.09 | 2242258 | wtr |
| 10/20/2015 | Pubs Import - Water Admin Fee - 09/08/2015 to 10/08/2015 | 3.61 |  | 43.70 | 2242536 | uaf |
| 11/1/2015 | Rent (11/2015) | 1,595.00 |  | 1,638.70 | 2225603 | rnt |
| 11/1/2015 | Trash (11/2015) | 7.50 |  | 1,646.20 | 2225894 | tra |
| 11/4/2015 | Late Fee, 10% of $1595.00 | 159.50 |  | 1,805.70 | 2257692 | lat |
| 11/4/2015 | Courtesy Waive 1st Late Fee | (159.50) |  | 1,646.20 | 2257913 | lat |

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 11/4/2015 | chk# :ACH-WEB Online Payment - EFT Payment. | | 1,646.20 | 0.00 | 874396 | |
| 11/23/2015 | Utility Admin Fee 10/09/15 - 11/08/15 | 3.61 | | 3.61 | 2381111 | uaf |
| 11/23/2015 | Water and Sewer 10/09/15 - 11/08/15 | 34.32 | | 37.93 | 2381112 | wtr |
| 11/23/2015 | Base Charges 10/09/15 - 11/08/15 | 5.78 | | 43.71 | 2381113 | wtrb |
| 12/1/2015 | Rent (12/2015) | 1,595.00 | | 1,638.71 | 2355424 | rnt |
| 12/1/2015 | Trash (12/2015) | 7.50 | | 1,646.21 | 2355723 | tra |
| 12/4/2015 | Late Fee, 10% of $1595.00 | 159.50 | | 1,805.71 | 2403138 | lat |
| 12/4/2015 | chk# :ACH-WEB Online Payment - EFT Payment. | | 1,805.71 | 0.00 | 929484 | |
| 12/21/2015 | Utility Admin Fee 11/09/15 - 12/08/15 | 3.41 | | 3.41 | 2512219 | uaf |
| 12/21/2015 | Water and Sewer 11/09/15 - 12/08/15 | 29.41 | | 32.82 | 2512220 | wtr |
| 12/21/2015 | Base Charges 11/09/15 - 12/08/15 | 8.46 | | 41.28 | 2512221 | wtrb |
| 1/1/2016 | Rent (01/2016) | 1,595.00 | | 1,636.28 | 2467388 | rnt |
| 1/1/2016 | Trash (01/2016) | 7.50 | | 1,643.78 | 2467692 | tra |
| 1/2/2016 | chk# :ACH-WEB Online Payment - EFT Payment. | | 1,643.78 | 0.00 | 978347 | |
| 1/22/2016 | Utility Admin Fee 12/09/15 - 01/08/16 | 4.12 | | 4.12 | 2647392 | uaf |
| 1/22/2016 | Water and Sewer 12/09/15 - 01/08/16 | 37.38 | | 41.50 | 2647393 | wtr |
| 1/22/2016 | Base Charges 12/09/15 - 01/08/16 | 8.41 | | 49.91 | 2647394 | wtrb |
| 2/1/2016 | Rent (02/2016) | 1,595.00 | | 1,644.91 | 2611670 | rnt |
| 2/1/2016 | Trash (02/2016) | 7.50 | | 1,652.41 | 2611963 | tra |
| 2/1/2016 | chk# :ACH-WEB Online Payment - EFT Payment. | | 1,652.41 | 0.00 | 1027207 | |
| 2/17/2016 | Utility Admin Fee 01/09/16 - 02/05/16 | 4.01 | | 4.01 | 2755931 | uaf |
| 2/17/2016 | Water and Sewer 01/09/16 - 02/05/16 | 36.15 | | 40.16 | 2755932 | wtr |
| 2/17/2016 | Base Charges 01/09/16 - 02/05/16 | 8.41 | | 48.57 | 2755933 | wtrb |
| 3/1/2016 | Rent (03/2016) 2 days | 102.90 | | 151.47 | 2829300 | rnt |
| 3/1/2016 | Rent (03/2016) 29 days | 1,885.00 | | 2,036.47 | 2829301 | rnt |
| 3/1/2016 | Trash (03/2016) 13 days | 3.15 | | 2,039.62 | 2829600 | tra |
| 3/1/2016 | Credit Rent (03/2016) 29 days | (1,855.00) | | 184.62 | 2835148 | rnt |
| 3/1/2016 | Rent (03/2016) 11 days | 715.00 | | 899.62 | 2835149 | rnt |
| 3/1/2016 | Credit Rent (03/2016) 29 days Difference | (30.00) | | 869.62 | 2835156 | rnt |
| 3/1/2016 | Rent (03/2016) Credit 17 days | (1,105.00) | | (235.38) | 2854417 | rnt |
| 3/1/2016 | Trash (03/2016) 1 days :Write Off by Charge Ctrl# 2991416 | 0.24 | | (235.14) | 2854418 | tra |
| 3/1/2016 | Rent (03/2016) Credit 1 days | (65.00) | | (300.14) | 2854748 | rnt |
| 3/1/2016 | Trash (03/2016) Credit 1 days | (0.24) | | (300.38) | 2854749 | tra |
| 3/1/2016 | chk# :ACH-WEB Online Payment - EFT Payment. | | 869.62 | (1,170.00) | 1081720 | |
| 3/15/2016 | Water and Sewer 02/06/16 - 03/13/16 :Write Off by Charge Ctrl# 2991417 | 44.66 | | (1,125.34) | 2871602 | wtr |
| 3/15/2016 | Base Charges 02/06/16 - 03/13/16 :Write Off by Charge Ctrl# 2991418 | 10.34 | | (1,115.00) | 2871603 | wtrb |
| 3/15/2016 | Correct Rent (03/2016) Credit 17 days | 1,170.00 | | 55.00 | 2871905 | rnt |
| 3/30/2016 | Carpet Replacement :Write Off by Charge Ctrl# 2991414 | 131.08 | | 186.08 | 2989382 | dmg |
| 3/30/2016 | Sheetrock Repair/Ceiling Patch/Accent Wall :Write Off by Charge Ctrl# 2991415 | 110.00 | | 296.08 | 2989383 | dmg |
| 3/31/2016 | :Write Off Charge Ctrl#2989382 | (131.08) | | 165.00 | 2991414 | wof |
| 3/31/2016 | :Write Off Charge Ctrl#2989383 | (110.00) | | 55.00 | 2991415 | wof |
| 3/31/2016 | :Write Off Charge Ctrl#2854418 | (0.24) | | 54.76 | 2991416 | wof |
| 3/31/2016 | :Write Off Charge Ctrl#2871602 | (44.42) | | 10.34 | 2991417 | wof |
| 3/31/2016 | :Write Off Charge Ctrl#2871603 | (10.34) | | 0.00 | 2991418 | wof |

# Exhibit 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| CATHI CLEVEN and<br>TARA CLEVEN<br>for themselves and all others<br>similarly situated,<br>    *Plaintiffs*,<br><br>v.<br><br>MID-AMERICA APARTMENT<br>COMMUNITIES, INC, as General Partner<br>of MID-AMERICA APARTMENTS, LP,<br>MID-AMERICA APARTMENTS, LP,<br>Individually and as General Partner<br>of CMS/COLONIAL MULTIFAMILY<br>CANYON CREEK JV LP, and<br>CMS/COLONIAL MULTIFAMILY<br>CANYON CREEK JV LP,<br><br>    *Defendants*. | § § § § § § § § § § § § § § § § § § § §<br><br>CIVIL ACTION NO.  1:16-CV-00820-RP |

# EXHIBIT 'A'

| Form **306** | THE STATE OF TEXAS | This space reserved for **FILED** |
|---|---|---|
| (Revised 1/06) | | **In the Office of the** |
| | | **Secretary of State of Texas** |
| Return in duplicate to: | | **DEC 2 1 2006** |
| Secretary of State | | |
| P.O. Box 13697 | **Application for** | |
| Austin, TX 78711-3697 | **Registration** | **Corporations Section** |
| 512 463-5555 | **of a Foreign Limited** | |
| FAX: 512/463-5709 | **Partnership** | |
| **Filing Fee: $750** | | |

1. The entity is a foreign limited partnership. The name of the entity is:

Mid-America Apartments, L.P.

2A. The name of the entity in its jurisdiction of formation does not contain the word "limited partnership" or "limited" (or an abbreviation thereof). The name of the entity with the word or abbreviation that it elects to add for use in Texas is:

_____

2B. The entity name is not available in Texas. The assumed name under which the entity will qualify and transact business in Texas is:

_____

3. Its federal employer identification number is: 62-1543816

☐ Federal employer identification number information is not available at this time.

4. It is organized under the laws of: (set forth state or foreign country) Tennessee
and the date of its formation in that jurisdiction is: 09/22/1993
*mm/dd/yyyy*

5. As of the date of filing, the undersigned certifies that the foreign limited partnership currently exists as a valid limited partnership under the laws of the jurisdiction of its formation.

6. The date on which the foreign entity intends to transact business in Texas, or the date on which the foreign entity first transacted business in Texas is: 09/29/2006
*mm/dd/yyyy*

7. The principal office address of the limited partnership is:

| 6584 Poplar Avenue, Suite 340 | Memphis | TN | USA | 38138 |
|---|---|---|---|---|
| *Address* | *City* | *State* | *Country* | *Zip/Postal Code* |

Complete item 8A or 8B, but not both. Complete item 8C.

☒ 8A. The initial registered agent is an organization (cannot be entity named above) by the name of:

CT Corporation System

**OR**

☐ 8B. The initial registered agent is an individual resident of the state whose name is:

_____

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|

RECEIVED

DEC 2 1 2006

Secretary of State

5

TX06550C – 070406 C T System Online

8C. The business address of the registered agent and the registered office address is:

| 350 North St. Paul Street | Dallas | TX | 75201 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

9. The entity hereby appoints the Secretary of State of Texas as its agent for service of process under the circumstances set forth in section 5.251 of the Texas Business Organizations Code.

10. Governing Persons: The name and address of each general partner is:

| NAME OF GENERAL PARTNER (Enter the name of either an individual or an organization, but not both.) | | | | | |
|---|---|---|---|---|---|
| IF INDIVIDUAL | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| IF ORGANIZATION | | | | | |
| Mid-America Apartment Communities, Inc. | | | | | |
| *Organization Name* | | | | | |

**ADDRESS OF GENERAL PARTNER**

| 6584 Poplar Avenue, Suite 300 | Memphis | TN | USA | 38138 |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

| NAME OF GENERAL PARTNER (Enter the name of either an individual or an organization, but not both.) | | | | | |
|---|---|---|---|---|---|
| IF INDIVIDUAL | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| IF ORGANIZATION | | | | | |
| *Organization Name* | | | | | |

**ADDRESS OF GENERAL PARTNER**

| | | | | |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

| NAME OF GENERAL PARTNER (Enter the name of either an individual or an organization, but not both.) | | | | | |
|---|---|---|---|---|---|
| IF INDIVIDUAL | | | | | |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| IF ORGANIZATION | | | | | |
| *Organization Name* | | | | | |

**ADDRESS OF GENERAL PARTNER**

| | | | | |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

---

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

---

### Effectiveness of Filing (Select either A, B, or C.)

A. ☒ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

---

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: 12-20-2006

MID-AMERICA APARTMENTS, L.P.

By: MID-AMERICA APARTMENT
    COMMUNITIES, INC., its
    sole general partner

By: _____
Name: Simon R.C. Wadsworth
Title: CFO

Consent to Use of Name

Mid-America Apartment Communities, Inc., A corporation
organized under the laws of the State of Tennessee, hereby
consents to the organization-qualification of Mid-America
Apartments, L.P. in the State of Texas.

IN WITNESS WHEREOF, the said Mid-America Apartment
Communities, Inc., has caused this consent to be executed by its
CFO and Executive Vice President and attested under its corporate
seal by its Secretary, this 21st day of December, 2006.

Mid-America Apartment
Communities, Inc.

By: _____

Name:  Simon R.C. Wadsworth
Title:  CFO & Exec. Vice President

Attest:

Sandy Brown, Assistant Treasurer of
Mid-America Apartment
Communities, Inc.

10038206

**MAC of Delaware, Inc.**

CT Corporation
1209 Orange Street
Wilmington, DE 19801

December 20, 2006

**_Via Federal Express_**

Angie Hurtado
Office of the Secretary of State
Corporations Section
Business and Public Filings Division
P.O. Box 13697
Austin, Texas 78711-3697

Dear Ms. Hurtado:

Mid-America Apartment Communities, Inc., Mid-America Apartments of Texas L.P. and MAC of Delaware, the general partner of Mid-America of Texas, L.P., hereby consent to the use of the name Mid-America Apartments, L.P. by Mid-America Apartments, L.P.

Please feel free to contact us if you have any questions.

Sincerely,

John A. Good
Assistant Secretary

6217317.1

# Exhibit 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| CATHI CLEVEN and | § | |
| TARA CLEVEN | § | |
| for themselves and all others | § | |
| similarly situated, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| MID-AMERICA APARTMENT | § | |
| COMMUNITIES, INC, as General Partner | § | CIVIL ACTION NO. 1:16-CV-00820-RP |
| of MID-AMERICA APARTMENTS, LP, | § | |
| MID-AMERICA APARTMENTS, LP, | § | |
| Individually and as General Partner | § | |
| of CMS/COLONIAL MULTIFAMILY | § | |
| CANYON CREEK JV LP, and | § | |
| CMS/COLONIAL MULTIFAMILY | § | |
| CANYON CREEK JV LP, | § | |
| | § | |
| *Defendants*. | § | |

# EXHIBIT 'B'

 **Office of the Secretary of State**
Reports Unit
P.O. Box 12028
Austin, Texas 78711-2028
(Form 804)

**Filed in the Office of the
Secretary of State of Texas
Filing #: 800749899 08/16/2012
Document #: 437461350002
Image Generated Electronically
for Web Filing**

## PERIODIC REPORT - FOREIGN LIMITED PARTNERSHIP

File Number: **800749899**

1. The name of the limited partnership is: **Mid-America Apartments, L.P.**

2. It is organized under the laws of: **TENNESSEE, USA**

3. The name of the registered agent is: **C T Corporation System**

4. The registered office address, which is identical to the business office address of the registered agent in Texas, is:
   **350 N. St. Paul St., Ste. 2900, Dallas, TX, USA 75201-4234**

### Consent of Registered Agent

☐ A. A copy of the consent of registered agent is attached.

**OR**

☑ B. The consent of the registered agent is maintained by the entity.

5. The address of the principal office in the United States where the records are to be kept or made available is:
   **6584 Poplar Ave., Memphis, TN, USA 38138**

6. The names and addresses of all general partners of the limited partnership are:

| General Partner 1: (Business Name) | **Mid-America Apartment Communities, Inc.** |
|---|---|
| Address: | **6584 Poplar Ave.    Memphis,  TN, USA  38138** |
| Mailing Address: | **6584 poplar ave    memphis  tn, USA  38138** |

**Execution:**
The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: **August 16, 2012**     **Margaret Zoccola, Assistant Vice President
and Director of Tax**

Signature of authorized officer

**FILING OFFICE COPY**

# Exhibit 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| CATHI CLEVEN and | § | |
| TARA CLEVEN | § | |
| for themselves and all others | § | |
| similarly situated, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| MID-AMERICA APARTMENT | § | |
| COMMUNITIES, INC, as General Partner | § | CIVIL ACTION NO.  1:16-CV-00820-RP |
| of MID-AMERICA APARTMENTS, LP, | § | |
| MID-AMERICA APARTMENTS, LP, | § | |
| Individually and as General Partner | § | |
| of CMS/COLONIAL MULTIFAMILY | § | |
| CANYON CREEK JV LP, and | § | |
| CMS/COLONIAL MULTIFAMILY | § | |
| CANYON CREEK JV LP, | § | |
| | § | |
|     *Defendants*. | § | |

# EXHIBIT 'I'




TEXAS APARTMENT ASSOCIATION

REDBOOK

REVISION

2014–2015

The utility interruption statute, Section 92.008(a) of the Texas Property Code, states that "A landlord or a landlord's agent may not interrupt or cause interruption of utility service paid for directly to the utility company by a tenant unless the interruption results from bona fide repairs, construction or an emergency." Obviously, broken pipes constitute an emergency and justify cutting off the water. Likewise, the law also provides that utilities in the owner's name may be interrupted for similar reasons. (Note: In 2013, the legislature gave owners the additional right to interrupt mastermetered electric service if a resident fails to pay the electric bill. See "Disconnecting Electricity When Bills Are Not Paid" on REDBOOK page 422. Paragraph 26 of the TAA Lease Contract allows utility interruption to repair frozen pipes. Paragraph 26 also requires the owner to act with customary diligence in making repairs and notes that the rent will not abate during such repair periods. If the repair period is unreasonably long and the owner has been negligent in completing the repairs (considering all the facts and circumstances as viewed from the eyes of an ordinarily prudent person), the owner can be held liable to the residents for damages such as hotel bills, restaurant bills, personal property damage, etc., and the residents may also have a right to terminate their leases.

This article discusses how the late fees provision in the TAA Lease Contract works, and tips for avoiding late fee clauses that might be considered illegal by a court.

Section 92.019 of the Texas Property Code provides that a late fee may not be charged unless it is part of a written lease. In addition, the amount of the fee must be based on a reasonable estimate of uncertain damages to the owner that can't be precisely calculated—for example, the costs of collection efforts, staff time providing notices, loss of the use of funds, etc. Also, late fees cannot be charged until at least the third day after rent was due. For example, if rent is due on March 1, a late fee cannot be charged until at least March 3. While owners must wait to impose the late fee, there is nothing that prevents them from taking another action, such as pursuing eviction, as soon as the rent is late.

The law does not specify dollar limits or percentage of rent that may be charged as a late fee. Instead, it dictates how late fees should be imposed. The law also clearly allows the late fee to include an initial fee and a subsequent daily fee for each day the rent continues to remain unpaid. Penalties for violating the late fee provisions make a property owner liable to a resident for $100, three times the amount of the late fee charged in violation of this section and reasonable attorney's fees.

The limits on late fees cannot be waived. It is important to note that a property owner's right to terminate the lease or take other action permitted by the lease or other law is not affected by this law. Furthermore, rights and remedies under the law are not waived because a resident has paid the late fee, charge or other sum of money. Therefore, just because a resident has paid a late fee does not mean that he or she has given up the right to sue an owner if the fee was unconscionable or otherwise violated the law.

### When is a late fee invalid?

In trying to determine what might be considered a "reasonable" late fee under the law, here are some factors that a court might take into consideration:

*Unconscionability.* Texas courts have the power to strike down any clause in a contract that they believe is "unconscionable," i.e., so onerous that it shocks the conscience of the court. If a judge believes a particular owner's late fee unconscionable, the judge can declare the late fee invalid.

*Penalties.* Texas courts can also strike down contractual clauses that are so unreasonable that they constitute a "penalty" (which Texas courts have the power to invalidate.) "Liquidated damages," on the other hand, are lawful. There is a fine line between unlawful penalties and lawful liquidated damages. In order to be classified as a liquidated damage, a late fee must be a reasonable estimate, at the time of signing the lease, of the probable inconvenience and expenditure of time, overhead and money that the owner will incur in trying to collect the rent if a resident is late in paying the rent. In fact, this standard is also contained in the late fee statute. What is reasonable in the eyes of a court may also depend on the total amount of the late fees as compared to the total monthly rent. For example, a $10 daily late fee that is assessed for a maximum of 15 days might be reasonable for a monthly rent of $1,500. This basically amounts to a 10 percent late fee. But a $10 daily late fee might be held unconscionable if the monthly rent were only $500. The initial late fee can and probably should be higher than the daily late fee.

Also, it is important that the lease and other written documents from the owner never characterize late fees as "penalties." Labels and terminology can occasionally control the eventual outcome of a case in the courthouse.

*DTPA violation.* If a late fee provision in a lease is illegal, it is also possible that a resident may try to file suit under the Texas Deceptive Trade Practices Act (DTPA), which is in Chapter 17 of the Texas Business and Commerce Code. Section 17.46(b)(12) of the DTPA prohibits the inclusion of any "illegal" clause in a lease or contract. If the judge holds that the late fee clause is a violation of the DTPA, the resident could be entitled to recover three times the amount of late fees paid by the resident, plus attorneys' fees. That makes illegal late fees an enticing target for plaintiff attorneys, especially if a class action is filed on behalf of existing and former residents.

*Usury.* Usury is another theory of late charge invalidity that has been alleged in other states, as well as Texas. So far, the intermediate appellate courts in Texas have held that the word "money" in the usury statute's limit of 18 percent interest on "payments for the forbearance of money" applies only to a loan and not to rent, and therefore late fees on rent are not subject to the Texas usury statute. (The Texas Supreme Court has never ruled on this issue.) Nonetheless, this does not prevent a plaintiff attorney from arguing unconscionability by pointing out what the annual rate of interest for a particular late fee would be if it were to be analyzed in terms of usury.

## How can you protect yourself?

The law is somewhat ambiguous, and Texas courts have not issued concrete guidelines on late fees, other than "unconscionability" and "unreasonable liquidated damages," to determine the legality of late fees. In the judgment of TAA general counsel, some safeguards to protect you from potential late fee lawsuits are the following:

- Make sure your lease clearly allows you to charge a late fee (the TAA Lease Contract on REDBOOK page 763 contains such a provision).

- Don't begin assessing a late fee until at least the second day after the rent was due, i.e. if rent was due on March 1, don't begin charging a late fee until at least March 3. Keep in mind that you may charge both an initial late fee and a daily late fee.

- Ask other rental housing owners in your area what they are charging for late fees for various levels of rent. If you are close, dollar wise, to what your typical competitors are charging, the odds are good that your initial and daily late fee amounts are lawful.

- Make sure your total potential late fees for any one month are not disproportionate to the total amount of monthly rent for the unit. It would seem that the higher the rent, the higher the late fees could lawfully be.

- Make sure that your daily late fees do not continue indefinitely, i.e., make sure there is a cap on the total accumulated late fees if the resident never pays the rent. Courts definitely dislike daily late fees that can go on forever without limit.

- While it is not Texas law, TAA general counsel advises property owners to follow the guidelines set forth in the TAA Lease Contract and stop daily late fees from accumulating after 15 days as noted in paragraph 6. Even if the TAA Lease Contract is used, the dollar amounts for the initial and daily late charges must be reasonable, considering all the factors discussed earlier in this article.

### Conclusion

It is up to you as a rental housing owner to make sure that your initial and daily late fees are not excessive and therefore a tempting target for challenge. Ultimately, the question of what is excessive is one that only a judge or jury can answer on a case-by-case basis. For more information and guidance, see the brief by TAA legal counsel emeritus, "Validity of Late Charges in the TAA Lease Contract," in the REDBOOK Online.

---

## THE TAA LEASE ADDENDUM
## FOR EARLY TERMINATION OF LEASE CONTRACT

> This article offers tips for using an addendum that allows early termination of the TAA Lease Contract. This addendum allows an agreed-to "buy-out" of the lease, and is entered into when the lease is signed.

### The purpose of the lease addendum

The "Lease Addendum for Early Termination of Lease Contract," on REDBOOK page 692, allows the property owner and the resident to enter into an agreement regarding what is essentially a lease "buy-out fee." The essence of the form is that if a resident should need to leave in the middle of a lease term, there is a pre-negotiated fee that the resident would pay in exchange for being released from the lease and from all liability for future payments through the end of his lease term.

The form is usually signed at the time the lease is signed because the resident is usually aware of the contingency under which the resident may need to move, for example, the possibility or uncertainty of a job transfer, the closing date of a home purchase, the completion date of a home under construction, a marriage date not yet set, etc. If these kinds of fears or concerns become known to the resident for the first time *after* the lease is executed but the exact move-out date is not yet certain, the form can still be executed during the lease term by mutual agreement of the parties.

A copy of the form is also available on TAA *Forms Online* and in the REDBOOK Online.

### Different from the form entitled
### "Agreed Early Move-out Date and Lease Termination"

The lease addendum should not be confused with the REDBOOK form on page 693, entitled "Agreed Early Move-out Date and Lease Termination." This REDBOOK form is for use as a negotiating tool to allow a resident to have the option to terminate the lease when an event *unexpectedly* arises (such as an unanticipated fire, flood, divorce, actual job transfer, death in the family, etc.) AND (2) the *exact move-out date (lease termination date)* is agreed to by all parties.

### The double-edged sword

Before using the "Lease Addendum for Early Termination of Lease Contract," you need to give it a lot of thought since the form is a two-edged sword. The form can both help and hurt an owner in a rental downturn. If used, it should be signed and completed at the beginning of a lease term, along with the Lease Contract and any other addenda.

In a soft market, the early termination addendum can be the "something extra" that enables your onsite leasing personnel to get a prospective resident to sign a lease. Yet, if that resident leaves early, the lease termination fee may not cover the rent loss resulting from an inability to re-rent the unit quickly or at the same rental rate. On the other hand, in a tight rental market (where an owner can quickly re-rent a vacated unit for equal or higher rents), an early termination vacancy can add to the bottom line.

Obviously, a lease addendum for early termination should be used only with thought given to the economic consequences.

### Tips for using the addendum

Some of the more important provisions and some suggestions to keep in mind when using this addendum are described below by paragraph number. The key provisions and some tips for using the form correctly and more effectively are italicized.

**Paragraph 1.** *Addendum.* The addendum may be negotiated and signed at the time the lease is signed or at anytime during the lease term. Either way, it needs to be signed by the owner or owner's representative and the resident. If signed when the TAA Lease Contract is signed, the addendum needs to be cross-referenced in the lease by checking the appropriate check box in paragraph 43 of the lease. *You should check the check box entitled "other" and fill in "Lease Addendum for Early Termination of Lease Contract."*

**Paragraph 2.** *Right of early termination.* This paragraph makes it clear that all residents in a particular dwelling unit must comply with the provisions of the addendum if the early termination right is exercised. *If any co-resident does not sign the addendum, the addendum is not valid or enforceable and none of the residents have the right to terminate early.*

# Exhibit 12

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| CATHI CLEVEN and | § | |
| TARA CLEVEN | § | |
| for themselves and all others | § | |
| similarly situated, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| MID-AMERICA APARTMENT | § | |
| COMMUNITIES, INC, as General Partner | § | CIVIL ACTION NO.  1:16-CV-00820-RP |
| of MID-AMERICA APARTMENTS, LP, | § | |
| MID-AMERICA APARTMENTS, LP, | § | |
| Individually and as General Partner | § | |
| of CMS/COLONIAL MULTIFAMILY | § | |
| CANYON CREEK JV LP, and | § | |
| CMS/COLONIAL MULTIFAMILY | § | |
| CANYON CREEK JV LP, | § | |
| | § | |
| *Defendants*. | § | |

# EXHIBIT 'K'

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KACEY CARPENTER DOMINGUEZ and     §
CHRISTOPHER DOMINGUEZ for     §
themselves and all others similarly situated,     §
    §
    Plaintiff,     §
    §
V.     §     1-15-CV-293 RP
    §
MID-AMERICA APARTMENT     §
COMMUNITIES, INC. and MID-AMERICA     §
APARTMENTS, L.P.,     §
    §
    Defendants     §

## ORDER

Before the Court are Defendants' Partial Motion to Dismiss Plaintiffs' First Amended

Complaint And Motion for Extension of Time to Answer, filed February 29, 2016 (Clerk's Dkt. #30)

and the responsive pleadings thereto. After reviewing the pleadings, relevant case law, as well as

the entire case file, the Court issues the following order.

## I. BACKGROUND

Plaintiffs Kacey Carpenter Dominguez and Christopher Dominguez bring this action both

individually and on behalf of all others similarly situated against defendants Mid-America Apartment

Communities, Inc. and Mid-America Apartments, L.P. (jointly "MAA") pursuant to the Class Action

Fairness Act. .

Plaintiffs allege they were tenants in a residential apartment complex owned or managed

by MAA, pursuant to a written lease agreement. According to Plaintiffs, in March 2015, MAA billed

Plaintiffs $38.64 for water/wastewater usage for a one month period ending January 13, 2015. The

same bill also included rent and charges for other non-rent items totaling $1,190.41. Plaintiffs state

they timely paid all of the March 2015 charges except $38.64. A summary of charges provided to

Plaintiffs by an MAA representative indicates the payment to MAA was insufficient, and specifically

circles the $38.64 charge for "Water/Sewer." (Plf. 1st Am. Compl. ¶¶ 28-33 & Ex. B).

Plaintiffs allege that, on March 10, 2015, MAA sent them a Notice to Vacate for Non-Payment of Rent, Utilities, or Other Sums ("Notice to Vacate"). The Notice to Vacate informed Plaintiffs of their delinquency and demanded possession of their apartment on March 14, unless the arrearage and specified late fees of $135.00 were paid. Plaintiffs obtained a money order and paid the total reflected on the Notice to Vacate that same date. (*Id*. ¶¶ 34-38 & Exs. C-D).

Plaintiffs allege the late fees charged them violate the provisions of the Texas Water Code which prohibit the charging of excessive late fees on water/wastewater payments by residential tenants. (*Id*. ¶¶ 67-70). Plaintiffs alternatively assert the late fees charged them violate the provisions of the Texas Property Code which prohibit the charging of excessive late fees on rent by residential tenants. (*Id*. ¶¶ 71-72). Finally, Plaintiffs allege the late fees charged to them on non-rent balances besides water/wastewater constituted a breach of their contractual lease agreement. (*Id*. ¶ 73).

Defendants now seek to dismiss in part Plaintiffs' claims for failure to state a claim. Specifically, Defendants contend Plaintiffs have not alleged facts sufficient to support their claim under the Texas Property Code and that Plaintiffs lack standing to assert their claim for breach of contract. Defendants also requested an extension of time during the pendency of their motion to file their answer to Plaintiffs' complaint. The parties have filed responsive pleadings and the motion is ripe for review.

## II. APPLICABLE LAW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil

2

Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).

### III. DISCUSSION

Defendants move to dismiss Plaintiffs' claims under the Texas Property Code and for breach of contract. The Court will address those issues in turn.

### A. Texas Property Code

In pertinent part, the Texas Property Code provisions governing residential tenancies states:

A landlord may not charge a tenant a late fee for failing to pay rent unless:

(1) notice of the fee is included in a written lease;

(2) the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent; and

(3) the rent has remained unpaid one full day after the date the rent was originally due.

TEX. PROP. CODE ANN. § 92.019(a). Defendants here contend Plaintiffs' claim of excessive late fees for late payment of their rent fails because they have not alleged facts sufficient to establish the second of the three statutory requirements. Specifically, Defendants maintain Plaintiffs have

not alleged facts, which if true, would establish the late fee charged for unpaid rent was not "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent."

Defendants first argue Plaintiffs are foreclosed from arguing the late fees they were charged were unreasonable because they consented to the fees in their lease agreement. However, as Plaintiffs point out, a tenant's voluntary payment of an excessive late fee for non-payment of rent does not forestall the ability to raise a statutory claim for excessive late fees. Rather, the statute expressly states that "[p]ayment of the fee, charge, or other sum of money by a tenant does not waive the right or remedies provided by this section." TEX. PROP. CODE ANN. § 92.019(e). Similarly, the Texas Property Code provides that "[a] provision of a lease that purports to waive a right or exempt a party from liability or duty under this section is void." *Id*. § 92.019(d). This argument is therefore unavailing.

Defendants also argue the only factual allegations addressed to this issue merely estimate the actual damages incurred by MAA as a result of Plaintiffs' late payment. They argue such allegations are insufficient because the proper method for evaluating reasonableness is a forward-looking inquiry. That is, the question of whether the late fee is a "reasonable estimate" must be examined as of the time the lease agreement was entered into by Plaintiffs, not as of the time the charges were incurred.

While Defendants are correct as a matter of law, the fact that the actual damages incurred were significantly smaller than the forecasted damages could support a claim that the forecasted damages were not reasonable. As Defendants themselves point out that, in enacting the pertinent provision of the Property Code, the Texas Legislature intended to adopt the common-law test to determine enforceability of liquidated damages which is whether the damages are "incapable or difficult of estimation" and "a reasonable forecast of just compensation." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). In that very case, the Texas Supreme Court continued by

4

suggesting a liquidated damages provision may be shown to be unreasonable "because the actual damages incurred were much less than the amount contracted for." *Id*. Accordingly, Defendants have not shown dismissal on this basis is warranted.

## B. Breach of Contract

Defendants also move to dismiss Plaintiffs' claim for breach of contract. They contend Plaintiffs lack standing to raise such a claim. According to Defendants, Plaintiffs make clear in their complaint that the late fees were either charged for unpaid water/wastewater charges or for unpaid rent. (Plf. 1st Am. Compl. ¶ 39 (water/wastewater); ¶ 45 (rent)). Thus, Defendants maintain Plaintiffs admit they never paid any late fees for other "non-rent" items and therefore lack standing to raise their breach of contract claim.

As Plaintiffs point out, and their complaint makes clear, Defendants maintain their policy requires a tenant's partial payment be applied to non-rent items first. However, Plaintiffs have alleged Defendants' representatives indicated the contrary to them. (*Id*. ¶ 33 & Ex. B). Undoubtedly as a result of this dispute, Plaintiffs' claims are asserted in the alternative. That is, Plaintiffs allege separate claims based on whether the late fees applied to waste/wastewater, rent or other non-rent items.

Specifically, Plaintiffs have alleged their lease agreement does not authorize MAA to charge any late fees for "MAA Connect," pest control fees or trash fees, and MAA would be in breach of their lease if the late fees were charged for those non-rent items. (*Id*. ¶ 73). As Plaintiffs have alleged they paid late fees totaling $135, they have alleged facts sufficient to establish they have standing to assert such a claim. Accordingly, Defendants have failed to show dismissal on this basis is warranted.

## C. Extension of Time

In addition to seeking dismissal in part of Plaintiffs' claims, Defendants also requested an

5

extension of time during the pendency of their motion to file their answer to Plaintiffs' complaint. Plaintiffs have not expressed any opposition to that request. Accordingly, the deadline for Defendants to file their answer is extended until fourteen days after the date of this order.

## V. CONCLUSION

Accordingly, the Court hereby **DENIES in PART** Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Complaint And Motion for Extension of Time to Answer (Clerk's Dkt. #30). Plaintiffs' claims survive dismissal, however Defendants are granted the requested extension of time to file their answer thereto.

**SIGNED** on March 31, 2016.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE